IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH A. BOYD, | : | |
| | : | |
| Plaintiff, | : | C.A. No. |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| WILMINGTON POLICE DEPARTMENT, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

### PARTIES

1. Plaintiff, Kenneth A. Boyd (hereinafter "Plaintiff"), has at all times relevant to this Complaint been a resident of New Castle County, State of Delaware and currently resides at 4607 Talley Hill Lane, Wilmington, DE 19803.

2. Defendant, Wilmington Police Department (hereinafter "Defendant"), is a division of the City of Wilmington Department of Public Safety, a city agency, and at all times relevant to this Complaint, the employer of Plaintiff. The Wilmington Police Department is subject to service through the Director of Public Safety, James N. Mosley, whose address is: James N. Mosley, Director of Public Safety; William T. McLaughlin Public Safety Building, 300 North Walnut Street, Wilmington, DE 19801.

### JURISDICTION

3. Jurisdiction is founded on the existence of a question arising under federal statutes. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 704(a) of Title

VII of the Civil Rights Act and 42 U.S.C. § 1981. The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal and state law which prohibits discrimination against employees because of their race. The state law claim regarding the ordinance violations is brought pursuant to the pendent jurisdiction of this Court.

## FACTUAL BACKGROUND

4.   Plaintiff was hired on October 6, 1986 as a Police Recruit for Defendant. Successful training eventually led to full-time employment as a Wilmington Police Officer in or around January 1987. Plaintiff has been so employed in a full-time capacity with Defendant for approximately eighteen (18) years.

5.   During his tenure, Plaintiff has worked within various specialized units, which include the Detectives' Youth Aid and Truancy Division, the Evidence Detection Unit, and the Community Policing and Patrol Division.

6.   Throughout his tenure, Plaintiff has received numerous civilian and departmental commendations, which include the departmental unit citation, the distinguished service award, and a certificate of appreciation from the Special Olympics. Plaintiff also consistently has received superior performance evaluations.

7.   In order to be eligible for a promotional opportunity, Plaintiff was required to participate in the Management Scientist II promotional testing program. Plaintiff's scores were based upon a three-part testing procedure. Part one is a relevant knowledge test; part two is a problem-solving analysis exercise; and part three is a resume review. During his tenure, Plaintiff has taken the promotional test for Defendant approximately ten (10) times.

8.   In order to be eligible for a promotion to Sergeant during the time period from April 15, 2002 through and including April 14, 2004, Plaintiff participated in the

Management Scientist II promotional testing procedure in or around winter of 2002. As a result of his scores Plaintiff was placed on "Band II" along with nine (9) other candidates. There were only three (3) candidates who achieved placement in "Band I."

9. In order of seniority, all three (3) candidates from "Band I" were promoted. They were: Ray Wyatt, a Caucasian promoted on or about November 2, 2002; Scott Jones, a Caucasian promoted on or about February 1, 2003; and Debbie Donohue, also a Caucasian promoted or about March 22, 2003.

10. After all the candidates from "Band I" had been promoted, the three (3) most senior candidates in "Band II" were also promoted. They were: Dennis O'Connor, a Caucasian promoted on or about July 31, 2003; Joseph Sammons, a Caucasian promoted on or about December 20, 2003; and Liam Sullivan, also a Caucasian promoted on or about March 22, 2003. Plaintiff was the next most senior individual on "Band II" in line for a promotion.

11. However, when the next promotional opportunity became available, Chief Michael Szczerba selected Michael Rodriguez, a Caucasian with three (3) years' less seniority than Plaintiff, to be promoted to the position of Sergeant instead of Plaintiff.

12. During the time period when the 2002-2004 promotional eligibility list was in effect, Plaintiff was repeatedly reminded by Lieutenant Mitchell Rock and Captain Marlyn Dietz that Plaintiff would be selected for promotion to Sergeant because Chief Szczerba was promoting based upon seniority.

13. Weeks prior to the Chief's selections, which were made on or around April 8, 2004, both Lieutenant Rock and Captain Dietz would walk past Plaintiff's desk and say out loud, "Sergeant Boyd, what's up, are you staying out of trouble?" Plaintiff would respond by saying, "please don't jinx me."

14. On or about April 8, 2004, Plaintiff was advised by WILCOM to call Lieutenant Donald Bowman in his office. He [Bowman] revealed that Chief Szczerba had made his selections for Sergeant and Plaintiff was not one of the selected candidates. Bowman then suggested that Plaintiff take the rest of the day off citing probable disappointment and frustration. Plaintiff not only took the rest of that day off, but he also took off the following week after feeling depressed and discouraged with the promotional selection.

