# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

KENNETH A. BOYD,                        :
                                        :
    Plaintiff,                          :
                                        :   C.A. No.  05-178 KAJ
v.                                      :   TRIAL BY JURY DEMANDED
                                        :
WILMINGTON POLICE DEPARTMENT,  :
                                        :
    Defendant.                          :

## DEFENDANT'S OPENING BRIEF IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT

Rosamaria Tassone, Esquire (I.D. #3546)
Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I       PLAINTIFF CANNOT MEET HIS BURDEN OF PROOF UNDER THE
        McDONNELL DOUGLAS BURDEN-SHIFTING FRAMEWORK GOVERNING
        RACE DISCRIMINATION CASES. THEREFORE, PLAINTIFF FAILS TO STATE
        A CLAIM UNDER TITLE VII, 42 U.S.C. §1981, AND STATE LAW . . . . . . . 11

        A.      GIVEN THE UNDISPUTED FACTS IN THE RECORD, PLAINTIFF IS
                UNABLE TO ESTABLISH A PRIMA FACIE CASE FOR RACE BASED
                DISCRIMINATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.      PLAINTIFF IS UNABLE TO DEMONSTRATE BY A PREPONDERANCE
                OF THE EVIDENCE THAT THE LEGITIMATE, NON-DISCRIMINATORY
                REASONS FOR PROMOTING RODRIGUEZ RATHER THAN PLAINTIFF
                WERE PRETEXTUAL AND THE DECISION ACTUALLY MOTIVED BY
                RACIAL ANIMUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

II      DEFENDANT CITY OF WILMINGTON POLICE DEPARTMENT IS NOT A
        SEPARATE JURIDICAL ENTITY FROM THE CITY OF WILMINGTON AND IS
        NOT SUBJECT TO SUIT. AS SUCH, PLAINTIFF'S COMPLAINT MUST BE
        DISMISSED AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

III.    WILMINGTON CITY CODE SECTION 35-111 DOES NOT ESTABLISH A
        PRIVATE CAUSE OF ACTION FOR DENIAL OF EQUAL EMPLOYMENT
        OPPORTUNITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## TABLE OF CITATIONS

### Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Arnold Pontiac-GMC, Inc. v. General Motors Corp.,
    786 F.2d 564 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bazile v. City of New York, 2002 U.S. Dist. Lexis 14478 (S.D.N.Y. 2002) . . . . . . . . . . . . . . 33

Big Apple BMW, Inc., et.al v. BMW of North America, Inc., et. al,
    974 F.2d 1358 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bogren v. Minnesota, 236 F. 3d 399 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Boyce v. Belden, 2002 U.S. Dist. LEXIS 1550 (M.D. Ga. 2002) . . . . . . . . . . . . . . . . . . . . . . 33

Brown v. Pfaff, 2004 U.S. Dist. LEXIS 3944 (D. Del. Mar. 3, 2004) . . . . . . . . . . . . . . . . . 36, 37

Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543 (D. N.J. 2000) . . . . . . . . .37

Carrigan v. State, 957 F. Supp. 1376 (D. Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Collins v. State of Illinois, 830 F.2d 692 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 33

Crawford v. Pennsylvania, 2003 U.S. Dist. LEXIS 16358 (M.D. Pa. Sept. 12, 2003) . . . . . . . 36

Daniels v. Delaware, 120 F. Supp. 2d 411 (D. Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Darby v. Pasadena Police Department, 939 F.2d 311 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . 34

Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Ferguson v E.I. duPont de Nemours and Company, Inc.,
    560 F. Supp. 1172 (D. Del. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ferraro v. City of Long Branch, 714 A.2d 945 (N.J. Super. 1998) . . . . . . . . . . . . . . . . . . . . . . 40

Fraser v. Pennsylvania State System of Higher Education, et al.,
    1994 U.S. Dist. LEXIS 7409 (E.D. Pa. June 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 24

Gaines v. University of Pennsylvania Police Department,
    1997 U.S. Dist. LEXIS 15460 (E.D. Pa. Oct. 6, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . 10

International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977) . . . . . . . . . . . . . 16

Jalil v. Avdel Corp., 873 F.2d 701(3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Jamison v. Wilmington Police Dep't, 2004 WL 2434298 (D. Del. Oct. 12, 2004) . . . . . . . . . 37

Jones v. School District of Philadelphia, 198 F.3d 403 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . 15

Kidd v. Commonwealth of Pennsylvania,
    1999 U.S. Dist. LEXIS 7918(E.D. Pa. May 20, 1999) . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

King v. City of Philadelphia,2002 U.S. Dist. LEXIS 10276 (June 4, 2002) . . . . . . . . . 14, 16, 24

Lamb-Bowman v. Delaware State Univ., 152 F.Supp.2d 553 (D. Del. 2001) . . . . . . . . . . . . . . 11

Mack v. The City of Detroit, 649 N.W.2d 47(Mich. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . . . . . . . . . 2, 13, 14, 15, 16, 24, 33

Oaks v. City of Philadelphia, 2002 U.S. Dist. LEXIS 12151 (E.D. Pa. 2002) . . . . . . . . . . . . . 32

Padilla v. Township of Cherry Hill, 2004 U.S. App. LEXIS 20763 (3rd Cir. Oct. 5, 2004) . 35, 37

Paredes v. The City of Odessa, 128 F. Supp. 2d 1009 (W.D. Tex. 2000) . . . . . . . . . . . . . . . . . 34

PBA Local No. 38  v. The Woodbridge Police Department,
    832 F. Supp. 808 (D. N.J. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Pugh v. Heinrich, 695 F.Supp. 533 (D. Mid. Fla. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Reed v. Hartford Police Dep't, 2004 U.S. Dist. LEXIS 6237 (D. Conn. Apr. 6, 2004) . . . . . . . 37

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . 14, 24

St. Mary's Honor Society v. Hicks, 509 U.S. 502 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Sarullo v. United States Postal Service, 352 F.3d 789, 798 (3d Cir. 2003) . . . . . . . . . . . . . . . 16

Smith-Berch, Inc. v. Baltimore County, 68 F. Supp. 2d 602 (D. Md. 1999) . . . . . . . . . . . . . . 36

Thomas v. City of Philadelphia, 2002 U.S. Dist. LEXIS 12264 (E.D. Pa. Feb. 7, 2002) . . . . . . 35

Thomas v. Wilmington Police Department,1994 Del. Super. LEXIS 266 ( Del. Super. 1994)    35

Thompson v. John J. Madden Mental Health Center,
    2002 U.S. App. LEXIS 9094 (7th Cir. May 9, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Tummala v. Merck Co., Inc., 1995 U.S. Dist. LEXIS 16920 (D. N.J. November 9, 1995) . 13, 15

Waldron v. SL Industries, Inc., 56 F.3d 491 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Washington v. Wilmington Police Department,
    1995 Del. Super. LEXIS 472 (Del. Super. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Wayne v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 11

Weldon v. Kraft, 896 F.2d  793 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Woodbury, et al. v. New York City Transit Authority,
    832 F.2d 764 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Zombro v. Baltimore City Police Department, 868 F.2d 1364 (4th Cir. 1989) . . . . . . . . . . . . . 36

**Statutes**

Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 11, 13, 15, 32, 40

1 Wilm. C. §35-111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 12, 38, 39, 40

1 Wilm. Ch. §3-100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Rules**

Fed. R. Civ. P. 56(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Other Sources**

3 Eugene McQuillan, the Law of Municipal Corporations §12.40 (1990)  . . . . . . . . . . . .  34, 35

_____

## <u>NATURE AND STAGE OF PROCEEDINGS</u>

_____On March 22, 2005, Plaintiff Kenneth A. Boyd filed a Complaint in the United States District Court for the District of Delaware.  Plaintiff's Complaint alleges that Defendant Wilmington Police Department violated his federally protected rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000(e) et seq.) and 42 <u>U.S.C.</u> §1981 when he was not promoted to the rank of sergeant in April, 2004.  Plaintiff alleges that he was discriminated against based upon his race (African-American).  Plaintiff further alleges that his failure to be promoted is also a violation of State law, specifically a breach of the implied covenant of good faith and fair dealing found in employment contracts, and Wilmington City Charter, Article IV, 35-111, relating to equal employment opportunities.

Discovery proceedings in this matter closed on January 31, 2006.

The following is Defendant Wilmington Police Department's Opening Brief filed in support of its Motion for Summary Judgment.

## SUMMARY OF ARGUMENTS

Plaintiff cannot meet his burden of proof under the McDonnell Douglas burden-shifting framework governing race discrimination cases. Given the undisputed facts in the record, Plaintiff is unable to establish a prima facie case for race-based discrimination, or demonstrate by a preponderance of the evidence that the legitimate, non-discriminatory reasons for promoting Rodriguez rather than Plaintiff were pretextual and the decision actually motived by racial animus. The factual record demonstrates that 1) Chief Szczerba has previously promoted officers with less seniority, including African-American officers; 2) Chief Szczerba has promoted African-American males and females in the past, some with less seniority than their Caucasian counterparts, as well as Hispanic males and females; 3) Michael Rodriguez is Hispanic and is not Caucasian as Plaintiff asserts; 4) Chief Szczerba promoted Michael Rodriguez instead of two Caucasian officers who are more senior than Michael Rodriguez, thereby negating Plaintiff's assertion that Caucasians are treated more favorably than Plaintiff; 5) there is not one witness of record who has testified that Chief Szczerba's decision to promote Rodriguez rather than Plaintiff was motived by race. Given the undisputed facts, Plaintiff is unable to meet his burden of proof on an essential element of his case, and, therefore, Defendant is entitled to judgment as a matter of law

Additionally, Defendant City of Wilmington Police Department is not a separate juridical entity from the City of Wilmington and is not subject to suit. As such, Plaintiff's complaint must be dismissed as a matter of law.

