IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **KENNETH A. BOYD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **C.A. No. 05-178 (KAJ)** |
| **v.** | : | **TRIAL BY JURY DEMANDED** |
| | : | |
| **WILMINGTON POLICE** | : | |
| **DEPARTMENT,** | : | |
| | : | |
| **Defendant.** | : | |

---

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

MARGOLIS EDELSTEIN
Jeffrey K. Martin, Esquire (DE #2407)
Lori A. Brewington, Esquire (DE #4522)
1509 Gilpin Avenue
Wilmington, DE 19806
(302) 777-4680
jmartin@margolisedelstein.com
lbrewington@margolisedelstein.com
Attorneys for Plaintiff

DATED: April 7, 2006

## TABLE OF CONTENTS

TABLE OF CITATIONS ………………………………………………… iv

NATURE AND STAGE OF PROCEEDINGS ………………………….. 1

SUMMARY OF ARGUMENT …………………………………………. 2

STATEMENT OF FACTS ……………………………………………. 4

ARGUMENT ……………………………………………………… 9

STANDARD OF REVIEW …………………………………………... 9

    I.    UNDER THE MCDONNELL DOUGLAS
           BURDEN-SHIFTING FRAMEWORK GOVERNING
           RACE DISCRIMINATION CASES, PLAINTIFF HAS
           MET HIS BURDEN OF PROOF. THEREFORE,
           DEFENDANT'S MOTION FOR SUMMARY
           JUDGMENT SHOULD BE DENIED ……………………..…… 10

          A.    GIVEN THAT PLAINTIFF HAS RAISED
               SEVERAL GENUINE ISSUES OF MATERIAL
               FACT, PLAINTIFF HAS ESTABLISHED A
               PRIMA FACIE CASE FOR RACE BASED
               DISCRIMINATION ……………………………….. 13

          B.    PLAINTIFF HAS DEMONSTRATED BY A
               PREPONDERANCE OF THE EVIDENCE THAT
               THE LEGITIMATE, NON-DISCRIMINATORY
               REASONS FOR PROMOTING RODGRIGUEZ
               RATHER THAN PLAINTIFF WERE PRETEXUAL
               AND THE DECISION ACTUALLY MOTIVATED
               BY RACIAL ANIMUS ………………………………. 18

    II.    DEFENDANT CITY OF WILMINGTON HAS WAIVED
           ITS RIGHT TO ARGUE LACK OF JURISDICTION
           BECAUSE THIS DEFENSE WAS NEITHER
           INCLUDED IN A RULE 12 MOTION NOR INCLUDED
           IN A RESPONSIVE PLEADING …………………………… 20

CONCLUSION ………………………………………………………… 23

ii

**Tab No.**

Unreported Cases ……………………………………………………….. 1,2,3,4

Affidavit of Kenneth Boyd, dated April 7, 2006 ………………………….. A

Plaintiff's First Request for Admissions to Defendant,
dated September 29, 2005 ……………………………………………. B

Defendant's Response to Plaintiffs First Request for Admissions,
dated January 30,2006 ……………………………………………. C

Anonymous letter dated February 28, 2005 ………………………………. D

Anonymous letter dated March 22, 2005 ……………………………….. E

Anonymous letter date unknown ……………………………………… F

## TABLE OF CITATIONS

**Cases**                                                                          Page No.

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) ……………………..        11

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ………………..      9, 11

Carpenter v. Gulf States Mfrs., Inc., 764 F. Supp. 427
(N.D. Miss. 1991) ……………………………………………………………        12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ………………………..        12

Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300
(3d Cir. 1995) …………………………………………………………………         9

Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee,
456 U.S. 694, (U.S. 1982) ……………………………………………………..        21

Jamison v. Wilmington Police Department, 2004 WL 2434298
(D. Del. Oct. 12, 2004) ……………………………………………….. 20 - 22

Jamison v. Wilmington Police Department, No. 04-033-SLR, 2005
U.S. Dist. LEXIS 3184, (D. Del. March 3, 2005) ………………………….        21

King v. City of Philadelphia, 2002 U.S. Dist. LEXIS 10276
(D. Pa. 2002) ……………………………………………………………………..        19

Krouse v. American Sterilizer Co.,
126 F.3d 494 (3d Cir. 1997) ……. …………………………………..13, 14, 18, 19

Logan v. Commerical Un. Ins. Co., 96 F.3d 971 (7th Cir. 1996) ……...…….    11

MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437 (10th Cir. 1996) ………..    11

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574
89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) ………………………………………         9

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ………………..        11

Mondell v. Department of Social Servs., 436 U.S. (1978) …………………        22

Pa. Coal Ass'n v. Babbitt, 63 F.3d 231 (3d Cir. 1995) …………………….         9

Padilla v. Township of Cherry Hill, No. 03-3133, 2004
U.S. App. LEXIS 20763, (3d Cir. October 5, 2004) ………………………….        21

Rodgers v. Monumental Life Ins. Co., 289 F.3d 442 (6th Cir. 2002) .......    11

Sarullo v. United States Postal Service, 352 F. 3d 789 (3d Cir. 2003) ......    17

Taylor v. Proctor & Gamble Dover Wipes, 184 F.Supp. 2d 402 (D. Del.)
(February 6, 2002) ....................................................................... 14

Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123,
126 (3d Cir. 1994) ...................................................................... 11

Zucherbraun v. General Dynamics Corp., 935 F.2d 544
(2d Cir. 1991) ........................................................................... 12


