# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH A. BOYD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No.  05-178 KAJ |
| v. | : | TRIAL BY JURY DEMANDED |
| | : | |
| WILMINGTON POLICE DEPARTMENT, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT

Rosamaria Tassone, Esquire (I.D. #3546)
Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    PLAINTIFF'S RECITATION OF THE BURDEN OF PROOF APPLICABLE
    TO RACE BASED DISCRIMINATION CLAIMS FILED UNDER TITLE VII, 42 U.S.C.
    §1981, AND STATE LAW IS ERRONEOUS AND CONTRARY TO WELL-
    ESTABLISHED CASE LAW AS SET FORTH BY THE UNITED STATES SUPREME
    COURT AND THE THIRD CIRCUIT COURT OF APPEALS. THE APPROPRIATE
    ANALYTICAL FRAMEWORK GOVERNING SUCH CLAIMS AT THE SUMMARY
    JUDGMENT STAGE IS THE BURDEN-SHIFTING PARADIGM ESTABLISHED UNDER
    MCDONNELL DOUGLAS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    IN LIGHT OF PLAINTIFF'S BURDEN AT SUMMARY JUDGMENT, PLAINTIFF
        FAILS TO ADDUCE SIGNIFICANT, PROBATIVE, CONCRETE EVIDENCE OF
        RECORD SUPPORTING HIS ASSERTION THAT HE WAS TREATED LESS
        FAVORABLY THAN CAUCASIAN OFFICERS WITH REGARD TO THE APRIL,
        2004 PROMOTION OF MICHAEL RODRIGUEZ, A NECESSARY ELEMENT OF
        HIS PRIMA FACIE CASE. AS SUCH, PLAINTIFF FAILS TO RAISE A GENUINE
        ISSUE OF MATERIAL FACT, AND DEFENDANT IS ENTITLED TO JUDGMENT
        AS A MATTER OF LAW ON ALL CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.    PLAINTIFF FAILS TO ADDUCE ANY EVIDENCE IN THE RECORD THAT THE
        LEGITIMATE, NON-DISCRIMINATORY REASONS FOR PROMOTING
        RODRIGUEZ RATHER THAN PLAINTIFF ARE PRETEXTUAL, AND THE
        DECISION ACTUALLY MOTIVATED BY RACIAL ANIMUS . . . . . . . . . . 10

    II.    DEFENDANT DID NOT WAIVE ITS DEFENSE THAT IT IS NOT SUBJECT TO SUIT
    BECAUSE THIS DEFENSE WAS EXPLICITLY STATED AS AN AFFIRMATIVE
    DEFENSE IN ITS ANSWER. THEREFORE, DEFENDANT FULLY COMPLIED WITH
    THE NOTICE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL
    PROCEDURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    III.    GIVEN THAT PLAINTIFF FAILED TO ADDRESS DEFENDANT'S ARGUMENT THAT
    1 WILM. C. §35-111 IS MERELY A POLICY STATEMENT AND DOES NOT CREATE
    A CIVIL CAUSE OF ACTION WHEREBY PLAINTIFF MAY SUE THE CITY OF
    WILMINGTON OR A DEPARTMENT WITHIN THE CITY, PLAINTIFF HAS
    ABANDONED HIS CAUSE OF ACTION UNDER §35-111 . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## <u>TABLE OF CITATIONS</u>

### Cases

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Barshinger v. Buffington</u>, 2004 U.S. Dist. LEXIS 28929 (M.D. Pa. Jun. 10, 2004) . . . . . . . . . . . . . . 19

<u>Callahan v. Consolidated Edison Co. of New York, Inc.</u>,
      2005 U.S. Dist. LEXIS 795 (S.D.N.Y. Jan. 3, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

<u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>France Telecom S.A. v. Novell</u>, 2002 U.S. Dist. LEXIS 19967 (D. Del. Oct. 17, 2002) . . . . . . . . . . . 17

<u>Fuentes v. Perskie</u>, 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Gunser v. City of Philadelphia</u>, 398 F. Supp. 2d 392 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Jamison v. Wilmington Police Department</u>, 2005 U.S. Dist. LEXIS 3184 (D. Del. Mar. 3, 2005) . . . . 18

<u>Jones v. City of Wilmington</u>, 2004 U.S. Dist. LEXIS 12806 (D. Del. 2004) . . . . . . . . . . . . . . . . . . . . 13

<u>Jones v. School District of Philadelphia</u>, 198 F.3d 403 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Lamb-Bowman v. Delaware State Univ.</u>, 152 F.Supp.2d 553 (D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . 5

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4

<u>Sarullo v. United States Postal Service</u>, 352 F.3d 789 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061(3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 4

<u>S.K.A. Steel Trading, Inc. v. Penn Terminals, Inc.</u>,
      1998 U.S. Dist. LEXIS 19190, *2 (E.D. Pa. Dec. 3, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Trueposition, Inc. v. KSI, Inc.</u>, 2003 U.S. Dist. LEXIS 881 (D. Del. Jan. 21, 2003) . . . . . . . . . . . . . . 17

<u>Wayne v. Borough of West Chester</u>, 891 F.2d 458 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

**Statutes**

Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 19

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 2, 19

1 <u>Wilm. C.</u> §35-111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 18, 19

**Rules**

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

## SUMMARY OF ARGUMENTS

Plaintiff's recitation of the burden of proof applicable to race based discrimination claims filed under Title VII, 42 U.S.C. §1981, and state law is erroneous and contrary to well-established case law as set forth by the United States Supreme Court and the Third Circuit Court of Appeals. The appropriate analytical framework governing such claims at the summary judgment stage is the burden-shifting paradigm established under McDonnell Douglas. Therefore, in light of Plaintiff's burden at summary judgment, Plaintiff fails to adduce significant, probative, concrete evidence of record supporting his assertion that he was treated less favorably than Caucasian officers with regard to the April, 2004 promotion of Michael Rodriguez, a necessary element of his prima facie case.    Further, Plaintiff fails to adduce any evidence in the record that the legitimate, non-discriminatory reasons for promoting Rodriguez rather than Plaintiff are pretextual, and the decision actually motivated by racial animus. As such, Plaintiff fails to raise a genuine issue of material fact, and Defendant is entitled to judgment as a matter of law on all claims.