15. On or about April 18, 2004, a number of disgruntled officers spoke with Councilwoman Stephanie Bolden regarding the Chief's reluctance to promote African-American officers. She stated that she would address the matter at the upcoming Public Safety Council Meeting.

16. On or about April 20, 2004, Plaintiff was walking across Defendant's parking lot, when he was approached by Sergeant Debbie Donohue, Officers Gary Tabor and Michael Groaik. Each of the officers voiced their displeasure with the Chief's promotional selection, stating that the Chief was wrong when he selected another officer with three years' less seniority than Plaintiff. Sergeant Donohue then proceeded to inform Plaintiff that the Chief told her that when she was promoted, he was promoting based upon seniority because he felt it was the best and most reasonable way to go about the process.

17. Further, on or about April 20, 2004, Sergeant Steve Thomas contacted Plaintiff by telephone objecting to the Chief's selection. He commented that there was no reason why an intelligent, seasoned and hardworking officer like Plaintiff should not have been promoted. Thomas then mentioned that the failure to promote Plaintiff could have been discriminatory in nature.

18. On the evening of April 20, 2004, a Public Safety Council Meeting was held with approximately eight (8) high-ranking Wilmington Police officials in attendance. Councilwoman Stephanie Bolden aggressively questioned the Chief about his promotional practices and the qualifications required. The Chief continually emphasized that he had promoted the most qualified candidates; the candidates whom he thought would most favorably lead his troops.

19. During the Public Safety Council meeting on April 20, 2004, the Chief repeatedly stated that he has promoted many African Americans. However, since he was promoted to Chief, he has only promoted two (2) African Americans. All of the Chief's other selections were appointments, which is vastly different in police terms. The Chief

20. The Chief mentioned during the Public Safety Meeting that he has worked first hand with his men and women and he knows who is performing quality work. However, the Chief has never worked with Plaintiff, and Plaintiff believes that the Chief has never seen Plaintiff's performance evaluations. The Chief also noted during the meeting that he receives "constant feedback" from his inspectors and captains.

21. Also during the Public Safety Council Meeting, another council member, Kevin Kelly, questioned the Chief by asking if there was some concern that he was promoting mostly his "friends." The Chief responded that he had not heard that concern. Plaintiff and many other veteran officers are well aware of the friendship that exists between the Chief and many of his recent selections, and it was widely discussed throughout the department.

22. On or about April 23, 2004, Plaintiff had a conversation with Captain Bobby Cummings. Cummings asked Plaintiff what plans Plaintiff had to challenge the Chief's promotional selection.

23. Plaintiff spoke with Lieutenant Mitchell Rock at police headquarters on or about April 26, 2004. Lieutenant Rock expressed concern about the Chief's decision not to promote Plaintiff, mentioning that he did not know what had happened, and that he thought Plaintiff was a sure lock for the promotion because the Chief had been promoting according to seniority. Lieutenant Rock then proceeded to tell Plaintiff that he currently had a good daytime position dealing with juveniles and that he [Plaintiff] could probably ride out the remainder of his career doing same.

24. On or about April 26, 2004, Plaintiff was approached by twenty-year veteran, Master Corporal Santiago Guillermo. He urged Plaintiff to take legal action against the Chief, emphasizing that what he had done was morally and ethically wrong. It was brought to Plaintiff's attention at this time that a few Caucasian officers had sued the city and police department in the previous year for discrimination.

25. On or about April 28, 2004, Plaintiff was approached by Master Sergeant Robert Emory. Master Sergeant Emory suggested that Plaintiff seek the advice of an attorney in light of the recent promotional mishap. Emory then reminded Plaintiff that he [Emory] had conducted the last job evaluation rating, and Plaintiff had received superior scores.

26. Through research, Plaintiff discovered that the last time another African American male had been promoted to the rank of Sergeant was December 23, 1997. Currently there are only two (2) African American Sergeants working in patrol.

27. On or about December 26, 2004, Plaintiff again spoke with Councilwoman Bolden regarding the Chief's recent promotions. She noted that she would be willing to speak on the matter as it related to the City Council Meeting.

28. Plaintiff believes that an analysis of the 2000 to 2002 Management Scientists II eligibility list proves that promotions were made in accordance with

seniority. The first three (3) selections from the Sergeant-candidate list were all promoted at the same time. The final two (2) selections from this list were also made by seniority. The two (2) candidates not selected had the least amount of time and seniority.