Finally, Wilmington City Code section 35-111 does not establish a private cause of action for denial of equal employment opportunities as Plaintiff asserts. Therefore, Plaintiff is unable to maintain a cause of action under 1 Wilm. C. §35-111.

## STATEMENT OF FACTS

_____On October 6, 1986, Plaintiff Kenneth Boyd was hired by Defendant Wilmington Police Department as a recruit in the Wilmington Police Academy.  In January, 1987, Plaintiff successfully graduated from the Academy and was offered full-time employment by Defendant as a police officer. Currently, Plaintiff holds the rank of master corporal.  He is also a detective assigned to Defendant's Criminal Investigations Division.  Plaintiff has been with the Defendant for approximately 20 years.

During his tenure with the Wilmington Police Department, Plaintiff has attempted promotion to the rank of sergeant.  To that end, Plaintiff has participated in the required promotional examination procedures approximately ten (10) different times.  (A-935, 946).  With the exception of the 2002-2004 promotional exam, Plaintiff never scored high enough on his exams to place himself in a position to be promoted.  (A-947).  In 2002-2004, Plaintiff's total score, including seniority points, placed him in Band II on the promotional list.  During the period 2002-2004, there were a sufficient number of promotional openings to promote all the candidates in Band I, thereby permitting some selections from Band II for promotion to sergeant.  However, Plaintiff was not promoted prior to the expiration of the 2002-2004 promotional list.  As a result, Plaintiff participated in the 2004-2006 promotional examination.  Plaintiff scored only high enough to be placed in Band III.  (A-731).

Plaintiff  alleges that he was discriminated against based upon his race (African-American) when Chief Michael Szczerba promoted Michael Rodriguez to the rank of sergeant instead of Plaintiff in April, 2004, the last promotion made prior to the expiration of the 2002-2004 promotional list.  Plaintiff alleges that Defendant Wilmington Police Department violated his federally protected rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000(e) et seq.)

and 42 U.S.C. §1981 when he was not promoted to the rank of sergeant in April, 2004.  Plaintiff further alleges that his failure to be promoted is also a breach of the implied covenant of good faith and fair dealing found in employment contracts and Wilmington City Charter, Article IV, 35-111, relating to equal employment opportunities.   In support of his allegations, Plaintiff alleges that Chief Szczerba had established a pattern of promoting officer candidates solely on the basis of seniority.  Plaintiff alleges that in direct contradiction to this pattern, when a sergeant position became available in 2004 and Plaintiff was the most senior officer candidate within his promotional band, Chief Szczerba did not promote him, but rather promoted Rodriguez, an officer with three (3) years less seniority who Plaintiff alleges is Caucasian.  Consequently, Plaintiff asserts that Chief Szczerba's decision to promote Rodriguez rather than Plaintiff was racially motivated.  (D.I.  1).

## Wilmington Police Department Promotional Procedures

Defendant Wilmington Police Department (WPD), like other police departments, is a para-military organization.  As such, the WPD maintains a rank system.  This system categorizes officers into the following ranks: patrol officer, corporal, sergeant, lieutenant, captain, inspector and chief.  The ranks of corporal and sergeant are further subdivided into senior corporal and master sergeant.  Movement within the WPD is primarily achieved by two (2) methods.  The first is promotion to the ranks of sergeant, lieutenant, captain and inspector.   The second is through the WPD Career Development Program.  (A-766-781).

The designation "senior" and "master" are achieved through participation in the WPD Career Development Program (CDP).  The requirements of the CDP are embodied in Directive 6.49 of the Wilmington Police Officer's Manual.  (A-766).  The CDP's purpose is "to provide officers some control over their own careers in terms of achievement and movement within the department."  (A-

766). The CDP measures the accomplishments of an officer with regard to his or her job performance, job experience, and personal development. The CDP is based upon a point system and assigns specific points for the following accomplishments: continuing education and training, awards and commendations, community-focused activities, performance appraisals, physical fitness, shift-work assignments, perfect attendance, and field training officer assignments. (A-768). When an officer accumulates a specific amount of points, the officer may become eligible for the career development ranks of corporal, senior corporal, and master sergeant. (A-769).

With regard to advancement to the ranks of sergeant and lieutenant, the WPD utilizes a promotional examination procedure. The promotional procedures are set forth in the Wilmington Police Officer's Manual, Directive 6.44. (A-777-781). The promotional procedure currently in place is administered by Management Scientists II, an entity wholly outside the Department. The examination process for the rank of sergeant consists of 3 parts: 1) a closed book, multiple-choice examination covering knowledge of the relevant areas contained in the study aid; 2) a problem analysis exercise testing skills and abilities used in supervision and management assessed by representatives from other law enforcement agencies that are trained in the promotional process; and 3) a written resume presentation made to a panel consisting of representatives from other law enforcement agencies that are trained in the promotional process. The scores received in each component are weighted 30%, 40% and 30%, respectively. The scores are standardized, weighted and rescaled to generate a "total promotional score." Once all candidate scores are derived, bands are created based upon the total promotional score. "Seniority points" are assessed to each candidate

-5-

based upon his/her anniversary date and added to his/her total promotional score.[1]  The candidates

are then placed into bands.  The addition of seniority points can only assist a candidate in moving

into a higher band.  Seniority does not have the effect of moving any candidate into a lower band.

This final set of bands is provided to the Chief of Police.  The final promotional list remains in effect

for 2 years.

The Chief may only select those candidates in Band I for promotion.  Only when Band I is

exhausted may the Chief select candidates from Band II.  Although the promotional list usually

contain multiple bands, the list usually expires before the Chief has exhausted all candidates from

Band II.  Therefore, historically speaking, only those candidates who score sufficiently high enough

to be placed in Bands I or II are likely to be promoted.  Further, all candidates within a band are

considered equal, and the Chief has the discretion to promote any candidate from within the band

currently in play.  (A-9777-781; 943-944).

Promotion to the rank of captain or inspector does not require participation in a promotional

examination.  The Chief of Police selects officers from the pool of lieutenants for promotion to the

rank of captain.  Likewise, the Chief of Police, with the approval of the Mayor of the City of

Wilmington, will promote an officer to the rank of inspector from the pool of existing captains.

## Promotional Selections of Chief Michael Szczerba

Chief Michael Szczerba was appointed Chief of Police in January, 2001.  At the time of his

appointment, several promotional openings existed in the following ranks: inspector, captain,

lieutenant, and sergeant.  With regard to the rank of inspector, Chief Szczerba selected, and Mayor

---

[1] The addition of seniority points into the promotional process was established by Chief
Michael Szczerba when he was appointed Chief of Police in 2001. (A-942; 1054).

James Baker approved, James Wright, an African-American male who was the least senior of six (6) captains eligible for promotion.  Of the six captains, four (4) were Caucasian, one (1) was female and three (3) were males.    (A-784-793; 1059-1060).  Chief Szczerba also promoted three (3) individuals to the rank of captain.  At the time, the following individuals (in order of seniority) holding the rank of lieutenant were eligible for promotion to captain: Sean Finerty (w); Philip Freccia (w); John Randolph (w); Carol Senghaas (w); Victor Ayala (h); Ruth Townsend (b); Bruce Mulrine (w); Bobby Cummings (b); Jerry Custis (b); Christine Dunning (w); Donald Bowman (b).  (A-784-793).  In order of their promotion, Chief Szczerba selected Finerty, Ayala and Cummings.  By promoting Ayala, a Hispanic officer, Chief Szczerba passed over three Caucasian officers with more seniority than Ayala.  By promoting Cummings, an African-American officer, Chief Szczerba passed over five (5) officers with more seniority than Cummings.  Four (4) of those officers are Caucasian. (A-784-793).

With regard to promotions to the rank of lieutenant from the 2000-2002 promotional list, Band I was comprised of the following candidates, in order of seniority: Clayton Smith (b); Robert Fox (w); Mitchell Rock (w); Carolyn Henry (w); Robert Williams (w).  Chief Szczerba promoted Fox, Smith, Henry, Rock and Williams, respectively.  By promoting Fox first, Chief Szczerba passed over one (1) officer with more seniority.  By promoting Henry third, Chief Szczerba passed over one (1) officer with more seniority.  (A-784-793; 812).