Moore's Federal Practice, § 56.10[4][d] .........................................    10

Moore's Federal Procedure, § 56.11[5][a] .......................................    13

BLACK'S LAW DICTIONARY 1209 (7th ed. 1999) ...........................    12

Fed. R. Civ. P. 12(h)(1) ..............................................................    20

Fed. R. Civ. P. 56(c) .............................................................. 9, 10

Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000(e) et seq.) ......... 1, 4

42 U.S.C. § 1981 ................................................................... 1, 4

Wilmington City Charter, Article IV, 35-111 ...................................... 1, 4

## NATURE AND STAGE OF PROCEEDINGS

On March 22, 2005, Plaintiff Kenneth A. Boyd filed a Complaint in the United States District Court for the District of Delaware. Plaintiff's Complaint alleges that the Defendant, Wilmington Police Department, violated his federally protected rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e) et seq.) and 42 U.S.C. § 1981 when he was not promoted to the rank of sergeant in April, 2004. Plaintiff alleges that he was discriminated against based upon his race (African-American). Plaintiff further alleges that his failure to be promoted is also a violation of State law, specifically a breach of the implied covenant of good faith and fair dealing found in employment contracts, and Wilmington City Charter, Article IV, 35-111, relating to equal employment opportunities.

Discovery proceedings in this matter closed on January 31, 2006. Defendant filed its Opening Brief in support of its Motion for Summary Judgment on March 8, 2006.

The following is Plaintiff Ken Boyd's Answering Brief in opposition to Defendant's Motion for Summary Judgment.

1

## SUMMARY OF ARGUMENT

As stated in Moore's Federal Practice, while a memorandum supporting a motion for summary judgment should be a document of advocacy, it should display candor and fairness in presenting the facts to the court; the memorandum should not ignore facts favorable to the party opposing summary judgment. Defendant's motion has crossed that line by "spinning" the facts in its favor and, at times, misstating the law governing this Court's deciding the motion for summary judgment. In this respect, this Court should be wary in accepting Defendant's improperly one-sided recitation of the facts.

In general, the standards enunciated throughout Defendant's memorandum imply that Plaintiff must, at this early stage of the litigation, ultimately prove his case against Defendant. However, the matter sub judice is a motion for summary judgment. Therefore, in order to survive the motion, Plaintiff must only show a genuine issue of material fact; Plaintiff does not have to show that he will ultimately prevail in his claims.

To pass muster under the McDonnell Douglas analysis, Plaintiff must raise a genuine issue of material fact as to each of the elements of his prima facie case. The Plaintiff need not, as Defendant incorrectly claims, prove by a preponderance of the evidence— a standard more appropriate in this Court's deciding the case on the merits.

Because Plaintiff has met the first part of the analysis under McDonnell Douglas, Defendant must produce evidence that Plaintiff was not promoted for a legitimate, nondiscriminatory purpose. For purposes of surviving the motion to dismiss, Plaintiff must counter this evidence with a showing that would permit a reasonable factfinder to infer that the putative reason was pretextual and that the

2

true reason was discrimination. Based on the evidence in the record, more specifically discussed in this Memorandum infra, it is clear that Plaintiff has carried his burden of showing that the true reason was discrimination.

Defendant argues that the Wilmington Police Department is not an entity subject to suit and therefore this Court has no personal jurisdiction over it. In so arguing, Defendant is asking this Court to overrule itself. However, this Court need not overrule precedent to determine this issue as Defendant did not raise the defense of lack of personal jurisdiction through either a responsive pleading or through a Rule 12 motion. Defendant has waived personal jurisdiction.

## STATEMENT OF FACTS

On October 6, 1986, Plaintiff Ken Boyd was hired by Defendant Wilmington Police Department as a recruit in the Wilmington Police Academy. In January, 1987, Plaintiff successfully graduated from the Academy and was offered full-time employment by Defendant as a police officer. Currently, Plaintiff holds the rank of master corporal. He is also a detective assigned to Defendant's Criminal Investigation Division. Plaintiff has been with the Defendant for approximately 20 years.

Plaintiff alleges that he was discriminated against based upon his race (African-American) when Chief Michael Szczerba promoted Michael Rodriguez to the rank of sergeant instead of Plaintiff in April, 2004, the last promotion made prior to the expiration of the 2002-2004 promotional list. Plaintiff alleges that Defendant Wilmington Police Department violated his federally protected rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e) et seq.) and 42 U.S.C. § 1981 when he was not promoted to the rank of sergeant in April, 2004. Plaintiff further alleges that his failure to be promoted is also a breach of the implied covenant of good faith and fair dealing found in employment contracts and Wilmington City Charter, Article IV, 35-111, relating to equal employment opportunities.

In support of his allegations, Plaintiff points to Chief Szczerba's established pattern of promoting candidates on the basis of seniority once the officers are placed in the particular bands. In direct contradiction to this pattern, when a sergeant position became available in 2004 and Plaintiff was the most senior officer candidate within his promotional band, Chief Szczerba did not promote him. Rather, the Chief promoted Michael Rodriguez, an officer with three (3) years less seniority. Accordingly, Plaintiff asserts that Chief Szczerba's decision to promote Rodriguez rather than

4

Plaintiff was racially motivated

## Chief Szczerba's
## Promotional Selections to the Rank of Lieutenant and Sergeant

Chief Michael Szczerba was appointed Chief of Police in January, 2001. At the time of his appointment, several promotions existed in the ranks of lieutenant, and sergeant. With regard to promotions to the rank of lieutenant from the 2000-2002 promotional list, Band I was compromised of the following candidates, in order of seniority: Clayton Smith (b); Robert Fox (w); Mitchell Rock (w); Carolyn Henry (w); Robert Williams (w). (See Plaintiff's Appendix at Tab A, Def.'s Mem. at 7). Four promotional openings existed and Chief Szczerba promoted Fox, Smith, Henry, and Rock at the same time on January 3, 2001. (See Plaintiff's Appendix at Tab A). Williams, the most junior member of the Band was promoted last. Id. By promoting Fox, Smith, Rock, and Henry before promoting Williams, the Chief promoted lieutenants from the 2000-2002 promotional list in order of seniority. Id.