Additionally, Defendant did not waive its defense that it is not subject to suit. This defense was explicitly stated as an affirmative defense in its Answer. Therefore, Defendant fully complied with the notice pleading requirements of the Federal Rules of Civil Procedure.

Lastly, given that Plaintiff failed to address Defendant's argument that 1 Wilm. C. §35-111 is merely a policy statement and does not create a civil cause of action whereby Plaintiff may sue the City of Wilmington or a department within the city, Plaintiff has abandoned his cause of action under §35-111.

<u>**ARGUMENT**</u>

I.      **PLAINTIFF'S RECITATION OF THE BURDEN OF PROOF APPLICABLE
        TO RACE BASED DISCRIMINATION CLAIMS FILED UNDER TITLE VII, 42
        U.S.C. §1981, AND STATE LAW IS ERRONEOUS AND CONTRARY TO WELL-
        ESTABLISHED CASE LAW AS SET FORTH BY THE UNITED STATES SUPREME
        COURT AND THE THIRD CIRCUIT COURT OF APPEALS.  THE APPROPRIATE
        ANALYTICAL FRAMEWORK GOVERNING SUCH CLAIMS AT THE SUMMARY
        JUDGMENT STAGE IS THE BURDEN-SHIFTING PARADIGM ESTABLISHED
        UNDER <u>MCDONNELL DOUGLAS</u>.**

        In response to Defendant's well-pled Motion for Summary Judgment, Plaintiff submitted an

Answering Brief that can only be characterized as incredibly lacking in case law to support his erroneous

legal arguments and incredibly lacking in evidence to support his meritless factual allegations.  While

Plaintiff revels in falsely accusing Defendant of "puffing" and "spinning" and in several instances implying

that Defendant is intentionally misleading the Court with its well-supported legal and factual arguments, it

is in fact Plaintiff's submission which is riddled with instances of undisguised puffing, spinning and

fictionalization of testimony.

        Plaintiff asserts that the <u>McDonnell Douglas</u> burden-shifting analysis with its requisite burdens of

proof is not the appropriate standard upon which to review Plaintiff's case at the summary judgment stage.

Specifically, Plaintiff states, "Defendant inappropriately launches into an analysis of this case under the

<u>McDonnell Douglas</u> opinion... While <u>McDonnell Douglas</u> does provide the appropriate law in deciding a

charge of racial discrimination such as the one sub judice, a summary judgment motion is not the time – as

Defendant seems to argue – in which to determine whether the plaintiff will ultimately prevail in its claim."

(Pl. Ans. Br. p. 12).  Plaintiff further argues that Defendant is erroneous in its statement that Plaintiff is

required to prove his prima facie case by a preponderance of the evidence.  "Conveniently, Defendant does

not provide any discussion of the quantum of proof necessary for Plaintiff to satisfy the prima facie

elements... Incredibly, Defendant claims that Plaintiff must demonstrate the prima facie elements by a

preponderance of the evidence!... This, obviously, is an incorrect statement of the law." (Pl. Ans. Br. p.14,

fn.3).

It is axiomatic that at the summary judgment stage, the Court must review the record in light of the law applicable to Plaintiff's claim, and the burdens and proofs Plaintiff must carry at trial. Therefore, contrary to Plaintiff's argument, the standard of law by which the Court must evaluate Plaintiff's allegations of racial discrimination in light of a pending motion for summary judgment and at trial is that enunciated by the United States Supreme Court in <u>McDonnell Douglas</u> and its progeny.

> In McDonnell Douglas Corp. v. Green, we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving **by the preponderance of the evidence** a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove **by a preponderance of the evidence** that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination... The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. The McDonnell Douglas division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-253 (1981)(internal citations omitted)(emphasis added); *see also*, <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993)("The plaintiff in such a case, we said, must first establish by a preponderance of the evidence, a 'prima facie' case of racial discrimination".)

The United States Court of Appeals for the Third Circuit, articulating the same standard and burdens established by the United States Supreme Court in the above referenced cases, has set forth the standard in this jurisdiction that Plaintiff must meet in order to avoid summary judgment:

> The existence of a prima facie case of employment is a question of law that must be decided by the Court... The 'central focus' of the prima facie case 'is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin'....[With regard to the third prong of the McDonnell Douglas analysis, Plaintiff] must produce sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons for not [promoting] him are a pretext for illegal discrimination or retaliation. He may meet this burden and defeat a motion for summary judgment **by providing evidence** that would allow a fact finder reasonably to '(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action'.... [Plaintiff] can accomplish this by showing that the defendants' proffered reasons

-3-

are weak, incoherent, implausible, or so inconsistent that a reasonable fact finder could rationally find them unworthy of credence'... He can also meet this burden **with evidence** that 'the employer's articulated reason was not merely wrong, but that it was "so plainly wrong that it could not have been the employer's real reason." Sarullo v. United States Postal Service, 352 F.3d 789, 797-798, 799-800 (3d Cir. 2003)(emphasis added), citing to Jones v. School District of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999)(quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994), Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996), Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997).