29. The 2002-2004 Management Scientists II eligibility list again establishes that the Chief was promoting by seniority. The candidates from "Band I" were selected by seniority. Also, the first three (3) candidates from "Band II" were also promoted according to seniority. However, when Plaintiff became the next to be promoted, he was denied the opportunity. An officer with three (3) years' less seniority than Plaintiff was selected by the Chief for promotion over Plaintiff.

30. Plaintiff was informed by Sergeant Faheem Akil that he was also overlooked for a promotion to the rank of Lieutenant in both the 2002-2004 and 2004-2006 promotional years. Akil stated that a Caucasian officer with less seniority had received the promotion. Additionally, the same officer had dropped out of the 2004-2006 promotional process, which would have denied him a promotion during those years.

31. It is highly unlikely that an African American will be promoted to the rank of Sergeant from the 2004-2006 eligibility list, as the closest candidate is in "Band III."

32. Plaintiff also recognizes that the first three (3) Sergeant selections made by the Chief from the 2004-2006 promotional list have all been based on seniority.

33. On or about February 28, 2005, Plaintiff learned that there was a disturbing letter sent to Ted Blunt, City Council President, which criticized the Defendant, making reference to the City reverting back to its racist ways. The letter then goes on to list Plaintiff as an example of how Defendant's discriminatory practices are still very much prevalent. The letter also mentions Sergeant Faheem Akil and how he was skipped over at least twice for a promotion. It ends by saying, "The ship is sinking".

34. On March 4, 2005, Plaintiff was summoned to a closed-door meeting with Captain James Jubb. During this closed-door meeting, Captain Jubb asked Plaintiff if he had any knowledge of who wrote the letter that was sent to City Council. When Plaintiff denied any involvement with the letter, Captain Jubb then began to speak about the promotional process. Jubb mentioned that he did not know why the Chief did not promote Plaintiff. Jubb then noted that the only reason he could give as to why Plaintiff was not promoted, was that Officer Michael Rodriguez had a Bachelor's Degree. Plaintiff then informed Captain Jubb that he [Plaintiff] had obtained his college degree twenty (20) years ago. After a startled look, Captain Jubb then responded to Plaintiff that he would "bet [his] house" that Plaintiff would get promoted if he would stay patient and not get caught up in the recent negative developments occurring within the department. Jubb then ended the meeting by saying he was a neighbor of the Chief for a number of years and could honestly say that the Chief was not prejudiced.

35. On March 4, 2005, Plaintiff heard radio host John Watson of WILM Radio in Wilmington discussing the aforementioned letter live on the radio. Watson asked anyone who was mentioned in the letter to call him to speak about the matter.

36. After first hearing who Plaintiff thought was Captain Michael Maggitti speaking on the matter, Plaintiff then called in to the radio station to speak to Watson live on the air. Plaintiff only spoke about his particular situation, noting how he was slighted for promotion to the rank of Sergeant.

37. On March 5, 2005, Plaintiff had a meeting in the Special Operations Division with Captain Gilbert Howell, Lieutenant Custis, and Sergeant Faheem Akil, at which time Captain Howell stated that he was present during a staff meeting when he heard the Chief say he was promoting by seniority; and that he was present during a staff meeting when he again heard the Chief say he was going to promote Sergeant William

Browne over Sergeant Faheem Akil because Billy had dropped out of the 2004-2006 promotional process because of his mother's failing health. The Chief explained that if he [Chief] did not promote Billy, Billy wouldn't be eligible for another two years.

38. On March 9, 2005, Plaintiff had occasion to speak with Corporal Robert Curry while parked in his vehicle on 5th and West Streets. During the conversation, Corporal Curry spoke about how he used to work with Officer Michael Rodriguez. He pointed out that Officer Rodriguez had told him [Curry] that then-Lieutenant Szczerba was the godfather to one of his children.

39. On or around August 31, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race, age, and national origin discrimination. A copy of Plaintiff's Charge of Discrimination is attached hereto as Exhibit "A".

40. The EEOC issued a Right to Sue on December 22, 2004. A copy of the Right to Sue letter received first by the undersigned attorney, is attached hereto as Exhibit "B".

### FIRST CAUSE OF ACTION
### Title VII - Racial Discrimination

41. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 40 of this Complaint by reference as though fully set forth at length herein.

42. The practices of Defendant as complained of above, have/had the effect of depriving Plaintiff of equal employment opportunities and otherwise affect/affected his employment because of his race. The practices employed by Defendant were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff.

43. The practices of Defendant as complained of above, cause/caused Plaintiff to experience conscious pain and suffering and other emotional harm.

44. The practices of Defendant as described above are imputable to Defendant in violation of 42 U.S.C. §2000(e)-2(a) and 3(a).