With regard to promotions to the rank of sergeant from the 2000-2002 promotional list, Band I was comprised of the following candidates, in order of seniority: Mayna Santiago (h); Thomas Dempsey (w); Steven Barnes (w); Walter Ferris (w); Sherrie Tull (b); Donald Bluestein (w); Scott Jones (w).  Chief Szczerba promoted Dempsey, Barnes, Santiago, Ferris and Tull, respectively.  By

promoting Dempsey first, Chief Szczerba passed over one (1) officer with more seniority.  By promoting Barnes second, Chief Szczerba passed over one (1) officer with more seniority.  (A-784-793; 813).

With regard to promotions to the rank of lieutenant from the 2002-2004 promotional list, Band I was comprised of the following candidates, in order of seniority: John Fogelgren (w); John Snyder (w); Bruno Battaglia (w); Faheem Akil (b); William Browne (w); and Mayna Santiago (h). Chief Szczerba made two (2) promotions prior to the expiration of the 2002-2004 lieutenant promotional list: Battaglia and Browne, respectively.  By promoting Battaglia, Chief Szczerba passed over two (2) officers with more seniority.  By promoting Browne, Chief Szczerba passed over three (3) officers with more seniority.  (A-784-793; 836).

With regard to promotions to the rank of sergeant from the 2002-2004 promotional list, Band I was comprised of the following candidates, in order of seniority: Raymond Wyatt (w); Scott Jones (w); Deborah Donohue (w).  Chief Szczerba promoted Wyatt, Jones and Donohue in November, 2002, February, 2003 and March, 2003, respectively.  Two more sergeant positions opened in 2003. Therefore, Chief Szczerba turned to the candidates in Band II.  Band II of the 2002-2004 promotional list was comprised of the following candidates, in order of seniority: Dennis O'Connor (w); Joseph Sammons (w); Liam Sullivan (w); Kenneth Boyd (b); Robert Curry (w); Ralph Hauck (w); Michael Rodriguez (h); Anthony Harris (b); Charles Emory (b); Stephen Misetic (w).  Chief Szczerba promoted O'Connor, Sammons, Sullivan, and Rodriguez in July, 2003, December, 2003, March, 2004 and April, 2004, respectively.  By promoting Rodriguez, a Hispanic officer, Chief Szczerba passed over three (3) officers with more seniority, including two (2) Caucasian officers.  (A-784-793; 837).

In reviewing Chief Szczerba's promotional selections, there are several undisputed facts. First, it is undisputed that the only band that was promoted in order of seniority was Band I of the 2002-2004 sergeant's promotional list. Second, it is undisputed that there are eleven instances where Chief Szczerba did not select the most senior officer within the eligible pool of candidates for promotion. Third, Chief Szczerba's promotional selections have been diverse with regard to race and gender. Chief Szczerba has promoted women, African-Americans and Hispanics to elevated ranks within the Department, including promoting an African-American to inspector, the second highest position in the WPD.

### EEOC Complaint

On August 31, 2004, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission. In his EEOC Complaint, Plaintiff alleged violations of Title VII and the Age Discrimination in Employment Act of 1967. Plaintiff alleged that promoting Rodriguez, an Hispanic officer, over Plaintiff constituted racial discrimination. Further, Plaintiff alleged that promoting Rodriguez over Curry and Hauck constituted age discrimination. (It should be noted that although Plaintiff recognized that Rodriguez is Hispanic in his EEOC filing, Plaintiff now states in his District Court Complaint and throughout discovery proceedings that Rodriguez is Caucasian.) (A-727-728).

On December 22, 2004, the EEOC dismissed Plaintiff's complaint, noting that it was unable to conclude that Defendant violated Title VII or the Age Discrimination in Employment Act of 1967. (A-733).

-9-

## ARGUMENT

## STANDARD OF REVIEW

Summary judgment serves to "avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Fraser v. Pennsylvania State System of Higher Education, et al., 1994 U.S. Dist. LEXIS 7409, *8 (E.D. Pa. June 6, 1994), citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). The Court must grant summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), cert denied, 484 U.S. 1066 (1988), and Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986).

The moving party bears the burden of proving that no genuine issue of material fact is in dispute. See Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, "[t]he moving party is not required to negate the non-movant's claim, but is only required to point out the lack of evidence supporting the non-movant's claim." Carrigan v. State, 957 F. Supp. 1376, 1381 (D. Del. 1997); see also Big Apple BMW, Inc., et.al v. BMW of North America, Inc., et. al, 974 F.2d 1358, 1362 (3d Cir. 1992).

Once the moving party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-moving party cannot produce "concrete evidence from which a reasonable [trier of fact] could return a verdict in [his] favor," then summary judgment for the movants must be granted. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." Lamb-Bowman v. Delaware State Univ., 152 F.Supp.2d 553, 557-558 (D. Del. 2001), citing Anderson, 477 U.S. at 249.

A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Wayne v. Borough of West Chester, 891 F.2d 458, 459 (3d Cir. 1989). Indeed, the non-movant must provide "significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 249. The moving party "may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987).

**I    PLAINTIFF CANNOT MEET HIS BURDEN OF PROOF UNDER THE McDONNELL DOUGLAS BURDEN-SHIFTING FRAMEWORK GOVERNING RACE DISCRIMINATION CASES. THEREFORE, PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VII, 42 U.S.C. §1981, AND STATE LAW.**

Plaintiff Kenneth A. Boyd alleges that Defendant Wilmington Police Department violated his federally protected rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000(e) et seq.) and 42 U.S.C. §1981 when he was not promoted to the rank of sergeant in April, 2004. Specifically, Plaintiff alleges that he was discriminated against based upon his race (African-American) when Chief Michael Szczerba promoted Michael Rodriguez to the rank of sergeant instead of Plaintiff. Plaintiff further alleges that his failure to be promoted is also a violation of State law, specifically a breach of the implied covenant of good faith and fair dealing found in employment contracts, and

Wilmington City Charter, Article IV, 35-111, relating to equal employment opportunities.

In support of his allegations, Plaintiff alleges that Chief Szczerba had established a pattern of promoting officer candidates solely on the basis of seniority. Plaintiff alleges that when a sergeant position became available in 2004, and Plaintiff was the most senior officer candidate within his promotional band, Chief Szczerba did not promote him, but rather promoted Rodriguez, an officer with three (3) years less seniority who Plaintiff alleges is Caucasian. Plaintiff alleges that this action was in direct contradiction to the established pattern of promotions. Consequently, Plaintiff asserts that Chief Szczerba's decision to promote Rodriguez rather than Plaintiff was racially motivated.

Plaintiff's allegations of racial discrimination are wholly without merit and unsupported by the factual record. Chief Szczerba's decision to promote Rodriguez to the rank of sergeant was not based upon the fact that Plaintiff was African-American or that Rodriguez was allegedly Caucasian. Chief Szczerba promoted Rodriguez over all other eligible candidates in the promotional band because Chief Szczerba believed that Rodriguez possessed the leadership qualities that he was seeking in a supervisor. (A 1057-1058, 1064).

Plaintiff's theory in this matter is that since Michael Szczerba took his position as chief of the Wilmington Police Department, he has established a pattern of promoting officers based solely upon the officer's seniority. Plaintiff further alleges that Caucasian males and females receive more favorable treatment than African-American males, as demonstrated by the fact that Chief Szczerba promoted Rodriguez rather than Plaintiff. Therefore, Plaintiff believes that the only possible reason why he was not promoted to sergeant in April, 2004 was because he was African-American. (A-966). However, Plaintiff's theory is fundamentally flawed as demonstrated by the following undisputed facts. First, Chief Szczerba has previously promoted officers with less seniority,

-12-

including African-American officers.   Second, Chief Szczerba has promoted African-American males and females in the past, some with less seniority than their Caucasian counterparts, as well as Hispanic males and females.   Third, Michael Rodriguez is Hispanic and is not Caucasian as Plaintiff asserts. (A-204-205; 1062).   Fourth, Chief Szczerba promoted Michael Rodriguez instead of two Caucasian officers who are more senior than Michael Rodriguez, thereby eviscerating Plaintiff's assertion that Caucasians are treated more favorably than Plaintiff.   Finally, there is not one witness of record who has testified that Chief Szczerba's decision to promote Rodriguez rather than Plaintiff was motived by race.   Given the undisputed facts, Plaintiff is unable to meet his burden of proof on an essential element of his case, and, therefore, Defendant is entitled judgment as a matter of law.

A plaintiff who brings a claim against an employer alleging racial discrimination carries the ultimate burden of proving by a preponderance of the evidence that race was the determinative factor behind the adverse employment action.  Tummala v. Merck Co., Inc., 1995 U.S. Dist. LEXIS 16920, *7 (D. N.J. November 9, 1995), citing St. Mary's Honor Society v. Hicks, 509 U.S. 502 (1983). Absent direct evidence of discrimination, the United States Supreme Court has implemented a burden-shifting framework applicable in the summary judgment context whereby a plaintiff must establishing an inference of discrimination.   This burden-shifting framework is set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and is the appropriate analysis utilized by the Court in cases alleging violations of Title VII, 42 U.S.C. §1981, a breach of the implied covenant of good faith and fair dealing in the employment discrimination context and violations of state discrimination statutes.  Waldron v. SL Industries, Inc., 56 F.3d 491, 504 (3d Cir. 1995).