With regard to the rank of sergeant from the 2000-2002 promotional list, Band I was comprised of the following candidates, in order of seniority: Mayna Santiago (h); Thomas Dempsey (w); Steven Barnes (w); Walter Ferris (w); Sherrie Tull (b); Donald Bluestein (w); Scott Jones (w). (see Plaintiff's Appendix at Tab A, Def.'s Mem. at 8). Chief Szczerba promoted Dempsey, Barnes, Santiago, and Ferris at the same time on January 3, 2001. (See Plaintiff's Appendix at Tab A). Tull, the fifth most senior in the band, was promoted after the four most senior officers. Id. By promoting Dempsey, Barnes, Santiago and Ferris before promoting Tull, the Chief promoted sergeants from the 2000-2002 promotional list in order of seniority. Id. Subsequently, Donald Bluestein, the sixth most senior officer in the band, was appointed as acting sergeant when there was a deficiency in the

5

number of sergeants. (See Def.'s Appendix at A-904, A908) (testifying that he was appointed to be acting sergeant because he was next on the list to be promoted once another officer retired). Officer Bluestein emailed postings to Inspector Wright in the hopes that Wright would retire; thereby providing an opening for Bluestein to be promoted to sergeant. (See Def's Appendix at A-909). The appointment of Bluestein to the position of acting sergeant, rather than Scott Jones, the most junior in the band, further indicates that appointments were made on the basis of seniority.

With regard to the rank of lieutenant from the 2002-2004 promotional list, Band I was compromised of the following candidates, in order of seniority: John Fogelgren (w); John Snyder (w); Bruno Battaglia (w); Faheem Akil (b); William Browne (w); and Mayna Santiago (h). (See Plaintiff's Appendix at Tab A, Def's Mem. at 8). Chief Szczerba promoted John Snyder in November 2002, then Battaglia in December of 2003 and finally, Browne in March of 2004. (See Plaintiff's Appendix at Tab A). Chief Szcerzba's promotions to the rank of lieutenant from the 2002-2004 promotional list were also on the basis of seniority with the exceptions of John Fogelgren who retired and Fahim Akil who is African-American, as is Ken Boyd.

With regard to the rank of sergeant from the 2002-2004 promotional list, Band I was comprised of the following candidates, in order of seniority: Raymond Wyatt (w); Scott Jones (w); Deborah Donohue (w). Chief Szczerba promoted Wyatt, Jones and Donohue in November, 2002, February, 2003 and March, 2003, respectively. (See Plaintiff's Appendix at Tab A, Def's Mem. at 8). By promoting Wyatt (the first most senior), then Jones (the second most senior) and finally, Donohue (the third most senior), the Chief was promoting on the basis of seniority. Id. Band II of the 2002-2004 promotional list was comprised of the following candidates, in order of seniority: Dennis O'Connor (w); Joseph Sammons (w); Liam Sullivan (w); Kenneth Boyd (b); Robert Curry (w);

6

Ralph Hauck (w); Michael Rodriguez (h); Anthony Harris (b); Charles Emory (b); Stephen Misetic (w). Id. Chief Szczerba promoted in order of seniority by promoting O'Connor, Sammons, Sullivan in July, 2003, December, 2003, and March 2004, respectively. (See Plaintiff's Appendix at Tab A). Thereafter, Chief Szczerba chose to promote Rodriguez in April, 2004, rather than promote Plaintiff Boyd, the next most senior officer in Band II. Id.

Donohue testified that the Chief promoted based on seniority and that she does not have any reason *not* to believe that seniority was used coupled with the banding for the Chief's other promotions. (See Def.'s Appendix at A1022-1025) (testifying that the Chief told her that he was promoting based on seniority because it was the best and most reasonable way to go about the process). Further, Inspector Gilbert Howell testified that the Chief said, on at least two occasions, that he was promoting based on seniority by promoting the senior people first. (See Def's Appendix at A1032). Also, the Wilmington Police Department admitted that after placement in the Band, Chief Szczerba promotes eligible officers on the basis of his or her seniority (See Plaintiff's Appendix at Tab B and C)1. Finally, officers of the Wilmington Police Department understood that the Chief used seniority as the basis for his promotions. (See Def's Appendix at A-1073) (Tabor testifying that he offered his condolences to Plaintiff because it was "messed up that they had not promoted him when he was clearly next on the list to be promoted); (See Def's Appendix at A-907) (Bluestein testifying that everyone thought Plaintiff was next in line to be promoted "based off the historical promotions").