Although difficult to clearly discern from Plaintiff's Answering Brief, Plaintiff appears to argue that he does not have to come forward at this time with the specific evidence necessary to meet his burden of proof under the McDonnell Douglas standard, but must merely demonstrate a genuine issue of material fact in this case in order to overcome summary judgment. In support of his position, Plaintiff cites to Krouse v. American Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997), a case involving a retaliation action under the ADA, which states:

> To obtain summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, (1) that the retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of that process. This may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to either (1) one or more elements of the plaintiff's prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation. Id. at 501.

Contrary to Plaintiff's assertion, this case does not relieve Plaintiff of his burden under a summary judgment motion, nor is it contrary to the standard set forth in Defendant's Opening Brief and enunciated for the second time above. Plaintiff must still provide the Court with the specific evidence he claims supports his allegations and upon which a reasonable trier of fact can find in his favor at trial. In this manner, Plaintiff creates a genuine issue of material fact necessitating a trial.

As recited in Defendant's Opening Brief, once the moving party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-

-4-

moving party cannot produce "**concrete evidence** from which a reasonable [trier of fact] could return a verdict in [his] favor," then summary judgment for the movants must be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)(emphasis added). "The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; **there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue**." <u>Lamb-Bowman v. Delaware State Univ.</u>, 152 F.Supp.2d 553, 557-558 (D. Del. 2001), citing <u>Anderson</u>, 477 U.S. at 249 (emphasis added).

A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Wayne v. Borough of West Chester</u>, 891 F.2d 458, 459 (3d Cir. 1989). Indeed, the non-movant must provide "**significant probative evidence tending to support the complaint**." <u>Anderson</u>, 477 U.S. at 249 (emphasis added). The moving party "**may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial**." <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987)(emphasis added).

> **A.    In light of Plaintiff's burden at summary judgment, Plaintiff fails to adduce significant, probative, concrete evidence of record supporting his assertion that he was treated less favorably than Caucasian officers with regard to the April, 2004 promotion of Michael Rodriguez, a necessary element of his prima facie case. As such, Plaintiff fails to raise a genuine issue of material fact, and Defendant is entitled to judgment as a matter of law on all claims.**

In its Opening Brief, Defendant argues that Plaintiff cannot meet his threshold burden of establishing a prima facie case of racial discrimination because: 1) Chief Szczerba has previously promoted officers with less seniority, including African-American officers; 2) Chief Szczerba has promoted African-American males and females in the past, some with less seniority than their Caucasian counterparts, as well as Hispanic males and females; 3) Michael Rodriguez is Hispanic and is not Caucasian as Plaintiff asserts; and 4) Chief Szczerba promoted Michael Rodriguez instead of two Caucasian officers who are more senior than Michael

Rodriguez, thereby completely disproving Plaintiff's assertion that Caucasians are treated more favorably

than Plaintiff.  In response, Plaintiff asserts that he has "raised several issues of material fact," and, therefore,

he has established a prima facie case of race based discrimination.  (Pl. Ans. Br. p.13).  However, in support

of his assertion, Plaintiff continues to cling to the flawed theory that Chief Szczerba's promotions have all

been based upon the candidate's seniority, and that when Plaintiff was the most senior candidate in his Band,

Chief Szczerba chose another less senior candidate.  In making this argument, Plaintiff continues to either

ignore or gloss over the numerous instances prior to April, 2004 in which Chief Szczerba did not promote

the most senior eligible candidate, whether black or white.[1]

In support of its Motion for Summary Judgment, Defendant detailed each promotion by Chief

Szczerba prior to April, 2004, noting the race and seniority of each candidate.  (Def. Op. Br. pp. 6-9).

Defendant's Opening Brief clearly demonstrated that there were eleven (11) instances in which a less senior

officer was promoted to the ranks of sergeant, lieutenant, captain, and inspector, thereby effectively removing

the basis upon which Plaintiff alleges he was the subject of discrimination.[2]  In response, Plaintiff asserts

---

[1] In a desperate grasping of straws to compensate for the paucity of evidence supporting his case, Plaintiff makes a single statement that "the Wilmington Police Department admitted that after placement in the Band, Chief Szczerba promotes eligible officers on the basis of his or her seniority."  In support of this single sentence, Plaintiff indicates, in a footnote, that "Defendant failed to file its Answer to Plaintiff's Request for Admissions until January 30, 2006.  In accordance with Federal Rule (sic) Civil Procedure 36(a), the matter is deemed admitted due to Defendant's failure to serve a written answer or objection within 30 days after service."  (Pl. Ans. Br. p. 7-8, n.7).  However, Plaintiff's statement is erroneous and, to coin a phrase from Plaintiff, "underhanded and less than candid."  Plaintiff conveniently omits the fact that prior to the expiration of the time for answering the Requests for Admissions, Defendant's counsel requested at least two extensions of time, to which Plaintiff's counsel readily agreed.  Upon answering the Request for Admissions, that specific misstatement of fact was denied.  Therefore, this allegation is not deemed admitted by virtue of the fact that Defendant did not file an answer within thirty (30) days.

Notwithstanding the fact that Plaintiff raised this issue in a single sentence footnote in his Statement of Facts, Plaintiff does not utilize this alleged "admission" in his responsive argument.  Nonetheless, Defendant will more fully address this issue in its Motion to Amend, submitted separately from the within Reply Brief in Support of its Motion for Summary Judgment.