45. As a direct and proximate result of said acts of Defendant, Plaintiff has suffered, and continues to suffer, loss of employment opportunities, loss of income, loss of other employment benefits and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment and damages to his reputation.

46. Defendant's discrimination was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

## SECOND CAUSE OF ACTION
### Title VII Racial Discrimination - Failure to Promote

47. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 46 of this Complaint by reference as though fully set forth at length herein.

48. Defendant denied Plaintiff numerous opportunities for career advancement despite his qualifications and superior performance evaluations.

49. Defendant denied Plaintiff career advancement opportunities by denying him opportunities for promotion in rank.

50. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered, and continues to suffer, a loss of considerable pay: past, present, future and perspective, and has suffered, and continues to suffer, humiliation, mental anguish, and emotional pain.

51. Defendant's discrimination was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

## THIRD CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1981)

52. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 51 of this Complaint by reference as though fully set forth at length herein.

53. Defendant has intentionally discriminated against Plaintiff on account of his race in violation of 42 U.S.C. § 1981 by denying him equal terms and conditions of employment and refusing to promote Plaintiff to a Sergeant position.

54. As a direct and proximate result of said acts, Plaintiff has suffered, and continues to suffer, loss of employment opportunities, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment and damages to his reputation.

### FOURTH CAUSE OF ACTION
### (Violation of the Charter of the City of Wilmington
### Article IV, §35-111)

55. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 54 of this Complaint by reference as though fully set forth at length herein.

56. Defendant denied Plaintiff numerous opportunities for career advancement despite his qualifications, in direct violation of §35-111 of Article IV the Charter of the City of Wilmington.

57. Defendant denied Plaintiff career advancement opportunities by denying him opportunities for promotion in rank, in direct violation of the equal opportunity in employment provisions within the Charter of the City of Wilmington, Article IV, §35-111.

58. Defendant knowingly and intentionally violated provisions of the Charter of the City of Wilmington causing detriment to Plaintiff.

59. As a direct and proximate result of Defendant's discrimination, Plaintiff suffered, and continues to suffer, a loss of considerable pay: past, present, future and

prospective and has suffered, and continues to suffer, humiliation, mental anguish and emotional pain.

60.  Defendant's discrimination was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

### FIFTH CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing

61.  Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 60 of this Complaint by reference as though fully set forth at length herein.

62.  The actions of Defendant constitute a violation of the Covenant of Good Faith and Fair Dealing implicit in every employment agreement.

63.  Defendant breached the Covenant of Good Faith and Fair Dealing to Plaintiff by failing to promote him and by discriminating against him based upon his race.

64.  Defendant's discrimination was willful, wanton, and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

65.  The above-stated damages were not the result of any act or omission on the part of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)  Issue a judgment against the Defendant, Wilmington Police Department, and in his favor to provide appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary for damages suffered by Plaintiff and to eradicate the effects of Defendant's actions and unlawful employment practices;

(b)  Issue a judgment against the Defendant, Wilmington Police Department, and in his favor ordering Defendant to provide compensation for non-pecuniary losses,

including pain, suffering, and humiliation in amounts to be determined at trial, and other affirmative relief necessary for damages suffered by Plaintiff and to eradicate the effects of Defendant's actions and unlawful employment practices;

(c) Issue a judgment against Defendant, Wilmington Police Department, and in his favor ordering Defendant to provide compensation for past and future pecuniary losses, in amounts to be determined at trial;

(d) Issue a judgment against Defendant, Wilmington Police Department, and in his favor ordering Defendant to pay punitive damages for its malicious and/or reckless conduct in amounts to be determined at trial;

(e) Issue a judgment against Defendant, Wilmington Police Department, and in his favor ordering Defendant to pay the costs of reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 2000e-5(f)(1) and (3); and

(f) Issue a judgment against Defendant, Wilmington Police Department, and in his favor for damages suffered by Plaintiff as a result of Defendant's actions, including, but not limited to, back pay, front pay, benefits (both retroactively and prospectively), advancement in rank to Sergeant, compensatory damages, punitive damages, attorneys' fees, the cost of this litigation, pre- and post-judgment interest and such other further relief as this Honorable Court deems just and proper.

        MARGOLIS EDELSTEIN

        _____
        Jeffrey K. Martin, Esquire (DE #2407)
        Timothy J. Wilson, Esquire (DE #4323)
        1509 Gilpin Avenue
        Wilmington, DE 19806
        (302) 777-4680 – telephone
        (302) 777-4682 – fax
        *Attorneys for Plaintiff*

DATED: March 22, 2005