Under the McDonnell Douglas framework, the burden of production is allocated according

-13-

to a three prong process. First, Plaintiff must adduce sufficient evidence from the record establishing a prima facie case of discrimination. Second, if Plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendant, who must articulate some legitimate nondiscriminatory reason for the employment action. Defendant's burden is satisfied "if it introduces evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." King v. City of Philadelphia, 2002 U.S. Dist. LEXIS 10276, at *26, Giles, C.J. (June 4, 2002)(applying the McDonnell Douglas framework to a race discrimination claim by a police officer who was terminated from employment); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). "This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes, 32 F.3d at 763. The Defendant must simply produce evidence sufficient to dispel the inference of discrimination raised by Plaintiff Ferguson v E.I. duPont de Nemours and Company, Inc., 560 F. Supp. 1172, 1200 (D. Del. 1983)

Third, if Defendant meets its burden by offering a nondiscriminatory justification for the employment action, thereby rebutting the presumption of discrimination, the burden of production shifts once again to Plaintiff. Plaintiff must now demonstrate by a preponderance of the evidence that Defendant's explanation is merely pretextual. King, 2002 U.S. Dist. LEXIS at *27; see Reeves, 530 U.S. at 143; Fuentes, 32 F.3d at 763. In order to prove pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either: 1) disbelieve the employer's articulated legitimate reasons; or 2) believe that an invidious discriminatory reason was

-14-

more likely than not a motivating or determinative cause of the employer's action." <u>Fuentes</u>, 32 F.3d at 764. This third prong carries a more onerous burden of persuasion and turns the inquiry "from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced." <u>St. Mary's Honor Society v. Hicks</u>, 509 U.S. 502 (1983). In the third aspect of the <u>McDonnell Douglas</u> analysis, the Court must focus on whether there is sufficient evidence from which a jury could conclude that Defendant's adverse employment actions were in actuality a pretext for intentional racial discrimination. <u>Jones v. School District of Philadelphia</u>, 198 F.3d 403, 412-413 (3d Cir. 1999). "At trial, the plaintiff must convince the finder of fact 'both that the reason was false, and that discrimination was the real reason.'" <u>Id.</u> The Third Circuit has expressly stated:

> The plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence. <u>Id.</u>

In a matter alleging violations of Title VII, §1981, and the state law claims raised herein, a defendant shall prevail on a motion for summary judgment if the defendant can demonstrate that the plaintiff fails to establish his prima facie case of discrimination. If the plaintiff can establish a prima facie case, a defendant shall still prevail on a motion for summary judgment if it has offered a legitimate, nondiscriminatory reason for its actions and has demonstrated no genuine issue of material fact regarding whether defendant's proffered explanation is pretextual. <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989); <u>Tummala</u>, 1995 U.S. Dist. LEXIS 16920 at *8. In the matter at

-15-

bar, Plaintiff cannot established a prima facie case of racial discrimination or that Defendant's reason for promoting Rodriguez is pretextual and racial animus was the real reason why Plaintiff was not promoted.

**A.    Given the undisputed facts in the record, Plaintiff is unable to establish a prima facie case for race based discrimination.**

In order to establish a prima facie case of discrimination, Plaintiff must demonstrate by a preponderance of the evidence that: 1) he belongs to a racial minority; 2) he was qualified for the position; 3) he suffered an adverse job action; and 4) employees who are not members of the protected class were treated differently. King v. City of Philadelphia, 2002 U.S. Dist. LEXIS 10276, at *26, Giles, C.J. (June 4, 2002)(applying the McDonnell Douglas framework to a race discrimination claim by a police officer who was terminated from employment); *see also* Weldon v. Kraft, 896 F.2d 793, 797 (3d Cir. 1990). Whether Plaintiff has established a prima facie case of discrimination is a question of law for the Court to determine. Sarullo v. United States Postal Service, 352 F.3d 789, 798 (3d Cir. 2003). Although the prima facie case must remain flexible and tailored to fit the specific context in which it is applied, the central focus of the prima facie case "is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" Id., quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). Given the undisputed facts in the record, Plaintiff cannot establish a prima facie case of racial discrimination because he cannot establish that the Defendant treated him less favorably than Caucasian males with regard to the decision to promote Rodriguez in April, 2004.

In the fourth prong of Plaintiff's prima facie case, Plaintiff must establish that he, as an

African-American officer, was treated less favorably than Caucasian officers when he was not promoted to sergeant in April, 2004. Stated differently, Plaintiff must demonstrate that a Caucasian officer was treated more favorably than Plaintiff, i.e., a Caucasian officer was promoted instead of Plaintiff. This fact is an essential element of his case, and Plaintiff must prove its existence by a preponderance of the evidence.

Plaintiff's entire case is based upon the allegation that despite the fact that he was the most senior candidate in Band II, Chief Szczerba chose to promote a Caucasian officer with less seniority, thereby demonstrating that Caucasian males and females are treated more favorably than African-American males with regard to promotions. However, Plaintiff simply cannot demonstrate that a Caucasian officer received more favorable treatment because Rodriguez, the officer promoted instead of Plaintiff, is not Caucasian as Plaintiff alleges in his Complaint and deposition testimony. Rather, Rodriguez, as his name suggests, is Hispanic. (A-204-205). Even more significant is the fact that Chief Szczerba chose to promote Rodriguez, a Hispanic male, instead of two (2) Caucasian officers who were next in seniority after Plaintiff. (A-790).

At the time Rodriguez was promoted, the candidates remaining in Band II, in order of seniority, were as follows: Plaintiff, Robert Curry (w); Ralph Hauck (w); Michael Rodriguez (h); Anthony Harris (b); Charles Emory (b); Stephen Misetic (w). (A-837). Under Plaintiff's theory of the case, Chief Szczerba, the individual who according to Plaintiff allegedly favors Caucasian officers, should have promoted a Caucasian officer, presumably the next most senior Caucasian officer. Again, under Plaintiff's theory, that individual should have been Robert Curry. In reality, Chief Szczerba did not promote Curry, or for that matter Hauck, but instead promoted Rodriguez, an Hispanic officer who was fourth in terms of seniority within Band II. By promoting Rodriguez,

-17-

an Hispanic officer, Chief Szczerba passed over two (2) Caucasian officers with more seniority.

Given these irrefutable facts, Plaintiff simply cannot prove an essential element of his prima facie case for racial discrimination. Plaintiff cannot prove his own allegation that he was treated less favorably than Caucasian males and females because the undeniable fact remains that Chief Szczerba promoted an Hispanic male, not a Caucasian male. As such, Defendant is entitled to judgment as a matter of law.

Further, to the extent that Plaintiff is alleging that Chief Szczerba's past promotions are an indication that Plaintiff, as an African-American officer, was treated less favorably than Caucasian officers, Plaintiff still cannot establish a prima facie case for racial discrimination. Plaintiff's sole support for his allegation that Defendant treated him less favorably than Caucasian officers by not promoting him is that Chief Szczerba's other promotional selections had all been based upon seniority until he was the most senior candidate, at which time Chief Szczerba promoted an alleged Caucasian male with less seniority instead of Plaintiff. (A-887-888; 965-968).

Plaintiff attempts to establish this fact by pointing to Chief Szczerba's past promotional selections. In his Complaint, Plaintiff states:

> Plaintiff believes that an analysis of the 2000 to 2002 Management Scientists II eligibility list proves that promotions were made in accordance with seniority. The first three (3) selections from the Sergeant-candidate list were all promoted at the same time. The final two (2) selections from this list were also made by seniority. The two (2) candidates not selected had the least amount of time and seniority. The 2002-2004 Management Scientists II eligibility list again establishes that the Chief was promoting by seniority. The candidates from "Band I" were selected by seniority. Also, the first three (3) candidates from "Band II" were also promoted according to seniority. D.I. 1 ¶ ¶ 28, 29.

However, Plaintiff has distorted the facts in this case in a self-serving and futile attempt to prove that

-18-

he was treated differently because of his race.

Plaintiff has intentionally and without a reasonable basis narrowed the scope of his allegations to focus attention solely on the promotions of African-American males who were candidates for the rank of sergeant, deliberately ignoring Chief Szczerba's other promotions of African-American males and females to various ranks within the Department, not just the rank of sergeant. Why distinguish between African-American males and African-American females if the issue in this case is race discrimination rather than gender? Why distinguish between Chief Szczerba's promotional selections for the rank of sergeant and the ranks of lieutenant, captain and inspector? The answer is simply because to do otherwise would completely disprove Plaintiff's allegation of racial discrimination. However, given that Plaintiff has leveled the very serious charge that Chief Szczerba's decision not to promote Plaintiff was motivated by racial animus, and Plaintiff alleges racial discrimination with regard to Chief Szczerba's failure to promote Faheem Akil to the rank of lieutenant as further support for Plaintiff's case of race discrimination, it is imperative that the Court review all of Chief Szczerba's promotional decisions. Chief Szczerba's past promotions, regardless of rank, are relevant and probative to determining whether Plaintiff can establish that Chief Szczerba used seniority as the determinative factor in promotions and that Plaintiff's case was an aberration which can only be explained by racial animus.