In direct conflict with these facts, however, Chief Szczerba testified that he has never used seniority as the basis for promoting officers once they are placed in the bands. (See Def's Appendix

---

1 Plaintiff served Request for Admissions on the Defendant on September 29, 2005. Defendant failed to file its Answer to Plaintiff's Request for Admissions until January 30, 2006. In accordance with Federal Rule Civil Procedure 36 (a), the

at A1055-A1056) (testifying that he did not use seniority system within the band for means of selecting the candidates and that he did not use a seniority system for the selection of candidates within a band at anytime.)

Like Plaintiff Boyd, Howell testified that he was similarly discriminated against because of his race. (See Def's Appendix at A-1029-1035) (testifying that the Chief wanted a white person, Nancy Dietz, rather than Howell because he was African-American); (A-1034) (testifying that penalties meted out to black officers were more harsh than those received by their white colleagues; (A-1038) (testifying that white officers are more privileged than black officers in terms of being afforded the opportunity to attend training); (A-1037 and Plaintiff's Appendix at Tab D-F) (testifying that three-fourths of what was written in the anonymous letters regarding disparate treatment of black officers are true); and (A-1038) (testifying that as of January 2006 the racial disparities between black and white officers detailed in those letters were still present).

It is undisputed that Plaintiff Boyd was qualified to become a sergeant and that he had three years more seniority and experience than Rodriguez. (See Def's Appendix at A-1033) (Howell testifying that Boyd was definitely qualified and most senior for the position); (A-1033) ( Howell testifying that he felt Boyd was a capable officer); (See Def's Appendix at A-1058) (Szczerba testifying that Plaintiff Boyd is a superb performer, well-educated with a bachelor's degree, respected by his peers and supervisors, good communicator, always represents the department well). (See Plaintiff's Appendix at Tab B and C). Based on Chief Szczerba's statements that he promotes on the basis of seniority (See Def.'s Appendix at A1022-1025); (Def.'s Appendix at A1032); (Plaintiff's Appendix at Tab B and C), along with the Chief's pattern of promotions based on seniority (See

---

matter is deemed admitted due to Defendant's failure to serve a written answer or objection within 30 days after service.

Plaintiff's Appendix at Tab A), as well as, the racial disparities between black and white officers in

the Wilmington Police Department (See Plaintiff's Appendix at Tabs D -F), it cannot be said that

there is no genuine issue of material fact with respect to the Defendant's failure to promote Plaintiff

Boyd to the position of sergeant in April 2004.

## ARGUMENT

### STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be

rendered" where "the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is

material if it might affect the outcome under the governing substantive law. See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute over a material fact must be "genuine", i.e., the

evidence is such "that a reasonable jury could return a verdict in favor of the non-moving party." Id.

"Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from

which a rational person could conclude that the position of the person with the burden of proof on

the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1

(3d Cir. 1995).

To survive a motion for summary judgment, Defendant "must come forward with 'specific

facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The court will "view the

underlying facts and all reasonable inferences therefrom in the light most favorable to the party

opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

9

In the present matter, the current record which includes the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits establishes that there are several genuine issues of material fact. Therefore, Defendant is not entitled to summary judgment as a matter of law.

I.    **UNDER THE <u>MCDONNELL DOUGLAS</u> BURDEN-SHIFTING FRAMEWORK GOVERNING RACE DISCRIMINATION CASES, PLAINTIFF HAS MET HIS BURDEN OF PROOF. THEREFORE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.**

As stated in <u>Moore's Federal Practice</u>:

The memorandum [supporting the motion for summary judgment] should be a document of advocacy, but must display candor and fairness in discussing the materials before the court. Counsel should pay particular attention to properly characterizing affidavits and other documents that form the basis for counsel's contention that no material facts are in dispute. For example, counsel should not overstate the evidence in support of its position. This type of puffing undermines credibility and prompts many judges to decide that trial is necessary to ensure that summary judgment is not granted on the basis of exaggerated or misstated assertions regarding the facts. Similarly, counsel should not deny the existence of facts favorable to the other side.

Moore's Federal Practice, § 56.10[4][d].

Contrary to the rule of thumb articulated in Moore's, Defendant's memorandum engages in the proscribed of "puffing" of the facts, overstates evidence in support of Defendant's position, and denies the existence of facts favorable to the Plaintiff. While the Defendant is surely entitled to

zealous advocacy, Defendant's memorandum does not provide an accurate picture of the factual dispute as it exists at this early stage of litigation.

Summary judgment is governed by Federal Rule 56. "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In meeting its burden of showing an absence of a genuine issue as to any material fact, "the material it lodge[s] must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[E]vidence of nonmovant is to be believed and all reasonable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

To properly apply the summary judgment standard in Rule 56, it becomes necessary to unpack the phrase "genuine issue of material fact." The substantive identifies whether the fact is "material." That is, a fact is only material if the "establishment thereof might affect the outcome of the lawsuit under governing substantive law." Rodgers v. Monumental Life Ins. Co., 289 F.3d 442, 448 (6th Cir. 2002); See also Logan v. Commerical Un. Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) ("The nonmovant must do more . . . than demonstrate some factual disagreement between the parties; the issue must be 'material.' Irrelevant or unnecessary facts do not preclude summary judgment even when they are not in dispute."). A material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1440 (10th Cir. 1996); See also Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 126 (3d Cir. 1994) (holding that factual issues are not "genuine" unless a reasonable jury could return a verdict for nonmovant based on nonmovant's submissions).

11

This is a case of drawing inference from fact (i.e., the inference that the Defendant's hiring practices are based on race based on the historical facts involving the Defendants promotion within a band). Drawing inferences is typically reserved for a jury at trial. See Anderson, 477 U.S. at 255 (holding that drawing inferences is a jury's function so long as competing inferences are reasonable under the law).