[2] Upon reading Plaintiff's Answering Brief, Defendant noted that it had mistakenly left out the promotion of John Snyder(w), who was promoted to the rank of lieutenant from the 2002-2004 promotional list.  Plaintiff is correct in that Snyder was the first promoted from Band I.  However, Snyder

that several of Chief Szczerba's initial promotions were made on the same day and that after these promotions, the next promotions were in order of seniority.[3]  In making this argument, Plaintiff groups together all of Chief Szczerba's initial promotions as though they were a single promotion in an obvious attempt to circumvent the undisputed documentary evidence establishing that approximately half of Chief Szczerba's promotions were not selected in order of seniority.

Contrary to Plaintiff's argument, and notwithstanding the fact that the initial promotional announcements were made on or about the same time, each promotion was a separate and distinct promotion as indicated at A 784-786, and the order in which the promotions were made was significant.  Every promotion is retroactive to the date that position became available.  Therefore, the order in which Chief Szczerba promoted those initial individuals determined that individual's retroactive pay and seniority within that specific rank.  Seniority in rank, in turn, may effect the individual's ability to choose vacation time in certain divisions.  (C 7-8).  As such, the date the promotions were announced is inconsequential and has no bearing on this matter.  This fact is underscored by the manner in which Defendant documents promotions and seniority, i.e. the effective date of the promotion, not the date on which the promotion was ultimately announced.  (See C 7-8; see also A782-793).  Indeed, Plaintiff himself considers each of those initial

---

was not the most senior in Band I.  John Fogelgren(w) was the most senior.  Therefore, the promotion of Snyder is yet another instance in which seniority was not followed.  Indeed, Fogelgren was passed over for promotion twice before he retired in February, 2003; first, when Snyder was promoted, and, second, when Battaglia(w) was promoted.  However, Fogelgren was not a member of the Wilmington Police Department at the time William Browne(w) was promoted over the more senior Akil(b).

Further, it must be noted that Plaintiff's statement that this oversight may have been intentional is without merit.  In order to determine the order of promotions and the seniority of the candidates as detailed in Defendant's Statement of Facts, conveniently copied by Plaintiff in his Opening Brief, Defendant utilized two (2) documents contained in its Appendix at A 784 and A 786.  In A 784, Snyder is not listed, presumably because he had retired at the time of the document's creation.  It is this document on which Defendant relied upon the most, and, consequently, missed the fact that Snyder had, indeed, been promoted by Chief Szczerba.

[3] Plaintiff again erroneously implies that Defendant intentionally did not bring this to the Court's attention as a way to "spin" the facts in its favor.  However, Defendant did in fact indicate that at the time Chief Szczerba took office, several promotional openings existed which the Chief filled shortly after taking office.  (Def. Op. Br. p.6).

promotions to be separate, albeit erroneously stating that they were all in order of seniority. (A 946).

When Chief Szczerba contemplated which candidates to choose for promotion to those openings available at the time he took office, he specifically considered the order of each promotion in light of the retroactive effect of his selection. Chief Szcerba considered each opening as if it were the sole opening, not merely part of a group. (C 7-8). Therefore, Plaintiff's attempt to argue that Chief Szcerba's initial promotions should be considered as one promotion and that, as such, the Court should disregard the instances in which the Chief selected less senior officers over more senior officers is erroneous and without any support.

Plaintiff also states that Bluestein(w) was appointed acting sergeant for a time when there was a shortage in supervisors because he was the next most senior individual in the Band. In support of his statement, Plaintiff points to A 904 and A 908, two (2) pages from Bluestein's deposition. However, those pages do not contain any reference to Plaintiff's erroneous conclusion that Bluestein was appointed acting sergeant as a result of his seniority. Indeed, no one has ever testified to that effect.

Further, Plaintiff continues to ignore Chief Szcerba's promotion of Wright(b), the least senior captain, to the rank of inspector, and the promotions of Ayala(h) and Cummings(b), the fifth and eighth senior lieutenants, respectively, to the rank of captain. Plaintiff offers absolutely no response to Defendant's argument that Plaintiff has inappropriately and without any valid reason limited the scope of this case to Chief Szczerba's promotional selections to the rank of sergeant, and that the Court must consider all of the Chief's promotional decisions, regardless of rank or gender. As such, these points remain undisputed by Plaintiff.

In response to Defendant's argument that Plaintiff cannot establish a prima facie case of racial discrimination as a matter of law because Rodriguez is Hispanic rather than Caucasian as Plaintiff alleges, Plaintiff argues that he was not only referring to white officers when he used the term "Caucasian," but was also including Hispanic officers. Plaintiff goes on to state that as part of the fourth element of his required

-8-

prima facie case, Plaintiff does not have to demonstrate that he was treated less favorably than Caucasian officers, but rather Plaintiff must simply show that he was treated less favorably than "others." As such, the promotion of Rodriguez instead of Plaintiff demonstrates that he was treated less favorably.

Plaintiff's argument is a blatant attempt to back pedal from his own allegations when faced with the irrefutable fact that Michael Rodriguez is not white, but Hispanic, and that Chief Szczerba promoted Rodriguez over two (2) white officers with more seniority. Contrary to Plaintiff's statement that Defendant "sua sponte" determined that Hispanics are not Caucasians, it is Plaintiff himself who stated that in utilizing the term "Caucasian" he was referring to white individuals:

> Q:   With regard to the individual that was promoted after Liam Sullivan was promoted, do you know who that individual is?
> A:   Yes.
> Q:   And who is it?
> A:   Mike Rodriguez.
> Q:   And what race is Mike Rodriguez?
> A:   He's a white male.
> Q:   You're saying he's Caucasian?
> A:   Caucasian.
> Q:   And how do you come to that conclusion?
> A:   His mother is Italian and his father Hispanic.
> Q:   And that makes him Caucasian?
> A:   White male.
> (A 958).