Plaintiff's contention that Chief Szczerba promotes officer candidates based upon seniority is false. While there are several instances in which Chief Szczerba's promotions are in order of seniority, there are also several instances where Chief Szczerba promoted individuals with less seniority, including African-Americans, thus making Plaintiff's assertions false. See, Statement of Facts, *supra*. In reviewing Chief Szczerba's promotional selections, it is undisputed that the only

-19-

band that was promoted in order of seniority was Band I of the 2002-2004 sergeant's promotional list.  It is undisputed that there are eleven instances where Chief Szczerba did not select the most senior officer within the eligible pool of candidates for promotion.  It is undisputed that Chief Szczerba's promotional selections have been diverse with regard to race and gender.  (A784-786; 1078-1104).  Chief Szczerba has promoted women, African-Americans, and Hispanics to elevated ranks within the Department, including promoting an African-American to Inspector, the second highest position in the WPD.  Therefore, the existence of other instances in which Chief Szczerba promoted less senior candidates, including African-American officers, precludes Plaintiff from establishing that he was treated less favorably than Caucasian officers.

Furthermore, Chief Szczerba stated during his deposition that he is generally unaware of the seniority of the individuals within a specific band.

> Q:    Prior to the filing of this complaint, did you know, when you looked at the bands, the seniority of the individuals in the band?
>
> A:    No.  I have maybe had an idea but didn't look at the seniority list, or that's what I would have to refer to even to this date to look at this list if someone had a question about who's senior to who because it's a very difficult thing to do.  As time passes in 27 years, in addition to – sometimes you're – it's a matter of splitting hairs because you have individuals within the same band out of the same academy class.  However, they do have a pecking order for seniority basis and how they finished in the academy class.  (A-1063).

Plaintiff also attempts to establish that Chief Szczerba's promotional selections are based upon seniority through the statements of two (2) officers, then Captain Gilbert Howell and Sergeant Deborah Donohue.  These are the only two (2) officers Plaintiff alleges heard Chief Szczerba state

that he was promoting candidates based upon seniority. However, these alleged statements do not establish that Chief Szczerba's basis for promotions is seniority.

As proof that seniority was the method by which promotions were made, Plaintiff offers a statement by Howell that "he[, Howell,] was present during a staff meeting when he heard the Chief say he was promoting by seniority..." (D.I. 1 ¶ 37). During his deposition, Howell stated:

> It was at a staff meeting. I don't remember the date. I don't remember the year. But it was shortly after he was promoted to chief, and we knew, meaning the captains and — well, everyone knew that there was some promotions hanging in the balance, and in one of the conversations, the chief had said that he would be basing his promotions on seniority. (A-1032).

However, no other individual required to attend staff meetings ever heard Chief Szczerba state that he was promoting candidates on the basis of seniority. Indeed, Inspectors Martin Donohue and James Wright, Captains Victor Ayala, Bobby Cummings, Nancy Dietz, Marlyn Dietz, Sean Finerty, James Jubb, Michael Maggitti, and Lieutenant Mitch Rock all state that Chief Szczerba never discussed promotions during staff meetings. (A-1078-1080; 1083-1104). Further, the promotions made by Chief Szczerba after he was appointed to the position of chief were, in fact, not in order of seniority as Howell suggests. See, Statement of Facts, *supra*. Not only are the promotions not in order of seniority, but the promotions are racially diverse. Again, it is important to note that while Plaintiff attempts to limit the issue in this case to seniority within the promotions to sergeant, Howell's statement, if taken as true, indicates that all Chief Szczerba's promotions would be by seniority, a statement that is undisputably belied by the actual promotional selections.

Lastly, Howell admits during his deposition that the statement purportedly made by Chief Szczerba during a staff meeting could have referred to the seniority point system that Chief Szczerba

-21-

implemented as part of the Management Scientists II promotional test system:

> Q:    Do you know who implemented that seniority points system?
>
> A:    I remember, if it was still in session, one chief did it, and then one chief did away with it.   But I'm not really sure which came first or second.
>
> Q:    So let me see if I understand your answer.  Are you saying you don't know who implemented the seniority points?
>
> A:    No, but I know at one point they had them, and then at one point they didn't have them.  But in what order of that, I don't remember.
>
> Q:    Do you know if Chief Szczerba officially implemented seniority points when [he] took his position as chief?
>
> A:    I don't — I don't remember.
>
> Q:    You indicated that Chief Szczerba, during a staff meeting, stated that he used seniority in his promotions.
>
> A:    Yes.
>
>                         ***
>
> Q:    Could he have been referring to the seniority point system that he implemented?
>
> A:    I'm not sure.
>
> Q:    You don't know?
>
> A:    I'm not sure.  If that's what he meant.
> (A-1036)

Nonetheless, even if the Court finds for purposes of summary judgment that Howell's statement is true, Howell specifically indicated at his deposition in response to questioning from Plaintiff's counsel that he did not believe that race was the motivating factor when Chief Szczerba did not promote Plaintiff.

-22-

Q:     As to Detective Boyd, ... do you feel that [he was denied promotion based upon his race?

A:     No.

Q:     I'm sorry?

A:     No

Q:     You don't think that's accurate?

A:     No.  What I think was accurate, was he was – he was senior and he was not promoted.   (A 1034).

Plaintiff also points to a statement made by Sergeant Deborah Donohue of the Wilmington Police Department that "the Chief told her that when she was promoted, he was promoting based upon seniority because he felt it was the best and most reasonable way to go about the process." D.I. 1 ¶16.  However, Plaintiff mischaracterizes Donohue's statement.  During her deposition, Donohue indicated that when Chief Szczerba informed her of his decision to promote her to the rank of sergeant, he stated that he had had a difficult time discerning which of the three (3) candidates that comprised Band I should be promoted first because all three (3) candidates were so well qualified for the responsibilities of sergeant.  As such, he resorted to using seniority in that instance.  (A1022-1025).  Donohue stated that Chief Szczerba had only been referring to the three (3) promotional selections in Band I, not to all his promotional selections.  (A-1025).  As such, Donohue's testimony provides no evidentiary support to Plaintiff's allegation that seniority was the method by which Chief Szczerba made all his promotional selections.

B.     **Plaintiff is unable to demonstrate by a preponderance of the evidence that the legitimate, non-discriminatory reasons for promoting Rodriguez rather than Plaintiff were pretextual and the decision actually motived by racial animus.**

Even if the Court finds for purposes of summary judgment that Chief Szczerba has established

-23-

a past pattern of promoting candidates based upon seniority, this information does not prove by a preponderance of the evidence that the reason why Chief Szczerba promoted Rodriguez rather than Plaintiff was because Chief Szczerba discriminates against African-Americans.  The existence of several instances of promotions in order of seniority simply does not prove that racial animus motived Chief Szczerba not to promoted Plaintiff to sergeant.  Rather, Plaintiff is required to provide direct or circumstantial evidence in the record demonstrating pretext.  In the instant matter, the record is devoid of such evidence, and, as such, Plaintiff cannot meet this more onerous burden of proof required under the <u>McDonnell Douglas</u> analysis.

It is well-established that at this point in the <u>McDonnell Douglas</u> analysis, Plaintiff must produce specific, concrete evidence that race was the motivating factor as to why Plaintiff was treated differently.  When the employer articulates a legitimate, nondiscriminatory reason, thereby satisfying the second prong of the analysis, the presumption of discrimination "drops from the case," and the burden of production shifts once again to the Plaintiff.  <u>Collins v. State of Illinois</u>, 830 F.2d 692, 700 (7th Cir. 1987).  In order to defeat a motion for summary judgment, Plaintiff must demonstrate by a preponderance of the evidence that the Defendants' explanation is pretextual.  <u>King</u>, 2002 U.S. Dist. LEXIS at *27; *see* <u>Reeves</u>, 530 U.S. at 143; <u>Fuentes</u>, 32 F.3d at 763.  In order to prove pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either: 1) disbelieve the employer's articulated legitimate reasons; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  <u>Fuentes</u>, 32 F.3d at 764.

Chief Szczerba has testified that when confronted with the difficult decision of who to promote to a leadership position in the Wilmington Police Department, whether that position be

sergeant, lieutenant, captain or inspector, he selects the candidate who most exemplifies the

leadership qualities which he believes are important in a supervisor serving under his stewardship.

This decision is based on those oftentimes intangible qualities that cannot simply be captured in an

evaluation, but are exhibited in an individual's work and work ethic.  In articulating those qualities,

Chief Szczerba stated:

> I try to pick the person who I believe that the men and women of the
> Wilmington Department of Police would follow.  And I'll be
> repeating myself somewhat, by taking into consideration the overall
> supervisory capabilities, again, the ability to make decisions, make
> independent decisions, communication skills, their display of their
> initiative, self-initiation of activity, the ability to go above and
> beyond. Example there would be participation in our crisis
> management team, for example.  Again, respect by peers and
> subordinates.  If there was something that recently happened
> disciplinary-wise, that would be taken into consideration and, of
> course, their experience.  By experience, it's just not a matter of the
> number of years you have at any particular job or on the police
> department, it's what you have done with what you have learned with
> that experience. ( A-1055).