Defendant inappropriately launches into an analysis of this case under the McDonnell Douglas opinion. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Def.'s Mem. at 13-14. While McDonnell Douglas does provide the appropriate law in deciding a charge of racial discrimination such as the one sub judice, a summary judgment motion is not the time—as Defendant seems to argue—in which to determine whether the plaintiff will ultimately prevail in its claim.

Although the phrase "prima face showing"[2] is usually used in terms of a plaintiff's required showing, the prima facie standard has also been used to describe the moving party's burden to obtain summary judgment and, reciprocally, the nonmoving party's requisite showing to defeat summary judgment if moving party first meets its burden. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–4 (1986) (holding that the party seeking summary judgment has the prima facie burden of informing the court of the basis for the motion and identifying portions of the record buttressing its motion); See also, Zucherbraun v. General Dynamics Corp., 935 F.2d 544, 547–58 (2d Cir. 1991) (holding that if plaintiff cannot establish prima facie case for recovery, summary judgment for defendant is the appropriate action); Carpenter v. Gulf States Mfrs., Inc., 764 F. Supp. 427, 432 (N.D. Miss. 1991)

---

[2] Black's Law Dictionary defines prima facie showing as, "A party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." BLACK'S LAW DICTIONARY 1209 (7th ed. 1999).

(holding that in order to defeat summary judgment motion by defendant, Title VII plaintiff need not establish prima facie elements of discrimination, but must set forth evidence sufficient to show a genuine factual dispute as to whether discrimination occurred).

Thus, the question is not—as Defendant frames it—whether Plaintiff will ultimately be able to satisfy his burden of persuasion at trial. Rather, the issue is whether there is a genuine issue of material fact vis-a-vis Defendant's discrimination against Plaintiff. This Court must determine whether there is a sufficient factual dispute as to whether Defendant discriminated against Plaintiff to warrant a trial. The issue is no different that the simplest case of a factual dispute:

> In other words, the court deciding a summary judgment motion is not to make a determination of any specific facts such as whether the stoplight was red or green when the defendant drove through intersection. Rather, the court reviews the summary judgment motion and response papers and seeks to determine whether the record reveals a disputed factual issue material enough to require a trial and factfinder determination (usually by a jury) of the factual question.

Moore's Federal Procedure, § 56.11[5][a].

## A.    GIVEN THAT PLAINTIFF HAS RAISED SEVERAL GENUINE ISSUES OF MATERIAL FACT, PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE FOR RACE BASED DISCRIMINATION.

In applying the McDonnel Douglass framework in the context of employment discrimination, the Third Circuit has held that summary judgment should be granted if either (1) the employee fails to raise a genuine issue of material fact as to one or more of the elements of his prima facie case, see Krouse v. American Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997) or (2) after the employer produces competent evidence that the employee was discharged for a legitimate purpose, the

13

employee is unable to produce evidence that would allow a reasonable jury to find that the preferred

reason for dismissal was pretextual (i.e., the true reason was discriminatory).

When the question is properly narrowed (in contrast to Defendant's head-long launching into

the substantive question of discrimination), the issue is simple: Has Plaintiff provided this Court

with sufficient facts from the record to show that there is a disputed factual issue material enough to

require trial?  The answer is clearly yes.

In order to make out a prima facie case for employment discrimination under Title VII, the

plaintiff must prove (1) membership in a protected class; (2) he applied and was qualified for a job

for which the employer was seeking applicants; (3) he was rejected; and (4) after rejecting the

employee, the employer continued to seek applicants with plaintiff's qualifications.  It is again

important to reiterate that contrary to Defendant's arguments, Plaintiff need not "prove" anything

here.  All that is required is for Plaintiff to show a material issue of fact on all the prima facie

elements.  See Krouse, 126 f.3d at 501.[3]

As far as the first element, it is clear that Plaintiff is a member of a protected class.

Plaintiff is an African-American male.  Defendant has admitted to this.  See Plaintiff's Appendix

---

[3] Conveniently, Defendant does not provide any discussion of the quantum of proof necessary for Plaintiff to satisfy the prima facie elements.  See Def.'s Mem. at 14, 15, 16.  Incredibly, Defendant claims that Plaintiff must demonstrate the prima facie elements by a preponderance of the evidence!  See id. at 16 (". . . Plaintiff must demonstrate by a preponderance of the evidence that . . .").  This, obviously, is an incorrect statement of the law.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997) (providing that, in order to pass the first step under the McDonnell Douglass analysis, a plaintiff must show a "material issue of fact" on all of the prima facie elements).  The chasm between a "material issue of fact" standard and a "preponderance of the evidence" standard is huge.  It is not clear whether Defendant's misstatement the law to this Court in its Memorandum of Law is due to inadvertent mistake or calculated underhandedness.  Regardless of Defendant's culpability for making this misstatement, this is merely par for the course as Defendant seeks to "spin" the facts in its favor rather than, more properly, to fairly present to the Court the facts in dispute.  See Moore's Federal Practice, § 56.10[4][d] (providing that this type of "puffery" undermines the movant's credibility).

14

at Tabs B and C. African-Americans are members of the protected class. Taylor v. Proctor & Gamble Dover Wipes, 184 F. Supp. 2d 402 (D. Del.) (February 6, 2002).