Even Plaintiff's Answering Brief indicates that the term "Caucasian" refers to white individuals: "Plaintiff.... asserts that Rodriguez, the American-born non-Spanish-speaking son of a white female, is Caucasian." (Pl. Op. Br. p. 18, n. 5). The fact that Plaintiff intentionally omits any reference to Rodriguez's Hispanic father underscores the fact that Plaintiff did not intend the term "Caucasian" to include any race other than white, and that in his Complaint, Plaintiff is distinguishing between the "white" and "Hispanic" races. Further, it is not Plaintiff who can arbitrarily determine the race of Michael Rodriguez. ("It's my opinion. He doesn't speak Spanish." A 958). Notwithstanding Plaintiff's opinion that Rodriguez is "white" because he does not speak Spanish and his mother is white, the undisputed record evidence establishes that

Rodriguez's race is Hispanic.  (A 204-205).

Lastly, in response to an Interrogatory posed by Defendant to Plaintiff asking what, if any, class of individuals he alleges received more favorable treatment, Plaintiff stated: "Plaintiff believes that Caucasian males and females received more favorable treatment, and African-American males received less favorable treatment."  (A 888).  Therefore, to now argue that Plaintiff need not "prove that he was treated less favorably than a Caucasian person[,but] [i]nstead, Plaintiff must prove that he was treated less favorably than *others* because of *his* race" is truly disingenuous given Plaintiff's allegations prior to the submission of Defendant's Motion for Summary Judgment.  (Pl. Ans. Br. p. 18).  As such, the Court should not permit Plaintiff to effectively amend his Complaint at summary judgment to now allege that "non-African-Americans" rather than Caucasian (white) officers received more favorable treatment as a method by which to avoid summary judgment.

> **B.    Plaintiff fails to adduce any evidence in the record that the legitimate, non-discriminatory reasons for promoting Rodriguez rather than Plaintiff are pretextual, and the decision actually motivated by racial animus.**

In its Opening Brief, Defendant offered the Court the legitimate, non-discriminatory reason for not selecting Plaintiff for promotion in April, 2004.  Chief Szczerba did not make his selection based on the color of Plaintiff's skin, but rather Chief Szczerba selected Rodriguez for promotion to sergeant over the remaining six (6) officers in Band II, including Plaintiff and two (2) senior Caucasian officers, because he believed Rodriguez would make the better supervisor of those remaining in the Band. (Def. Op. Br. pp. 24-28).  Chief Szczerba admitted that the decision was "difficult [and] challenging to make" given that all the candidates within the Band, including Plaintiff, were "all highly qualified individuals." (A 1062-1064).  However, there was only one (1) position and, as the Chief indicated, "there has to be a breaking point." (A 1062).  That breaking point was not race as Plaintiff alleges, but the fact that Chief Szczerba believed that Rodriguez excelled in terms of self-motivation, self-initiated action, communication skills, superior and recognized

performance, and his willingness to go above and beyond what is normally required of a police officer. These are the characteristics that Rodriguez possessed in greater degree than Plaintiff and established him as a better supervisor for the Wilmington Police Department.

Defendant further argued that when reviewing the record in the light most favorable to Plaintiff, no evidence of record exists which would support a finding that Defendant's reason for promoting Rodriguez was pretextual and that racial animus motivated Chief Szczerba's decision.  Defendant pointed to the deposition testimony and affidavits of each of the witnesses wherein each witness, even those who Plaintiff purports can support his allegations of racial discrimination, denies that the decision not to promote Plaintiff was racially motivated.

In response to Defendant's statement that not one witness of record has testified that Chief Szczerba's decision was motived by race, Plaintiff is "stunned" by Defendant's assertion and alleges that "[t]here is considerable disagreement in the evidence before the Court whether Defendant's promotional system was motivated by race." (Pl. Ans. Br. p. 18).  To illustrate this supposed "disagreement in evidence," Plaintiff points to his testimony and the testimony of Howell, Donohue and Smith.  (Pl. Ans. Br. pp. 18, 20). However, other than Plaintiff's opinion that race could be the only reason he was not promoted, a given considering that Plaintiff filed the Complaint, Howell and Donohue do not state that race was the motivating factor.  Further, the record contains no testimony or affidavit from Smith that race motivated Chief Szczerba's decision.

First, the issue in this case, as framed by Plaintiff, is not whether Defendant's "promotional system" is racially discriminatory, but whether racial animus motivated Chief Szczreba's decision  to promote Rodriguez rather than Plaintiff in April, 2004.

> Q:     But you're not alleging the testing procedure is discriminatory, are you?
> A:     No.  Not at all.  Not at all.
> (A 976); (*see also*, A 896 wherein Plaintiff indicates that the Management Scientists II promotional system is not racially discriminatory.)