When asked by Plaintiff's counsel why he did not select Plaintiff, but instead chose

Rodriguez,  Chief Szczerba stated that he did not think of that his choice was limited to Plaintiff and

Rodriguez, but rather he chose Rodriguez over all the other candidates remaining in Band II,

including more senior Caucasian candidates.

> Q:     What can you tell me about your selection? What factors
>        entered into your consideration when you selected Mike
>        Rodriguez over Ken Boyd?
>
> A:     Well, there wasn't a situation of Mike Rodriguez over Ken
>        Boyd.  It was Mike Rodriguez over Ken Boyd, Steve Misetic,
>        Robert Curry, Charles Emory, Anthony Harris, and Ralph
>        Hauck. So it wasn't pitting one candidate versus the other.  It
>        was, again, reviewing what I believed their supervisory
>        abilities are as compared to the rest of the people eligible.

***

Q:    [T]ell me why Ken Boyd was not selected as sergeant?

A:    [M]y response would be a matter of why Mike Rodriguez was selected, not a matter of why Kenny Boyd wasn't promoted, why... the selection wasn't Steve Misetic, ... Robert Curry, ... Charles Emory, ... Anthony Harris, ... Ralph Hauck because it was presenting a situation that those other candidates were not even considered.

Q:    ...[C]ould you please compare and contrast the candidacies of Rodriguez versus Boyd?

A:    Mike Rodriguez, self-motivated, takes self-initiated action. He's a good communicator.  Recognized not only by his peers — his peers and his supervisors as a superb performer, recognized by the Delaware League of Local Governments as the Police Officer of the Year... [C]ommunication skills, self-initiated action, his willingness to go above and beyond, a member of our crisis management team, better known as the SWAT team.

Q:    Can you tell me how Mike Rodriguez was motivated?

A:    I know from a period of him taking initiative to always apply for training, his attending of college courses and, I believe, attained a bachelor's degree while on the police department, taking on his own initiative Spanish classes to become more proficient in Spanish, self-initiated in the ability to investigate and especially as a drug investigator, developing numerous search warrants, either through complaint-related or, again, self-initiated with working with informants.

Q:    Communication skills.

A:    Communication skills, I know he can put his thoughts down in writing.  I witnessed his court testimony before.  I witnessed his ability to communicate at community meetings.

Q:    You said he was a superb performer?

A:    Yes.

-26-

Q:    You said he was determined to be Police Officer of the Year
      by the Delaware League?

A:    Yeah, Delaware League of Local Governments.

Q:    Do you remember what year this was?

A:    Either in 2001 or 2002.  He was also recognized by Kiwanis
      Club of Wilmington as a police officer of the quarter and
      possibly of year, but I'm not sure of the yearly award, but I
      know he was police officer of the quarter.  He also received
      numerous departmental commendations and awards.
      (A-1057-1058) (see also, A- 204-321)

Chief Szczerba candidly and without hesitation admitted that the decision of who to promote

to the rank of sergeant was difficult because the candidates all possessed positive characteristics.

(A 1-726).   However, the fundamental question that Chief Szczerba must address when making a

promotion is which candidate would make the better supervisor.  In this regard, Chief Szczerba

definitively answered that Rodriguez rather than Plaintiff made the better supervisor in his mind.

Q:    Given the two superb performers as you noted, Rodriguez and
      Boyd, how would you match them up in terms of their
      application to be sergeant?

A:    Again, all of almost equal ability according to being banded.
      I think the band is – exemplifies how close they are in that
      they are all together.  And with the – in comparison to the
      other candidates, that was one advantage we have with the
      Wilmington Department of Police is an excellent group of
      officers who I would not have any reservation if I had the
      openings to be able to promote the entire band.

Q:    Would it be accurate to say that these individuals stood out
      among the group?

A:    Yes.  Not collectively, but when it came time for the
      selections, in comparison with the rest of the band, theres has
      to be a breaking point somewhere, and they are all highly

-27-

qualified individuals and it was a difficult or challenging decision to make.

Q:    This is based on what you know and in your opinion, correct?

A:    That's correct.  It's the authority and responsibility that the chief of police for the City of Wilmington has.

Q:    Understanding that you've said several times that, when you looked at the promotion when you promoted Mike Rodriguez, that you weren't basing it on Rodriguez versus Boyd, that you were looking at all the individuals that were left in Band II at that time, understanding that that's what you're saying, but as between Ken Boyd and Mike Rodriguez, who did you feel had the better supervisory qualities that you were looking for?

A:    It's – my decision is Mike Rodriguez.

Q:    Did race have anything to do with that decision?

A:    No.
      (A-1062-1064).

The record contains no evidence, either direct or circumstantial, which would prove by a preponderance that Chief Szczerba's articulated legitimate, non-discriminatory reasons for promoting Rodriguez rather than Plaintiff, or any other candidate within Band II, are simply pretextual and hide a racial animus against African-Americans.  The only alleged "evidence" which Plaintiff purports demonstrates that race was the motiving factor in Chief Szczerba's decision are as follows: 1) the statements made by Howell and Donohue that Chief Szczerba was promoting individuals based upon seniority, together with the testimony of several officers who overheard Howell and Donohue make the statements; 2) the opinion of Lieutenant Clayton Smith of the Wilmington Police Department of "the discriminatory promotional practices of the defendant;" 3) an alleged "threat" by Officer Donald Bluestein of the Wilmington Police Department that he was

-28-

"going to kill Plaintiff if he was promoted;" and 3) a factually incorrect statement by Officer Robert

Curry of the Wilmington Police Department that Chief Szczerba is the godfather of Rodriguez's son.

However, this "evidence" is at best conjecture and speculation, and at worst, factually incorrect.

Howell stated at his deposition that while he believes he heard Chief Szczerba state at a staff

meeting that he was promoting individuals based upon seniority, he concedes that Chief Szczerba's

statement may have been referring to the seniority point system that the Chief implemented when

he took office, not how he promoted candidates from within a specific Band. Likewise, Donohue

specifically states that Chief Szczerba's statement to her regarding his use of seniority only referred

to the promotions within Band I, not to Chief Szczerba's promotions in general. Most importantly,

both Howell and Donohue specifically deny that Chief Szczerba's decision to promote Rodriguez

rather than Plaintiff was based upon racial animus. (A-1036; 1038-1039; 1021; 1023). Howell and

Donohue readily admit that Chief Szczerba's promotions have been racially diverse. (A-1025;

1039). Plaintiff's assertion that Lieutenant Faheem Akil heard Howell's statement regarding Chief

Szczerba's comment at a staff meeting is irrelevant. This testimony is not probative of the issue of

racial animus, particularly in light of Howell's concession that Chief Szczerba could have been

referring to the seniority points system. According to the record, Akil did not hear Chief Szczerba's

statement first-hand. Likewise, Plaintiff's assertion that Officers Michael Groark and Gary Tabor

heard Donohue's statement to Plaintiff regarding the Chief's comment when she was promoted is

also irrelevant. The issue here is not whether Howell and Donohue made certain statements to

Plaintiff, but whether and what statements Chief Szczerba allegedly made to Howell and Donohue.

These alleged "witnesses" possess no direct knowledge of whether Chief Szczerba's decision was

motivated by racial animus. They did not hear Chief Szczerba make these alleged comments, they

simply heard second-hand accounts of what Chief Szczerba allegedly stated, and, as such, can only offer inadmissible hearsay testimony.

Plaintiff also asserts that the opinion of Smith regarding "the discriminatory promotional practices of the defendant [WPD]" is also evidence of racial discrimination. However, the only thing that Smith can offer is his opinion on the matter. Smith is not involved in the promotional process. Further, the issue here is not the promotional system itself, as Plaintiff has admitted that the system, Management Scientists II, is not discriminatory. The issue is whether Plaintiff can prove that Chief Szczerba's decision was motivated by racial animus. Again, like Akil, Groark, and Tabor, Smith has no direct knowledge of how or why Chief Szczerba makes his promotional selections. Evidence demonstrating that "nonmembers of the protected class were treated more favorably" with respect to discipline may consist of "statements made by those closely involved in the decision which indicate that [race] was connected with the decision...." Kidd v. Commonwealth of Pennsylvania, 1999 U.S. Dist. LEXIS 7918, * 16 (E.D. Pa. May 20, 1999)(internal citations omitted). Plaintiff has failed to offer the Court this type of probative, concrete evidence because the evidence simply does not exist.

Perhaps the most incredulous mischaracterization presented by Plaintiff as "evidence" of racial discrimination is an outrageous allegation that Officer Bluestein "threatened" that he was "going to kill" Plaintiff if he was promoted. Although Plaintiff asserts that he tape recorded Bluestein when he made the alleged comment, the recording is completely inaudible except for the sound of laughter. (A 908). Bluestein does not recall making the statement; however, during his deposition, Bluestein indicated that if he did make the comment, it was meant as a joke. (A 907-910). The undisputed evidence supports the fact that if Bluestein made the comment, it was said in

-30-

a joking manner, and Plaintiff did not take the comment as a "threat." Plaintiff never filed a criminal complaint against Bluestein, Plaintiff never filed an internal complaint against Bluestein, Plaintiff continued to associate with Bluestein after the alleged comment was made, and Plaintiff and/or Bluestein was laughing on the tape recording. (A 909; 1003-1010). Other than demonstrating the lengths that Plaintiff will go to in this case, Bluestein's alleged comment is completely irrelevant to the issue of establishing racial discrimination as Bluestein has absolutely no part in the promotional process other than having participated in the process himself.