Similarly, it is manifest that the second element is met. For the 2002-4004 promotional list, Plaintiff's total score, including seniority points placed him in Band II on the promotional list.[4] All candidates within a band are considered eligible for the promotion. (See Def's Appendix at A-778). The Court in McDonnell Douglas found this prima facie element met by an acknowledgment by employer that employee's past work performance was "satisfactory." McDonnell Douglas at 802.

The third element is met here because Plaintiff was not promoted. (See Def's Mem. at 8).

The forth element is similarly met. However, because this is the only element that Defendant claims is not met, (See Def.'s Mem. at 16), it shall involve extensive discussion.

Defendant recounts the order of promotions to Lieutenant from 2000-2002 promotional list within Band I in chronological order: Robert Fox (who is white and second in seniority); Clayton Smith (who is black and most senior); Carolyn Henry (who is white and fourth in seniority); Mitchell Rock (who is white and third in seniority); and Robert Williams (who is white and fifth most senior). (See Def.'s Mem. at 7). However, this characterization is yet another example of Defendant's "spin" of the facts.    In fact, Fox, Smith, Henry, and Rock were promoted at the same time on January 3, 2001. (See Plaintiff's Appendix at Tab A). Williams was promoted sequentially to that group, which

---

[4] Note that the elements of the McDonnell Douglas test cannot be applied rigidly to every factual situation. For instance, in this case, Plaintiff did not actively "apply" for the position. In announcing this test, the Supreme Court recognized that this test would be applied to a vast array of employment and promotional fact situations. See McDonnell Douglas supra, at 802 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.")

is fitting and in keeping with Plaintiff's arguments because he was the most junior member of the band. Id.

Defendant recounts the order of promotions to Sergeant from the 2000-2002 promotional list within Band I in order: Thomas Dempsey (who is white and second in seniority); Steven Barnes (who is white and third in seniority); Mayna Santiago (who is Hispanic and most senior); Walter Ferris (who is white and fourth in seniority); and Sherrie Tull (who is black and most junior of the group). (See Def's Mem. at 7,8).

In fact, Dempsey, Barnes, Santiago, and Ferris were promoted at the same time. (See Plaintiff's Appendix at Tab A). Tull was promoted subsequently. Again, this is consistent with Plaintiff's position that Defendant promoted by reference to seniority. Id.

Defendant recounts the order of promotions to the rank of Lieutenant from the 2002-2004 promotional list in Band I in order: Battaglia (who is white and third most senior) and then Browne (who is white and fourth most senior). (See Def's Mem. at 8).

In fact, the Chief promoted John Snyder in November 2002, then Battaglia in December of 2003 and finally, Browne in March 2004. Thus, Chief Szczerba's promotions to the rank of lieutenant from the 2002-2004 promotional list were also on the basis of seniority with the exception of John Fogelgren (white and the first in seniority) who retired and Fahim Akil (who is black and the fourth most senior).

Defendant recounts the order of promotions to the rank of Sergeant from the 2002-2004 promotional list in Band I in order: Wyatt (who is white and first in seniority), then Jones (who is white and second in seniority) and finally, Donohue (who white and is third in seniority). (See Def's

16

Mem. at 8). It is undisputed that Chief Szczerba made these promotions in order of seniority for Band I of the 2002-2004 sergeant's promotional list. (See Def's Mem. at 9).

Defendant also recounts the order of promotions to the rank of Sergeant from the 2002-2004 promotional list in Band II in order: O'Connor (who is white and first in seniority), then Sammons (who is white and second in seniority), then Sullivan (who is white and third in seniority). In April, 2004, when the fourth opening for sergeant arose Chief Szczerba promoted Rodriguez rather than Plaintiff Boyd (who is black and fourth most senior).

Defendant argues that Rodriguez was promoted over more senior candidates because Rodriguez possessed the sought-after leadership qualities. (See Def.'s Mem. at 12 (citing A1057-1058). However, Plaintiff has set forth sufficient evidence that shows that Defendant's reasons for hiring a non-African-American over Plaintiff was merely pretextual. Chief Szczerba had nothing negative to say about Ken Boyd. (See Def.'s Appendix at A1058-1059). Indeed, Plaintiff was a superb performer, a schooled investigator in the detective division, a good detective with a solid background in detective work, was well-educated with a bachelor's degree from Temple University, was well-respected by peers and supervisors, a good communicator, and had a pristine disciplinary record. See id.

Defendant truly hangs its hat on the argument that Rodriguez was "not a Caucasian," and therefore his promotion before Plaintiff was not discriminatory. However, Plaintiff is not suing because he was discriminated against because he was not Caucasian; he is suing because he was denied a promotion to the rank of sergeant because he was black. The central focus of a prima facie case of discrimination "is always whether the employer is treating 'some people less favorably than others because of *their* race, color, religion, sex, or national origin.'" Sarullo v. United States Postal

Service, 352 F. 3d 789, 798 (3d Cir. 2003) (emphasis added). Thus, the standard is not so narrow that Plaintiff must prove that he was treated less favorably than a Caucasian person. Instead, Plaintiff must prove that he was treated less favorably than *others* because of *his* race. Simply put, Plaintiff Boyd was next in line for a promotion in accordance with the Chief's statements and conduct that he was promoting officers based on seniority (See Def's Appendix at A1022-1025, A1032); Plaintiff's Appendix at Tab A). However, Plaintiff was passed over for a less senior officer because he was black. Additionally, Defendant has seemed to sua sponte, taken judicial notice that Hispanics are not Caucasian.[5]    However, this is a fact that is in considerable doubt. (See http:www.census.gov/cac/www/Recommendation(AA)Fall2003.html) (the census bureau states that it has floated the idea of adding an entry for Caucasian into the White category, but there is a lot of confusion among people as to what "Caucasian" means).