Second, Plaintiff's assertion that the "testimony" of Clayton Smith "casts doubt on Defendant's pretextual reasons for promotion" is truly incredulous given that there is no "testimony" in the record from Smith. There is neither deposition testimony nor an affidavit from Smith from which the Court could conclude that Defendant's reasons are pretextual and racial animus drove Chief Szczerba's decision not to promote Plaintiff. The only reference to Smith is in Plaintiff's Answers to Defendant's First Set of Interrogatories wherein Plaintiff himself alleges that Smith "will testify to the discriminatory promotional practices of Defendant." (A 893). However, as noted above and in Defendant's Opening Brief, the issue here is not the promotional system, but Plaintiff's failure to be promoted in April, 2004. (*See also*, Plaintiff's Statement of Facts: "Plaintiff alleges that he was discriminated against based upon his race (African-American) when Chief Michael Szczerba promoted Michael Rodriguez to the rank of sergeant instead of Plaintiff in April, 2004, the last promotion made prior to the expiration of the 2002-2004 promotional list. Plaintiff alleges that Defendant Wilmington Police Department violated his federally protected rights... when he was not promoted to the rank of sergeant in April, 2004. (Pl. Ans. Br. p. 4)). Further, in response to Defendant's Motion for Summary Judgment, Plaintiff was required to support his allegations with an affidavit from Smith, which he failed to do. (Fed. R. Civ. Proc. 56(c)). Therefore, Plaintiff cannot now rely on what he believes to be Smith's testimony for purposes of overcoming summary judgment.

Third, Howell does not testify that he was "similarly discriminated against because of race." Indeed, Plaintiff's statement that at A 1029 of Howell's deposition testimony Howell testified that "he was not promoted because the (sic) Chief Szczerba wanted to promote a white person" is blatantly false. Howell was, in fact, promoted. Further, Howell stated, initially, that he did not believe that race was the reason why he was not the Chief's, or anyone else's, selection for inspector. "That didn't mean that – because no one wanted me promoted, that didn't mean that was in a racial sense." (A 1031). Later in his deposition, Howell inexplicably seemed to contradict himself by stating that he believed race may have played a part in why he

-12-

was not recommended for promotion. (A 1035). However, in the end, Howell admitted that "[he was] not really sure" that race was the reason. (A 1038). Howell's testimony with regard to why he felt he was not recommended by "anyone" for promotion can at best be described as confused, and certainly not probative to the issue of alleged racial animus in Plaintiff's failure to be promoted.

Howell's testimony with regard to his opinion that black officers are discriminated against in disciplinary matters is also irrelevant for a number of reasons. First, this is not a case about alleged discrimination in disciplinary matters. This is a case about alleged discrimination in Plaintiff's failure to be promoted. Discipline has never been an issue in this case, nor has there been any discovery on this point. Second, this Court in Jones v. City of Wilmington, 2004 U.S. Dist. LEXIS 12806 (D. Del. 2004), has already addressed the specific issue of discrimination in disciplinary matters in the Wilmington Police Department and determined that the evidence in that case did not establish as a matter of law that black officers received harsher discipline than their white counterparts. Third, Plaintiff is inappropriately attempting to bring in through the back door several inflammatory, anonymous letters circulated within City government that allege racial discrimination and favoritism in the police department. Notwithstanding the fact that Howell may believe that some of the allegations contained in the letters are true with respect to disciplinary issues, while other allegations are false[4], those letters are inadmissible as evidence at trial and, as such, cannot be utilized by Plaintiff in response to a motion for summary judgment. Gunser v. City of Philadelphia, 398 F.Supp. 2d 392, 395 (E.D. Pa. 2005)("To avoid summary judgment, the non-moving party must come forth with admissible evidence establishing a genuine issue of material fact"), citing Celotex Corp. v. Catrett, 477 U.S.

_____

[4] In response to the question asking him to explain "in what manner" he believed the anonymous letters were correct, Howell stated: "In the fact that the way punishment is dealt out. The fact that, if a Caucasian makes a mistake, they use bad judgment. If a black officer made a mistake, he got put on charges. The same thing applied to — it appeared that the penalty was more harsh than Caucasian officers." When Plaintiff's counsel asked him whether any other points addressed in the letters were "fairly accurate," Howell stated: "Well, not all of it was accurate. I mean, it was some stuff in there was irrelevant, definitely didn't fit." More significantly to this case, when asked directly about the allegation contained in the letters indicating that race had been the reason why Plaintiff had not been promoted, Howell stated that he did not feel that was accurate. (A 1034).

317, 322 (1986); <u>Callahan v. Consolidated Edison Co. of New York, Inc.</u>, 2005 U.S. Dist. LEXIS 795, *7-9

(S.D.N.Y. Jan. 3, 2005)(holding anonymous letters inadmissible to prove racial animus). Further, despite

Defendant's best efforts to investigate the allegations contained in the letters by requesting that the aggrieved

party or parties come forward with their complaints, not one individual chose to do so, thereby precluding

Defendant from conducting a full investigation into the veracity of the allegations. (C 4-6). Fourth, Howell

specifically testified that race was **not** a factor in the Chief's decision not to promote either Plaintiff or Akil.

(A 1032-1033: "Q: Do you believe that remark had any racial connotations? A: No, I do not."; "Q: What is

your understanding... as to why Detective Boyd was not promoted to sergeant?... A: I don't know, sir."; A

1034: "Q: [D]o you feel that [the statement that Boyd was denied promotion on the basis of race] may be

accurate?... A: No."; A 1036: "Q: So is it accurate to say that you didn't believe that the promotion of

William Brown was racially motivated? A: No. No."). Howell's statement is corroborated by the other

witnesses in this matter. (See A 1078- 1104 Affidavits of Inspectors Martin Donohue and James Wright,

Captains Victor Ayala, Bobby Cummings, Nancy Dietz, Marlyn Dietz, Sean Finerty, James Jubb, Michael

Maggitti, and Lieutenant Mitch Rock all stating that they are unaware of any evidence suggesting that race

was the motivating factor; A 1074 Depo. of Gary Tabor: "I know that Mike Rodriguez is a minority and

Kenny Boyd is a minority. To me, it doesn't seem that race is an issue.").