Just as irrelevant is the false statement that Chief Szczerba is the godfather to Rodriguez's son. First, Chief Szczerba is not the godfather to Rodriguez's son.

> Q: How long have you known Mike Rodriguez, Chief?
>
> A: Probably at least since 1991.
>
> Q: And do you know him outside of the Wilmington Police Department?
>
> A: No, I do not.
>
> Q: There was an allegation in the complaint that was denied to the effect that you were the godfather of one of his children.
>
> A: Yes.
>
> Q: You're denying that?
>
> A: That's correct.
>
> Q: I don't know how that [the allegation] came about, but all right.
> (A1058).

Second, even if Chief Szczerba was the godfather to Rodriguez's son, Plaintiff's assertion merely establishes that a reason other than race was the motivating factor in Chief Szczerba's decision to

promote Rodriguez. As such, Chief Szczerba's actions cannot be alleged to violate Title VII, §1981, or the covenant of good faith and fair dealing. However, the fact remains that this allegation, similar to the allegation that Rodriguez is Caucasian, is false and was based merely upon speculation within the Wilmington Police Department, the same speculation that has led Plaintiff to assert that Chief Szczerba promotes candidates on the basis of seniority.

The record demonstrates that the only basis for Plaintiff's belief that he was discriminated against because of his race was rumor and speculation surrounding the promotional actions of Chief Szczerba. (A 943-946; 978; 1056). To establish a case of race-based discrimination, Plaintiff must have more than his perception of how others were treated, or the perception of others. Pugh v. Heinrich, 695 F.Supp. 533, 543 (D. Fla. 1988)("plaintiff is basing her allegations on no more than her perception of other employees (sic) situation and her feelings that she was picked on and that it must have been because she was black because in her opinion there was no other reason for the treatment she felt she received." This is insufficient to defeat a motion for summary judgment). Kidd v. Commonwealth of Pennsylvania, 1999 U.S. Dist. LEXIS 7918, * (E.D. Pa. May 20, 1999)(held that plaintiff's assertion of racial animus unsupported by any of plaintiff's citations; "evidentiary support for this allegation may not consist of the deposition questioning by the plaintiff's attorney"). Plaintiff simply " . . . cannot establish a discrimination claim with only his subjective opinion and an amorphous pattern of misconduct." Oaks v. City of Phialdelphia, 2002 U.S. Dist. LEXIS 12151, *17 (E.D. Pa. 2002). Further, Plaintiff, based upon a statistical comparison of past promotions, cannot meet his burden of proving either a prima facie case of discrimination in the promotional process or that Defendant's proffered non-discriminatory reasons are pretextual. Woodbury, et al. v. New York City Transit Authority, 832 F.2d 764, 770 (2d Cir. 1987)(while

-32-

statistical analyses may have a role in discrimination cases, the statistics usefulness lies in the standard deviations revealed by the data. "The greater the number of standard deviations, the less likely it is that the statistical disparity is the result of chance."); Thompson v. John J. Madden Mental Health Center, 2002 U.S. App. LEXIS 9094 (7th Cir. May 9, 2002)(plaintiff could not carry his burden under McDonnell Douglas through comparisons with other employees who bore no meaningful similarity to plaintiff nor through raw statistical data.); Bogren v. Minnesota, 236 F. 3d 399, 406 (8th Cir. 2000)(generic employment statistics are not probative of the reason for termination in a Title VII case); Bazile v. City of New York, 2002 U.S. Dist. Lexis 14478, *45 (S.D.N.Y. 2002)(Plaintiff's failure to provide meaningful universe of comparable cases from which to derive viable statistical conclusions about the reasons for discipline is a basis for grant of summary judgment); Boyce v. Belden, 2002 U.S. Dist. LEXIS 1550, *30 (M.D. Ga. 2002)(statistics without an analytical foundation are "virtually meaningless" in the context of a Title VII case). To establish a claim for racial discrimination under the authorities cited by Plaintiff in his Complaint, Plaintiff must prove that he was the victim of intentional discrimination. Collins v. State of Illinois, 830 F.2d 692, 698 (7th Cir. 1987). "A constitutional violation may not be established by a reliance upon unsupported assumptions." Daniels v. Delaware, 120 F. Supp. 2d 411, 423 (D. Del. 2000).

Given the above, Plaintiff cannot meet his burden under McDonnell Douglas, and Defendant is entitled to judgment as a matter of law on all counts.

## II.    DEFENDANT CITY OF WILMINGTON POLICE DEPARTMENT IS NOT A SEPARATE JURIDICAL ENTITY FROM THE CITY OF WILMINGTON AND IS NOT SUBJECT TO SUIT.  AS SUCH, PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW.

Plaintiff brings this cause of action against the Wilmington Police Department.  However,

-33-

Defendant is merely a department of the City of Wilmington and has no separate existence of its own subjecting it to suit.  Therefore, Plaintiff cannot maintain a cause of action against this particular Defendant, and the Defendant is entitled to judgment as a matter of law on all claims.

The capacity of an entity such as a police department to sue or be sued is "determined by the law of the state in which the district court is held."  <u>Paredes v. The City of Odessa</u>, 128 F. Supp. 2d 1009, 1013 (W.D. Tex. 2000), citing Fed. R. Civ. P. 17(b); <u>Darby v. Pasadena Police Department</u>, 939 F.2d 311, 313 (5th Cir. 1991)(dismissing Title VII suit against police department because department was not a legal entity for purposes of a lawsuit).  In order for a plaintiff to be able to sue a municipal department, the department must have a separate legal existence from the municipality. <u>Darby</u>, 939 F.2d at 313.  "Unless the political entity that created the department has taken 'explicit steps to grant the servient agency with jural authority,' the department lacks the capacity to sue or be sued."  <u>Paredes</u>, 128 F.Supp. 2d at 1013, quoting <u>Darby</u>, 939 F.2d at 313.

Courts have cited the Law of Municipal Corporations as the rule on the issue of when a department may be sued separately from the municipality.  The treatise states:

> In the discharge of a duty primarily resting upon the municipality, generally the rule is that a department acts as its agent although the department may have full power in the particular matter involved. However, the department may be made responsible as a corporation, and not the city, where the charger or a legislative act may so provide. In that event liability for acts done or omitted by it is in its corporate capacity.  Where the department, for example, a fire, police, health, education, overseers of the poor, and the like, is a corporation, or a quasi-corporation, with functions peculiar to such bodies which are performed separately from the functions of the municipality, these bodies are responsible as corporations and may sue and be sued as such.  *But if the board or department is not a corporate body it cannot be sued as such,* e.g., a police board, a board of workhouse directors, a board of park commissioners, a housing authority, or a board of public works . . .

3 Eugene McQuillan, the Law of Municipal Corporations §12.40 (1990)

In <u>Thomas v. Wilmington Police Department,</u>1994 Del. Super. LEXIS 266 ( Del. Super.

1994) the Delaware Superior Court specifically utilized the rule set forth above to address the issue

of whether the Wilmington Police Department is subject to suit.  The Court found that based upon

Wilmington City Charter Sec. 3-100, the Wilmington Police Department is merely a department of

the City of Wilmington and cannot be sued.  The Wilmington City Charter states in pertinent part:

> Article III.    Executive and Administrative Branch – Organization
> Chapter 1.    Officers, departments, boards, commissions and other agencies.
> Sec. 3-100    Executive and administrative officers, departments, boards, commissions and agencies designated.
> The executive and administrative work of the city shall be performed by...
> (d)    The following departments which are hereby created... Police department...

In granting summary judgment in favor of Defendant Wilmington Police Department, the

Court in <u>Thomas</u> concluded that "This section of the Wilmington Charter shows that the Wilmington

Police Department 'is not a separate entity, but rather a department of the city itself.'" Id.  This same

conclusion was reached in <u>Washington v. Wilmington Police Department</u>, 1995 Del. Super. LEXIS

472 (Del. Super. 1995) (held that the Wilmington Police Department was not a separate juridical

entity subject to being sued by a plaintiff).

Based upon the well settled rule of law that police departments are not separate juridical

entities from the municipalities themselves, the Third Circuit has recently held that unincorporated

police departments are not legal entities amenable to suit.  <u>Padilla v. Township of Cherry Hill</u>, 2004

U.S. App. LEXIS 20763 (3rd Cir. Oct. 5, 2004); accord, <u>Thomas v. City of Philadelphia</u>, 2002 U.S.