Stunningly, in one of the more egregious instances of "spinning" the facts in its Motion for Summary judgment, Defendant claims that not one witness of record can testify that Defendant's decision to pass over Plaintiff was motivated by race. There is considerable disagreement in the evidence before the Court whether Defendant's promotion system was motivated by race. First, and most fundamentally, Plaintiff testified to the contrary. (See Def's Appendix at A-952). Additionally, Howell testified that he was similarly discriminated against because of race. (See Def's Appendix at A-1029) (testifying that he was not promoted because the Chief Szczerba wanted to promote a white person); (A-1032) (testifying that promotions were based on seniority); (A-1033) (confirming that Plaintiff was qualified and the most senior for the position); (A-1033) (testifying that Plaintiff was a capable officer); (A-1034) (testifying that penalties meted out to black officers were more harsh than

---

[5] Note that Plaintiff, counter to Defendant's assertions, asserts that Rodriguez, the American-born non-Spanish-

those received by their white colleges); (A-1035) (testifying that witness was not promoted because he was African-American).

From reading Defendant's Motion, one would think that the racial discrimination is a dead issue about which there can be no debate. In contrast, there is considerable disagreement in the factual record regarding whether Defendant's hiring practices were motivated by race. There is clearly a genuine issue of material fact here.

**B.    PLAINTIFF HAS DEMONSTRATED BY A PREPONDERANCE OF THE EVIDENCE THAT THE LEGITIMATE, NON-DISCRIMINATORY REASONS FOR PROMOTING RODRIGUEZ RATHER THAN PLAINTIFF WERE PRETEXUAL AND THE DECISION ACTUALLY MOTIVATED BY RACIAL ANIMUS.**

As the Plaintiff has properly presented a material issue of fact on all the prima facie elements, See Krouse, 126 f.3d at 501, summary judgment on that element of the McDonnell Douglas test is foreclosed. However, Defendant is also entitled to summary judgment if, after Defendant produces evidence that the Plaintiff was not promoted for a legitimate, nondiscriminatory reason, Plaintiff is unable to present evidence that would permit a reasonable factfinder to infer that the putative reason was pretextual and that the true reason was discrimination. Krouse, 126 f.3d at 501

> To meet this burden, the plaintiff must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant; or 2) allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment decision. The non-moving party must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find

---

speaking son of a white female, is Caucasian. See Compl. ¶ 11.

> them unworthy of credence" and infer that the employer did not act
> for the asserted non-discriminatory reasons. If the plaintiff can
> successfully demonstrate pretext, he need not present affirmative
> evidence of discrimination beyond his prima facie showing if a
> rational fact finder could conclude from the evidence of pretext that
> the defendant's actions were discriminatory.

King v. City of Philadelphia, 2002 U.S. Dist. LEXIS 10276, 27-28 (D. Pa. 2002) (citations omitted).

Defendant claims that record contains no evidence, either direct or circumstantial, which would prove the promotion was discriminatory. See Def.'s Mem. at 28. Ignoring, for the moment, Defendant's repeated "spinning" of the facts for its own purposes, the statements of Donohue alone are sufficient to reach this "casts sufficient doubt" standard. Beyond that, the testimony of Smith, Howell, and the Plaintiff himself further cast doubt on Defendant's pretextual reasons for promotion.

Here again, the Defendant thumps the "preponderance of the evidence" standard as if it is trying to get this Court to decide this case on its merits. This is a summary judgment motion. Accordingly, the motion's purpose is to determine whether there is sufficient factual dispute to require a trial. While there are many facts still clouded in culture of secrecy and taking-care-of-your-own in the Wilmington Police Department, it is clear that Plaintiff has unearthed enough facts to warrant denial of Defendant's summary judgment motion and enough for this case to go forward to trial.

Defendant's memorandum, deliberately or otherwise, spins the facts in the record and inaccurately states the law governing this Court's decision on granting summary judgment. In this respect, Defendant's memorandum hurts Defendant's credibility and is further indication that the

20

information that has been uncovered so far is merely the tip of the iceberg, with the majority of the wrongdoing still covered beneath the water.

## II.    DEFENDANT CITY OF WILMINGTON HAS WAIVED ITS RIGHT TO ARGUE LACK OF JURISDICTION BECAUSE THIS DEFENSE WAS NEITHER INCLUDED IN A RULE 12 MOTION NOR INCLUDED IN A RESPONSIVE PLEADING.

Defendant claims that the Wilmington Police Department is merely a department of the City of Wilmington and, as such, is not subject to suit. See Def.'s Mem. at 33–34. In other words, Defendant claims that this Court does have jurisdiction over it. In so arguing, Defendant asks this court to over rule the decision in Jamison v. Wilmington Police Dept., 2004 WL 2434298 (D. Del. Oct. 12, 2004), which held that the Wilmington Police Department is subject to suit for a § 1983 violation in certain circumstances. However, we need not decide whether this Court should overrule Jamison because Defendant has waived its defense to lack of jurisdiction over the person.

A defense of lack of jurisdiction over the person is waived if it is neither included in a Rule 12 motion nor included in a responsive pleading. Fed. R. Civ. P. 12(h)(1). Because this Motion is the first time that Defendant has raised this defense of lack of personal jurisdiction of this Court, the objection has been waived.

> Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived. . . . A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court. Parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . and the Court [has] upheld the personal jurisdiction of a District Court on the basis of a stipulation entered into by the defendant. In addition, lower federal courts have found such consent implicit in agreements to arbitrate. Furthermore, the Court has upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures. Finally, unlike subject-matter jurisdiction, which even an appellate court may review sua sponte, under Rule 12(h), Federal

21

> Rules of Civil Procedure, a defense of lack of jurisdiction over the
> person is waived if not timely raised in the answer or a responsive
> pleading.

Insurance. Corp. of Ir. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 703-704 (1982)

(citations, internal quotation marks, and internal alterations omitted).

Defendant advances several reasons why Jamison v. Wilmington Police Dept., No. 04-

033-SLR, 2004 U.S. Dist. LEXIS 22004, (D. Del. October 12, 2004) ("Jamison I"), should not be

followed. Plaintiff will address Defendant's arguments in turn.

First, Defendant argues that this Court should ignore the holding of Jamison I because the

case was decided only a week after Padilla v. Township of Cherry Hill, No. 03-3133, 2004 U.S. App.

LEXIS 20763, (3d Cir. October 5, 2004). Conveniently, in making this argument, Defendant ignores

the second Jamison opinion, Jamison II, that was decided after Padilla, and just like Jamison I, held

that the Wilmington Police Department was a suable under § 1983 under certain circumstances. In

Jamison v. Wilmington Police Dept., No. 04-033-SLR, 2005 U.S. Dist. LEXIS 3184, (D. Del. March

3, 2005) ("Jamison II"), defendant Wilmington Police Department argued that an unincorporated

police department is not a legal entity amenable to suit. Id. at *6. However, the Jamison II found that

§ 1983 supplies a remedy for violations of federal law committed by people acting under color of

state law. In order to successfully bring a claim under § 1983, a plaintiff is required to show that: (1)

the conduct complained of was committed by a person acting under the color of state law; and (2) the

conduct deprived plaintiff of a right or privilege guaranteed by the Constitution or the laws of the

United States. Id. at *8 (citing Robb v. City of Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984)). It is

not immediately clear whether Defendant failed to cite the Jamison II through inadvertence or as a

calculate tactical decision. Regardless, when Jamison II is examined in the context of this

"proximity" argument advanced by Defendant, the argument's persuasiveness is considerably deflated.

Second, Defendant claims that the opinion in Jamison I is invalid because that court cited no authority for its proposition that the "police department is a local municipality." See Def.'s Br. at 37. This is a patent misstatement of the Jamison I's holding. Defendants focus on the portion of the opinion that states, "In the case at bar, the defendant police department is a local municipality and, therefore, a person subject to suit for a § 1983 violation." Jamison I at *7; Def.'s Br. at 37. While it is true that this particular sentence of the opinion was not followed by a supporting citation, Jamison I cites Mondell v. Department of Social Servs., 436 U.S. 658 (1978), in holding that, "[t]he Supreme Court has determined that local municipalities and governmental units, that are not considered part of the state for Eleventh Amendment purposes, are among those persons to whom 42 U.S.C. § 1983 applies." Jamison I at *6 (citing Mondell, 436 U.S. at 690) (emphasis added). As it can clearly be seen, Defendants interpretation of the Jamison I as not providing adequate precedential support is not accurate; Defendants only arrived at that conclusion by ignoring the citation to the U.S. Supreme Court on the previous page of the opinion.

Defendant also argues that Jamison I's holding that "the defendant police department is local municipality" is inconsistent with federal law. Def.'s Br. at 37 (quoting Jamison I at *7). Here again, Defendant misses the forest for the trees by ignoring the Jamison I court's more detailed reasoning provided earlier in the opinion. Jamison I held that a governmental unit is a "person" to whom § 1983 applies.

Third, and finally, Defendant claims that Jamison I does not stand for the proposition that a police department is a "person" for purposes of § 1983. As discussed in the immediately preceding

paragraph, this is not an accurate statement of the law. Therefore, Defendant's fourth argument is without merit.

## CONCLUSION

Under the <u>McDonnell Douglas</u> analysis, Plaintiff has raised a genuine issue of material fact as to each of the elements of his prima facie case. Further, Plaintiff has countered any notion that he was not promoted for a legitimate, nondiscriminatory purpose by showing that a reasonable factfinder would infer that the putative reason was pretexual and that the true reason was discrimination. Further, Defendant has waived its right to argue lack of jurisdiction because this defense was neither included in a Rule 12 Motion nor included in a responsive pleading. Based upon the foregoing reasons, Plaintiff respectfully requests that this Court dismiss Defendant's Motion for Summary Judgment in this action.

Respectfully submitted,

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (DE #2407)
Lori A. Brewington, Esquire (DE #4522)
1509 Gilpin Avenue
Wilmington, DE 19806
(302) 777-4680
jmartin@margolisedelstein.com
lbrewington@margolisedelstein.com
Attorneys for Plaintiff

DATED: April 7, 2006

24

## CERTIFICATE OF SERVICE

I, Lori A. Brewington, Esquire, do hereby certify that on April 7, 2006, I electronically filed *Plaintiff's Answering Brief in Opposition to Defendant's Motion for Summary Judgment* with the Clerk of the Court using CM/ECF which will send notification of such filing to the following attorney-of-record below:

Rosamaria Tassone, Esquire
Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801

Lori A. Brewington, Esquire (DE #4522)
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806
(302) 777-4680

ii