       Fourth, Donohue specifically stated that she did not know the factors Chief Sczcerba generally

utilized for promotional selections. Donohue never stated that she believed Chief Szczerba's decision was

racially motivated.

> Q:    Do you have any understanding as to whether Chief Szczerba was promoting on the basis of seniority?
> A:    No.
> Q:    You had no understanding of that? What was your understanding, if any, as to how and why officers were being promoted to sergeant?
> A:    I don't know any basis that they used, anything that they used.
>     (A 1021).
> Q:    When you had that discussion with Ken Boyd in the back parking lot, did you have any understanding as to why Ken Boyd was not selected?

-14-

> A:    No.
> (A 1023).

With regard to Donohue's statement that Chief Szcerba used seniority as the basis to select candidates from within Band I of the 2002-2004 promotional list, Plaintiff continues to blindly ignore Donohue's specific statement that Chief Szczerba had only been referring to the three (3) promotional selections in Band I, not to all his promotional selections.

> Q:    What was your recollection as to your discussion with the chief about the seniority issue?
> A:    When I was brought in and told that I was promoted, he had stated that out of the three [candidates in Band I], he had a hard decision to make. And he based it on seniority. (A 1022; *see also*, A 1024).

Although Plaintiff attempts "spin" Donohue's statement by asserting that "Donohue testified that the Chief promoted based on seniority and that she does not have any reason *not* to believe that seniority was used coupled with banding for the Chief's other promotions," the record speaks for itself.

> Q:    So what I'm asking you is your understanding as to, in this second band, whether seniority was used as a means of selecting people within that band?
> A:    **I do not know.**
> Q:    But you don't have any reason not to believe that it was seniority coupled with the banding; is that correct?
> A:    Correct.
> (A 1022)(emphasis added).

Contrary to Plaintiff's assertion, this ambiguous response, alone or coupled with others, is a far cry from being "sufficient to reach this 'casts sufficient doubt' standard." (Pl. Ans. Br. p. 20).

Lastly, Plaintiff himself has candidly admitted that he does not know why he was not promoted.

> Q:    Okay. Do you know why the Chief promoted Michael Rodriguez to the rank of sergeant?
> A:    The Chief never made it a point afterwards to come to me and tell me why he promoted Michael Rodriguez over me. He's never done that. He's never had any of his subordinates come to me to tell me that either, so with that being said, I don't know, you know, in his mind the reason why he selected Rodriguez over me. (A 963).

Indeed, Plaintiff has gone so far as to state that an alleged friendship between Chief Szczerba and Rodriguez

-15-

could be the factor in promoting Rodriguez, which if taken as true, does not form an actionable basis under Title VII.

> Q:    But yet one of the reasons you're saying that the Chief promoted Mike Rodriguez is because of this personal relationship that he has.
> A:    Because of a friendship.  Yeah.
>       (A 969; *see also*, A 968, 979-980).

In fact, these statements alone preclude Plaintiff from establishing pretext (or for that matter a prima facie case) because, in order to meet his burden, Plaintiff must establish "that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action."  Plaintiff's belief that friendship played a role in Rodriguez's promotion makes it less likely that "an invidious discriminatory reason" was the motivating factor.  Further underscoring the speculative nature of this entire case is the fact that the only basis for Plaintiff's belief that racial animus was the motivating factor in Chief Szczerba's decision is the mistaken impression that seniority was the basis for promotions[5].  (A 944-945, 952).

Given the foregoing, Plaintiff has failed to adduce evidence of record sufficient to carry his burden of proof on the essential elements of his case necessary to prove intentional racial discrimination.  As such, Plaintiff has failed to raise a genuine issue of material fact warranting a trial, and Defendant is entitled to judgment as a matter of law.

**II.    DEFENDANT DID NOT WAIVE ITS DEFENSE THAT IT IS NOT SUBJECT TO SUIT BECAUSE THIS DEFENSE WAS EXPLICITLY STATED AS AN AFFIRMATIVE DEFENSE IN ITS ANSWER. THEREFORE, DEFENDANT FULLY COMPLIED WITH THE NOTICE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

In its Opening Brief, Defendant correctly argued that it was entitled to judgment as a matter of law

---

[5]    At times, Plaintiff has also pointed to the fact that Faheem Akil(b) was "overlooked" for promotion to the rank of lieutenant. (A 985).  Indeed, Akil did file a complaint with the Department of Labor alleging discrimination.  However, Akil did not allege racial discrimination, but religious discrimination.  (C 1-3).  Akil presumably chose this route because in one instance a black male, Elmer Harris, was promoted over Akil.  Certainly, Plaintiff should be aware of the fact that Akil never raised race as the alleged reason for his failure to be promoted given that Plaintiff's counsel also represented Akil prior to Akil's promotion in 2005.  (A 1061).

because it is well-established that the Wilmington Police Department is not a separate juridical entity from the City of Wilmington and, as such, Defendant is not subject to suit. In response, Plaintiff surprisingly argued that "Defendant has waived its defense to lack of jurisdiction over the person" because it "neither included [this defense] in a Rule 12 motion nor included [it] in a responsive pleading." (Pl. Ans. Br. p. 21). Not only is Plaintiff's argument without legal merit, it is factually false.