Dist. LEXIS 12264 (E.D. Pa. Feb. 7, 2002)(held that the Philadelphia Police Department does not

have a corporate existence separate from the city so as to permit suit); see also, <u>Dean v. Barber</u>, 951 F.2d 1210 (11th Cir. 1992)(dismissing suit against county sheriff's department because "sheriff's departments and police departments are not usually considered legal entities subject to suit").  This position has found significant support in other jurisdictions.  Federal courts have held that for purposes of civil rights statutes, a municipal police department is not subject to suit.  See, <u>Zombro v. Baltimore City Police Department</u>, 868 F.2d 1364, 1371 (4th Cir. 1989) (dismissing claim because, inter alia, Baltimore police department not a "person" for purposes of section 1985); <u>Crawford v. Pennsylvania</u>, 2003 U.S. Dist. LEXIS 16358, at *11 (M.D. Pa. Sept. 12, 2003)("Although there is no precedential ruling on point, courts are in agreement that the definition of 'person' in section 1985 and 1986 is the same as that in section 1983); <u>Gaines v. University of Pennsylvania Police Department</u>, 1997 U.S. Dist. LEXIS 15460, at *8 (E.D. Pa. Oct. 6, 1997) ("police departments are purely instrumentalities of the municipality with no separate identity"); <u>PBA Local No. 38 v. The Woodbridge Police Department</u>, 832 F. Supp. 808, 825-826 (D. N.J. 1993)(collecting cases); <u>Smith-Berch, Inc. v. Baltimore County</u>, 68 F.Supp. 2d 602, 626-627)(D. Md. 1999)(collecting cases).

Indeed, this Court has previously dismissed civil rights claims against the Wilmington Police Department for the reasons set forth above.  Citing several opinions from circuit and district courts, this Court concluded:

> A municipal police department, however, is not a 'person' within the meaning of Section 1983.  Consequently, the Wilmington Police Department is entitled to summary judgment as a matter of law. <u>Brown v. Pfaff</u>, 2004 U.S. Dist. LEXIS 3944, at *7 (D. Del. Mar. 3, 2004).

There is some contrary authority in this district which this Defendant respectfully urges should not be followed; rather this Court should adhere to its holding in <u>Brown v. Pfaff</u>, <i>supra.</i>  The same

judge who held that the Wilmington Police Department is not a "person" for purposes of section

1983 in Brown apparently reached the opposite conclusion in Jamison v. Wilmington Police Dep't,

2004 WL 2434298 (D. Del. Oct. 12, 2004), wherein it wrote:

> In the case at bar, the defendant police department is a local
> municipality and, therefore, a person subject to suit for a §1983
> violation.  However, due to the deficiency of the record it cannot be
> determined whether the alleged constitutional violation was the result
> of a governmental custom. (Id. At *3).

Defendant respectfully suggests, for the following reasons, that the holding in Jamison is incorrect

and the earlier holding in Brown v. Pfaff is correct.  First, Jamison was decided only a week after

the Third Circuit's holding in Padilla v. Township of Cherry Hill, supra (local police department not

juridical entity and thus not a "person") and thus Padilla was not brought to the attention of this

Court.  Second, in Brown the Court considered five other cases holding that a municipal police

department is not a "person" for section 1983.  None of those authorities was expressly considered

or mentioned in Jamison.  Third, the Court in Jamison cited no authority for its proposition that the

"police department is a local municipality."  Indeed, this proposition is inconsistent with federal law.

Reed v. Hartford Police Dep't, 2004 U.S. Dist. LEXIS 6237, at *6 (D. Conn. Apr. 6, 2004)

(dismissing section 1983 action against police department and reasoning that a "municipal police

department . . . is not a municipality.").  Fourth, the authority cited in Jamison does not stand for the

proposition that a police department is a "person."  In Calloway v. Boro of Glassboro Dep't of

Police, 89 F. Supp. 2d 543, 558 (D. N.J. 2000) [2] the court found no evidence to support the claim

that the police department deprived the plaintiff of her constitutional rights and it granted summary

---

[2] A typographical error in the Jamison opinion suggests that Calloway arose in this
district; rather it was decided by the District of New Jersey.

judgment on that basis.  Thus, it never reached the issue as to whether the police department was a "person."

Given the above, Plaintiff, as a matter of law, cannot maintain a claim against Defendant, and Defendant is entitled to judgment as a matter of law on all counts.

## III.  WILMINGTON CITY CODE SECTION 35-111 DOES NOT ESTABLISH A PRIVATE CAUSE OF ACTION FOR DENIAL OF EQUAL EMPLOYMENT OPPORTUNITIES.

Plaintiff alleges that Defendant violated 1 Wilm. Ch. 35-111 regarding equal employment opportunities when it denied him a promotion in rank.  However, Article IV, §35-111 does not exist in the Wilmington City Charter.  To the extent that Plaintiff is referring to the Wilmington City Code, rather than the Wilmington City Charter (two legally distinct sources of law for the City of Wilmington), the Code does contain a policy statement regarding equal opportunities in employment. This is found at 1 Wilm. C. §35-111.  However, §35-111 is merely a policy statement and does not create a civil cause of action whereby Plaintiff may sue the City of Wilmington or a department within the City.

The City of Wilmington cannot provide for a private cause of action against itself for discrimination because such an action would contravene the County and Municipal Tort Claims Act, 10 Del. C. §4010.  Mack v. The City of Detroit, 649 N.W.2d 47, 196-197 (Mich. 2002)(holding that "without some express legislative authorization, the city cannot create a cause of action against itself in contravention of the board scope of governmental immunity established by the [Governmental Tort Liability Act]... Accordingly, this Court declines to circumvent the limitations placed on a municipality by the Legislature and recognize a cause of action against the city for sexual orientation discrimination.)

-38-

Notwithstanding the fact that the City cannot create a cause of action against itself, the plain language of §35-111 indicates that this ordinance is merely a statement of policy and, in fact, does not provide any private cause of action.  Sec. 35-111 reads:

Sec. 35-111. Equal opportunity policy.

(a) Policy. The city shall continue to assure that just and equal treatment is given to all its

employees and applicants for city employment and regarding all areas of employment practices, including but not limited to, recruitment, employment, economic assistance to persons and businesses through loans and grants, contracts for all professions, and in all city contracts for the purchase of goods, services and equipment, construction contracts, and in all city personnel matters involving compensation, dismissal, training, layoff, reinstatement, discipline and promotion.

(b) Goals. The city government in carrying out its responsibilities and in the conduct of its

affairs, shall endeavor to prevent and eliminate any and all discrimination in any action by the city government itself, or by its agents, boards, commissions, and other authorized entities on the basis of race, creed, color, national origin, age, religion, sex, sexual orientation, marital status or economic status, or handicap or other disability. The city policy may include actions to assist disadvantaged persons who have been actual victims of discriminatory practices or whose ability to compete in the free enterprise system has been impaired due to diminished opportunities resulting from past discrimination or neglect and may include identifying demographic subgroups of disadvantaged individuals by race or ethnic origin whenever current local statistics confirm the existence of unemployment rates among any of such subgroups that are more than 50 percent above the prevailing state-wide unemployment rate, in order that the city may attempt to assist those disadvantaged individuals who are chronically unemployed.

The city shall establish an active policy of encouraging, soliciting and assisting new, small

and local businesses, including those of economically disadvantaged individuals, in obtaining employment and in conducting business with the city, its agents and corporations created by the city for public purposes. The city shall establish goals deemed appropriate and sustainable and constituting percentages of the total dollar amount of contracts for businesses in the categories of construction contracts, professional service contracts, and contracts for the purchase of goods and services and of materials, supplies and equipment. Periodic reports shall be submitted to the office of equal opportunity contract compliance in order to maintain current statistics regarding the composition of the work force and of the businesses operating in various industries in which the city conducts business. The office shall maintain current data to determine the number and extent of participation, or of any disparity in participation, in employment and business opportunities of disadvantaged individuals and disadvantaged businesses qualified to work or do business in different industries.

(c) Office of equal opportunity compliance. As such reports are developed, they shall be

submitted to the office of equal opportunity contract compliance, pursuant to sections 35-112 through 35-114, not less than every six months detailing the results of city efforts to increase purchases of services, professional services, construction contracts, loans and

-39-

grants, and the extent of participation in city contracts and employment opportunities by economically disadvantaged individuals. The office may develop such forms and reporting systems as it deems necessary and as approved by the administrative board.

To determine whether an ordinance implicitly creates a private cause of action, the Court must consider whether there is any evidence that the legislature intended to create a private cause of action under the ordinance.  Ferraro v. City of Long Branch, 714 A.2d 945, 955 (N.J. Super. 1998).  In this instance, it is obvious from the language of the ordinance itself that the Wilmington City Council only intended to set forth the policy and goals of the City of Wilmington with regard to equal employment opportunities.  The ordinance does not indicate an intent on the part of Wilmington City Council to create a cause of action against the City.

Given the above, Plaintiff cannot maintain a cause of action pursuant to §35-111 against Defendant.  Therefore, Defendant is entitled to judgment as a matter of law.

## CONCLUSION

Plaintiff Kenneth Boyd is unable to establish by a preponderance of the evidence that he was subject to race based discrimination when he was not promoted to the rank of sergeant in April, 2004.  As such, he cannot establish a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000(e) et seq.), 42 U.S.C. §1981, or a violation of State law, specifically a breach of the implied covenant of good faith and fair dealing found in employment contracts, and Wilmington City Charter, Article IV, 35-111.  Therefore, Defendant is entitled to judgment as a matter of law.

/s/ RosamariaTassone
Rosamaria Tassone, Esquire (I.D. #3546)
Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant

-40-