In its Answer to the Complaint, Defendant specifically and clearly raised this issue in its third affirmative defense: "The Defendant is not subject to suit." (D.I.4, ¶68). Therefore, Plaintiff's assertion that the Defendant has raised this defense for the first time in its Motion for Summary Judgment leads one to ask whether Plaintiff is being deliberately obtuse or simply did not read Defendant's Answer carefully. Regardless of the reason why Plaintiff missed this defense, certainly upon reading Defendant's Opening Brief, Plaintiff should have confirmed whether Defendant had indeed raised this defense before asserting to the Court that it was not contained in Defendant's Answer. To completely ignore the fact that the defense is contained in the Answer is disingenuous.

To the extent that Plaintiff is attempting to argue that Defendant should have specifically stated that "the Court lacked jurisdiction over the Defendant," Plaintiff is erroneous. It is well settled that the Federal Rules of Civil Procedure require only "notice pleading, which requirement is equally applicable to the pleading of affirmative defenses." S.K.A. Steel Trading, Inc. v. Penn Terminals, Inc., 1998 U.S. Dist. LEXIS 19190, *2 (E.D. Pa. Dec. 3, 1998); *see also*, Trueposition, Inc. v. KSI, Inc., 2003 U.S. Dist. LEXIS 881, *4 (D. Del. Jan. 21, 2003)(noting that it is well settled that the federal rules intend a liberal pleading standard and that the federal courts may not impose a more demanding standard of pleading); France Telecom S.A. v. Novell, 2002 U.S. Dist. LEXIS 19967, *6-7 (D. Del. Oct. 17, 2002). Indeed, Rule 8(e) expressly requires that "each averment of a pleading shall be simple, concise, and direct." "It is not necessary for a defendant to use 'magic words' in asserting an affirmative defense, but the defense must simply be sufficient to put the court and plaintiff on notice of the issues involved." S.K.A. Steal Trading, Inc., at *2. Certainly, the

-17-

sentence "Defendant is not subject to suit" is sufficient to place Plaintiff on notice of Defendant's argument that it is not subject to a lawsuit. This is the precise phrase that is utilized in the numerous cases cited in Defendant's Opening Brief in support of its position.

Further, in his Answering Brief, Plaintiff completely fails to address the overwhelming case law holding that the Defendant, as a municipal police department, is not a separate juridical entity from the City of Wilmington, and, as such, it is not subject to suit. Instead, Plaintiff focuses on the fact that Defendant failed to include in its argument the Court's holding in Jamison v. Wilmington Police Department, 2005 U.S. Dist. LEXIS 3184 (D. Del. Mar. 3, 2005) (hereinafter "Jamison II"), asserting that "Defendant failed to cite the Jamison II (sic) through inadvertence or as a calculate (sic) tactical decision." Plaintiff then follows this statement with a confusing and nonsensical analysis of Jamison I and II.

Quite simply, Defendant did not discuss Jamison II because the Court did not resolve the matter based upon the argument that the Defendant is not subject to suit. Rather, the Court dismissed Plaintiff's case on the merits. "Since the second prong of the §1983 claim has not been satisfied, the court will grant defendant's motion for summary judgment without considering whether defendant police department is a person subject to suit under §1983."[6] Id. at *9 n. 2. Therefore, Jamison II is irrelevant to this issue.

III.    **GIVEN THAT PLAINTIFF FAILED TO ADDRESS DEFENDANT'S ARGUMENT THAT 1 WILM. C. §35-111 IS MERELY A POLICY STATEMENT AND DOES NOT CREATE A CIVIL CAUSE OF ACTION WHEREBY PLAINTIFF MAY SUE THE CITY OF WILMINGTON OR A DEPARTMENT WITHIN THE CITY, PLAINTIFF HAS ABANDONED HIS CAUSE OF ACTION UNDER §35-111.**

In its Opening Brief, Defendant argued that 1 Wilm. C. §35-111 does not create a civil cause of action whereby Plaintiff may sue the Defendant. Plaintiff completely failed to address this issue in its response to Defendant's Motion for Summary Judgment. As such, Plaintiff has abandoned and effectively waived its

---

[6] Plaintiff intentionally misstates the holding in Jamison II when he asserts that "Jamison II,... just like Jamison I, held that the Wilmington Police Department was suable (sic) under §1983 under certain circumstances." (Pl. Ans. Br. p. 22). The Court did not make any such holding, rather it specifically stated that it would not consider this argument in its decision.

claim under §35-111. Therefore, Defendant is entitled to judgment as a matter of law, and the Court must dismiss Count Four of the Complaint. Barshinger v. Buffington, 2004 U.S. Dist. LEXIS 28929, *29 (M.D. Pa. Jun. 10, 2004)("Defendants' motion for summary judgment and supporting brief plainly assert that plaintiffs' procedural due process claim 'fails as a matter of law'.... Nevertheless, plaintiffs refuse to present any counter-argument or otherwise acknowledge their claim in the brief in opposition. Abandonment of the position is tantamount to waiver of the claim.")

## CONCLUSION

Given the above, Plaintiff Kenneth Boyd has failed to adduce record evidence that he was subject to race based discrimination when he was not promoted to the rank of sergeant in April, 2004. As such, he cannot establish a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000(e) et seq.), 42 U.S.C. §1981, or a violation of State law, specifically a breach of the implied covenant of good faith and fair dealing found in employment contracts, and Wilmington City Charter, Article IV, 35-111. Therefore, Defendant is entitled to judgment as a matter of law.

/s/ RosamariaTassone
Rosamaria Tassone, Esquire (I.D. #3546)
Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant

-19-