MARK W. BARSHINGER and HENRIETTA D. BARSHINGER, Plaintiffsv. STEVEN R. BUFFINGTON, et al.,
Defendants
CIVIL ACTION NO. 1:03-CV-0506

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OFPENNSYLVANIA

2004 U.S. Dist. LEXIS 28929

June 10, 2004, Decided
June 10, 2004, Filed

SUBSEQUENT HISTORY: Affirmed by *Barshinger v. Buffington*, 131 Fed. Appx. 783, 2005 U.S. App. LEXIS 7482 (2005)

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiffs, a property owner and a vehicle owner, sued defendants, a city, city officials, and an automobile salver, under 42 U.S.C.S. § 1983, alleging illegal search and seizure and malicious prosecution under the Fourth Amendment, procedural and substantive due process violations, First Amendment retaliation, and equal protection violations. Defendants moved for summary judgment.

OVERVIEW: The property owner kept a number of inoperable cars, one of which was owned by the vehicle owner, inside a building and in the yard of the property. The officials recommended immediate removal of the cars due to the threat of gasoline combustion, and the salver removed and stored the cars. The property owner was cited on two occasions for building and fire code violations and was found guilty of several charges; the second set of convictions was reversed due to questions over current ownership of the property. The court found that the officials reasonably believed that an emergency situation existed, which precluded the owners' search and seizure claims. The malicious prosecution claims failed, as some citations did not terminate in the property owner's favor and there was no evidence of a lack of probable cause. There was insufficient evidence of retaliatory motive to support the retaliation claims. No substantive due process claim was cognizable, as other amendments covered the owners' claims, and the procedural due process claim was waived. There was no evidence that the owners were treated differently from others similarly situated, so the equal protection claim failed.

OUTCOME: Defendants' summary judgment motion was granted.

CORE TERMS: seizure, summary judgment, storage, deprivation, probable cause, combustible, notice, retaliation, gasoline, warrantless search, retaliatory, emergency, issuance, succeed, insufficient evidence, reasonableness, warrantless, municipal, unequal, flammable, immunity, towing, deprivation of liberty, malicious prosecution, constitutional right, color of state law, qualified immunity, improper motive, matter of law, favorable

LexisNexis(R) Headnotes

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN1] See U.S. Dist. Ct., M.D. Pa., R. 56.1.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN2] See U.S. Dist. Ct., M.D. Pa., R. 56.1.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN3] The statement of facts under U.S. Dist. Ct., M.D. Pa., R. 56.1 is not intended to serve as a legal brief.

Legal Ethics: Professional Conduct: Opposing Counsel & Parties
[HN4] Counsel have an ethical obligation to answer factual assertions directly and candidly. Pa. R. Prof. Conduct 3.1-3.4.

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN5] *Fed. R. Civ. P. 56* permits the entry of summary judgment against a party on an issue or a claim when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN6] Upon a summary judgment motion, although courts should consider the record in the light most favorable to the non-moving party, that party may not merely rest upon the allegations of the pleadings to defeat a properly supported motion for summary judgment but must present affidavits or other evidence setting forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(c)*. Summary judgment is appropriate when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871
[HN7] 42 U.S.C.S. § 1983 offers private citizens a means to redress violations of federal law by state officials.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871
[HN8] See 42 U.S.C.S. § 1983.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871
[HN9] 42 U.S.C.S. § 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors.

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871
[HN10] To establish a claim under 42 U.S.C.S. § 1983, a plaintiff must show a deprivation of a right secured by the Constitution and the laws of the United States by a person acting under color of state law. Satisfaction of these elements, however, does not guarantee recovery.

Constitutional Law: Civil Rights Enforcement: Immunity
[HN11] Certain officials, including police officers and other state actors who perform discretionary functions, are shielded from suit if their conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. This doctrine, known as "qualified immunity," provides not only a defense to liability, but immunity from suit. To gain the protection of the doctrine, a defendant must show that (1) the plaintiff has not demonstrated a deprivation of an actual constitutional right or (2) that the right at issue was not clearly established at the time of the alleged violation.

Civil Procedure: Summary Judgment
Constitutional Law: Civil Rights Enforcement: Immunity
[HN12] When immunity is raised at the summary judgment stage, a court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. Crucial to the resolution of the assertion of qualified immunity is a careful examination of the record to establish a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).

Constitutional Law: Search & Seizure: Warrants
[HN13] Issuance of a warrant is normally, but not necessarily, a constitutional prerequisite to a valid search or seizure of private property. The existence of a warrant is not the sine qua non for a reasonable search or seizure. The warrant requirement is relaxed when officials act to enforce regulatory provisions, designed to protect the public at large, rather than to advance a criminal prosecution. The reasonableness of a warrantless search will depend upon specific enforcement needs.

Constitutional Law: Search & Seizure: Exigent Circumstances
[HN14] Warrants are generally unnecessary to support a search or seizure in emergency situations, when the circumstances demand immediate action. So long as police act within the constitutional boundaries of "reasonableness," the warrantless search or seizure of private property to abate a clear emergency does not give rise to a Fourth Amendment violation. Reasonableness is still the ultimate standard under the Fourth Amendment.

Constitutional Law: Search & Seizure: Exigent Circumstances
[HN15] The United States Supreme Court has stated that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry. Officials can reasonably interpret this statement to permit them to search and seize private property when they have received a citizen complaint about the property, have attempted to notify the owner about the problems, and believe that further delay would create a public safety hazard.

Constitutional Law: Civil Rights Enforcement: Immunity
[HN16] For qualified immunity purposes, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Case 1:05-cv-00178-SLR   Document 52-2   Filed 04/24/2006   Page 3 of 11

Page 4
2004 U.S. Dist. LEXIS 28929, *

Constitutional Law: Search & Seizure: Scope of Protection
[HN17] Malicious prosecution claims under the Fourth Amendment require proof that a defendant initiated criminal proceedings against a plaintiff without probable cause and that those proceedings eventually terminated in the plaintiff's favor. In addition, the plaintiff must establish some "deprivation of liberty" consistent with the concept of "seizure." The latter element requires, at a minimum, that the plaintiff be obligated to appear in court by reason of the charges.

Constitutional Law: Search & Seizure: Probable Cause
Constitutional Law: Search & Seizure: Scope of Protection
[HN18] For purposes of a Fourth Amendment malicious prosecution claim, if a state court conviction has been overturned, the lower court's finding of probable cause is not dispositive of the existence of probable cause in federal court. Without proof that officials lacked probable cause or acted with improper motive, a claim of malicious prosecution cannot succeed.

Constitutional Law: Fundamental Freedoms
[HN19] Claims for retaliation require proof that a defendant's conduct impacted an interest guaranteed by the First Amendment and that impairment of that interest was a substantial or motivating factor in the defendant's conduct. Temporal proximity of the alleged interference to the exercise of the First Amendment interest is probative of the causation element of a retaliation claim. However, unless the timing of the alleged retaliatory action is "unusually suggestive" of retaliatory motive, additional evidence of causation is required to satisfy this element.

Constitutional Law: Substantive Due Process: Scope of Protection
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Protected Rights
[HN20] Claims of substantive due process violations are cognizable under 42 U.S.C.S. § 1983 only when another constitutional provision does not provide a more explicit source for the right asserted. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims. Substantive due process provides a cause of action when other constitutional amendments do not.

Constitutional Law: Substantive Due Process: Scope of Protection
[HN21] Where no "seizure" has occurred and the Fourth Amendment does not apply, a substantive due process claim can be advanced. A due process claim based on unlawful seizure or improper prosecution requires, at the least, proof that officials acted without probable cause or with malicious intent.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Constitutional Law: Substantive Due Process: Scope of Protection
[HN22] Unsupported allegations of improper intent cannot defeat summary judgment on a substantive due process claim based on unlawful seizure or improper prosecution.

Constitutional Law: Procedural Due Process: Scope of Protection
[HN23] The procedural aspect of the Due Process Clause of the Fourteenth Amendment mandates that individuals have a "meaningful" opportunity to contest significant deprivations of liberty or property. Advance notice is the constitutional norm, but post-deprivation notice meets due process standards if it guarantees protection against erroneous or arbitrary seizures. The adequacy of post-deprivation procedures depends on a balancing of the government interests involved and the risk of an erroneous deprivation caused by a lack of additional safeguards.

Civil Procedure: Summary Judgment
[HN24] For summary judgment purposes, abandonment of a position is tantamount to waiver of the claim.

Constitutional Law: Equal Protection: Scope of Protection
[HN25] Violations of the Equal Protection Clause of the Fourteenth Amendment need not be based on actions motivated by racial or class animus, but may be established by proof that officials intentionally treated some persons differently from others similarly situated and that there is no rational basis for the difference in treatment. Neither in terms nor in interpretation is the Equal Protection Clause limited to protecting members of identifiable groups. The size of the group targeted for discrimination is immaterial for equal protection analysis. Thus, a single individual subjected to unequal enforcement of the laws may maintain a 42 U.S.C.S. § 1983 claim as a "class of one."

COUNSEL: [*1] For Mark W. Barshinger, Henrietta D. Barshinger, Plaintiffs: Don Bailey, Bailey & Ostrowski, Harrisburg, PA.

For Steven R. Buffington, City of York, The, Defendants: Donald B. Hoyt, Blakey, Yost, Bupp & Rausch, LLP, York, PA; Frank J. Lavery, Jr., Robert G.

Case 1:05-cv-00178-SLR   Document 52-2   Filed 04/24/2006   Page 4 of 11

Page 5
2004 U.S. Dist. LEXIS 28929, *

Hanna, Jr., James D. Young, Lavery, Faherty, Young & Patterson, P.C., Harrisburg, PA.

For Francis N. Newhams, Defendant: Donald B. Hoyt, Blakey, Yost, Bupp & Rausch, LLP, York, PA; Robert G. Hanna, Jr., James D. Young, Lavery, Faherty, Young & Patterson, P.C., Harrisburg, PA.

For Darragh's Auto Body, Defendant: Larry C. Heim, Katherman, Heim & Perry, York, PA; James D. Young, Robert G. Hanna, Jr., Lavery, Faherty, Young & Patterson, P.C., Harrisburg, PA.

For Darragh's Auto Body, Cross Claimant: James D. Young, Robert G. Hanna, Jr., Lavery, Faherty, Young & Patterson, P.C., Harrisburg, PA.

For City of York, The, Cross Defendant: James D. Young, Lavery, Faherty, Young & Patterson, P.C., Harrisburg, PA.

JUDGES: CHRISTOPHER C. CONNER, United States District Judge.

OPINIONBY: CHRISTOPHER C. CONNER

OPINION: MEMORANDUM

Presently before the court is defendants' motion for summary judgment (Doc. 20) on the claims of[*2] plaintiffs, Mark W. Barshinger ("Barshinger") and Henrietta D. Barshinger ("Henrietta Barshinger"), under *42 U.S.C. § 1983* for the allegedly unlawful seizure of plaintiffs' vehicles and retaliatory issuance of multiple citations for municipal code violations. Defendants assert that plaintiffs have presented insufficient evidence of a deprivation of constitutional rights. For the reasons that follow, the court agrees and will grant the motion for summary judgment (Doc. 20).

I. Statement of Facts n1



N1 In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiffs, as the non-moving party. See infra Part II. Constructing the facts was rendered more difficult by the absence of citations to the record in plaintiffs' responsive statement of material facts. See *L.R. 56.1* [HN1] ("Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."). The court has engaged in an independent review of the record, but, where no evidence apparently supports plaintiffs' denial of a fact alleged in defendants' properly supported statement, the court has accepted the fact as true. See id. [HN2] ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); see also infra Part II.

Indeed, several paragraphs of the responsive statement deny assertions that are clearly true based on the evidence presented to the court. (See, e.g., Doc. 21 PP11, 28-29; Doc. 33 PP11, 28-29). Many of these denials challenge not the factual accuracy of the averments but their relevance. (See, e.g., Doc. 33 PP26-27). This is an improper use of [HN3] the statement of facts, which is not intended to serve as a legal brief. See *L.R. 56.1*. The court reminds [HN4] counsel of the ethical obligation to answer factual assertions directly and candidly. See PA. R. PROF'L CONDUCT R. 3.1-3.4; see also *L.R. 83.23.2*.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*3]

On October 4, 2001, one of Barshinger's neighbors "flagged down" a building code enforcement officer of defendant, the City of York ("York"), who was driving through the area. (Doc. 21 PP3, 36; Doc. 24, Ex. A at 21-22, Ex. B at 50-52; Doc. 33 PP3, 36). The neighbor informed the official of concerns over the condition of a building at 467 West Hope Avenue, one of a series of row-houses lining the street. (Doc. 21 PP3, 36; Doc. 24, Ex. A at 21-22, Ex. B at 50-52; Doc. 33 PP3, 36). The building was owned by Barshinger, who used it for storage. (Doc. 21 P79; Doc. 33 P79). An adjacent building, at 465 West Hope Avenue, was also owned by Barshinger and used as his residence. (Doc. 21 P79; Doc. 24, Ex. D at 18-20; Doc. 33 P79).

The building at 467 West Hope Avenue had no rear wall and the second floor was collapsing. (Doc. 21 P4; Doc. 24, Ex. A at 32-34, Ex. D at 67, 69, 78, 90-102, Ex. E at 24-26; Doc. 33 P4). Inside the building, on the first and basement floors, were six automobiles. (Doc. 24, Ex. C at 24-25, Ex. D at 65-74, 89-90). Various other items, including gasoline cans, littered the building and premises. (Doc. 24, Ex. D at 65-74, 89-90). The cars were neither registered nor[*4] inspected, and were not

Case 1:05-cv-00178-SLR    Document 52-2    Filed 04/24/2006    Page 5 of 11

Page 6
2004 U.S. Dist. LEXIS 28929, *

in "drivable" condition. (Doc. 24, Ex. C at 24-25, Ex. D at 65-74, 89-90). Several other automobiles were kept in the yard of the property, which was surrounded by a six-foot fence. (Doc. 24, Ex. C at 24-25, Ex. D at 65-74, 89-90). Municipal ordinances prohibited the maintenance of more than two unregistered or uninspected cars on private property, and the structural problems of the building posed a likely violation of the building code. (Doc. 21 PP8-9, 42; Doc. 24, Ex. A at 38-39, Ex. B at 70-75, Ex. D at 90-102; Doc. 33 PP8-9, 42).

The code enforcement officer called defendant, Francis N. Newhams ("Newhams"), who, as the Director of Bureau of Permits and Health Licensing for York, was responsible for enforcement of the municipal building code. (Doc. 21 PP2-3, 36; Doc. 24, Ex. A at 21-22, Ex. B at 54; Doc. 33 PP2-3, 36). Newhams was familiar with the building at 467 West Hope Avenue. (Doc. 21 P8; Doc. 24, Ex. A at 32-36; Doc. 33 P8). The building had serious structural problems and had previously been the subject of investigations by Newhams and other officials. (Doc. 21 PP8-9; Doc. 24, Ex. A at 32-36; Doc. 33 PP8-9). In March 2001, a site investigation commissioned[*5] by Newhams revealed that the roof was "partially collapsed," the "rear wall of the home [was] completely gone," the walls were "deteriorated," and the building was "in danger of collapse at any time." (Doc. 21 PP8-9; Doc. 24, Ex. A at 38-39, Ex. B at 74-75, Ex. D at 90-102; Doc. 33 PP8-9). The report of these findings was sent to Barshinger in 2001, with a notice that the building must be removed. (Doc. 21 PP8-9; Doc. 24, Ex. A at 32-33, 38-39, Ex. B at 64-66; Doc. 33 PP8-9). Barshinger did not receive the report or the accompanying notice, although he recognized that the building should be demolished. (Doc. 21 P4; Doc. 24, Ex. A at 32-34, Ex. D at 67, 69, 78, 90-102, Ex. E at 24-26; Doc. 33 P4; Doc. 36, Ex. B PP1, 4).

When Newhams arrived at West Hope Avenue on October 4, 2001, and saw the condition of the building, which had deteriorated even further since the prior site investigation, he called the York Fire Prevention Bureau and Mayor's Office. (Doc. 21 P6; Doc. 33 P6). Soon thereafter, the mayor and defendant, Steven R. Buffington ("Buffington"), the Assistant Fire Chief, joined Newhams on the scene. (Doc. 21 P6; Doc. 24, Ex. B at 60-73; Doc. 33 P6). Buffington was concerned[*6] over the presence of flammable materials, particularly gasoline, in the building. (Doc. 21 PP39-41; Doc. 24, Ex. B at 60-73; Doc. 33 PP39-41). He contacted an administrative aide, who attempted to reach Barshinger by telephone. (Doc. 21 PP37, 38; Doc. 24, Ex. B at 58-59; Doc. 33 PP37, 38). When this proved unsuccessful, Buffington knocked on the front door of 465 West Hope Avenue, Barshinger's home address, "trying to get somebody's attention." (Doc. 21 PP13-14, 38; Doc. 24, Ex. A at 40-47, Ex. B at 58-59; Doc. 33 PP13-14, 38). He could not elicit a response. (Doc. 24, Ex. B at 58-59).

Buffington and Newhams expressed their concerns to the mayor. The building was likely to collapse, and could threaten the stability of neighboring structures. (Doc. 21 PP8-9; Doc. 24, Ex. A at 38-39, Ex. B at 74-75, Ex. D at 90-102; Doc. 33 PP8-9). The gasoline containers and tanks, both in and out of the cars, presented a serious threat of explosion, particularly when considered with the likelihood that homeless individuals and others may enter the premises and start fires for warmth. (Doc. 21 PP16, 39-41; Doc. 24, Ex. A at 43-44, Ex. B at 60-73; Doc. 33 PP16, 39-41). Both officials believed that the[*7] conditions presented a "situation of imminent danger." (Doc. 21 P37; Doc. 33 P37; see also Doc. 21 PP15-17; Doc. 24. Ex. A at 41-47; Doc. 24, Ex. B at 60-73; Doc. 33 PP15-17). In response, the mayor directed that the vehicles be removed immediately. (Doc. 21 P17; Doc. 24, Ex. A at 45-46, Ex. B at 70-79; Doc. 33 P17).

City public works officials removed the fence surrounding the property at 467 West Hope Avenue and police marked the vehicles as impounded. (Doc. 21 P18; Doc. 24, Ex. C at 41-45; Doc. 33 P18). City employees, using city equipment, extracted the vehicles from the yard and from the basement and first floors of the building. (Doc. 21 PP18, 70-71; Doc. 24, Ex. C at 41-45, 51-77; Doc. 33 PP18, 70-71). Most of the vehicles were Volkswagens, but one was a 1971 Camaro, of greater value than the others. (Doc. 24, Ex. C at 24-25, Ex. D at 65-74, 89-90; Doc. 36, Ex. B P4). The automobiles were loaded onto trucks owned by defendant, Darrah's Automotive and Recycling Incorporated ("Darrah's"), the licensed automobile salver for York. (Doc. 21 PP20, 70; Doc. 24, Ex. A at 46-48, Ex. C at 15-17, 41-45; Doc. 33 PP20, 70). After all the vehicles were removed from the property, city[*8] officials replaced the fence and left the scene. (Doc. 24, Ex. D at 100-01).

Barshinger returned to his residence, at 465 West Hope Avenue, at about 5:00 p.m. on October 4, 2001, several hours after the aforementioned events. (Doc. 24, Ex. D at 102-05). Barshinger restored older automobiles as a "hobby" and had placed the cars in the building approximately two weeks before October 1, 2001. (Doc. 21 P81; Doc. 24, Ex. E at 25-27; Doc. 33 P81). When he discovered that they were missing, he contacted the municipal police department. (Doc. 24, Ex. D at 102-05). City employees notified Barshinger that the cars had been impounded and were stored at Darrah's. (Doc. 24, Ex. D at 102-05).

Barshinger went to Darrah's on October 5, 2001, to retrieve his cars. (Doc. 21 P85; Doc. 24, Ex. D at 102-05; Doc. 33 P85). An employee presented Barshinger

Case 1:05-cv-00178-SLR    Document 52-2    Filed 04/24/2006    Page 6 of 11

Page 7
2004 U.S. Dist. LEXIS 28929, *

with a bill for $950.00, which included $140.00 for labor, a $75.00 per car impound fee, and a $15.00 per day storage fee. (Doc. 21 P85; Doc. 24, Ex. D at 102-05; Doc. 33 P85). Barshinger refused to pay the $950.00, and left the premises. (Doc. 21 P74; Doc 24, Ex. C at 88-92, Ex. D at 102-05, 113; Doc. 33 P74).

On March 18, 2002, Barshinger returned[*9] to Darrah's and successfully negotiated for the return of "all of the cars" for $1,000.00, despite the storage fees that had accrued since October 2001. (Doc. 24, Ex. D at 117-18). On that day, Barshinger transported all of the Volkswagens from the company's impound lot. (Doc. 24, Ex. D at 117-18). However, Darrah's refused to release the Camaro when Barshinger returned two days later. (Doc. 24, Ex. D at 117-18). Darrah's employees told Barshinger that the discounted amount of $1,000.00 included only the Volkswagens, not the Camaro. (Doc. 24, Ex. D at 117-18). The bill for the return of the Camaro was $2,565.00, representing the $75.00 impound fee with storage for 166 days at $15.00 per day. (Doc. 21 P75; Doc. 24, Ex. C at 22, 35, 100-05; Ex. D at 115-18; Doc. 33 P75; Doc. 36 P6). Barshinger refused to pay. (Doc. 21 P75; Doc. 24, Ex. C at 22, 35, 100-05; Ex. D at 115-18; Doc. 33 P75; Doc. 36 P6).

In November 2002, Darrah's submitted paperwork to the state transportation authority to have the Camaro declared abandoned. (Doc. 21 P76; Doc. 33 P76). On December 15, 2002, a notice was sent to Henrietta Barshinger, the owner of record of the car, from the Pennsylvania Department of[*10] Transportation. (Doc. 24, Ex. C at 124). It informed her that failure to reclaim the vehicle, by payment of "all towing and storage charges," within thirty days would be deemed consent "to the destruction, sale[,] or other disposition of the vehicle, free and clear of all liens and claims." (Doc. 24, Ex. C at 124). The notice was sent to a former address of Henrietta Barshinger, and she did not receive it. (Doc. 24, Ex. E at 68-71). Neither Barshinger nor his mother reclaimed the vehicle within thirty days or initiated other legal proceedings with respect to the vehicle. (Doc. 21 P103; Doc. 33 P103). On January 16, 2002, Darrah's received title to the vehicle, which was then sold for approximately $800.00. (Doc 21 P79; Doc. 24, Ex. C at 22-29, 140; Doc. 33 P79).

Several days after the incident of October 4, 2001, Newhams and Buffington each issued to Barshinger several citations for various violations of the municipal building and fire codes. (Doc. 21 PP23, 50; Doc. 33 PP23, 50; Doc. 36 P7). The charges included, inter alia, storage of litter and combustible materials creating a public safety hazard, storage of combustible materials within fifteen feet of an adjacent building, [*11] creation of a hazardous condition likely to cause fire, and storage of an excessive amount of combustible materials on the premises. (Doc. 21 P50; Doc. 24, Ex. B at 116-18, 139, 175-82; Doc. 33 P50). Barshinger was found guilty of several charges by a district justice, and these convictions were upheld on appeal. (Doc. 21 PP53, 88; Doc. 24, Ex. D at 192-94; Doc. 33 PP53, 88).

On May 1, 2002, Buffington issued additional citations to Barshinger for violations of the municipal fire code. (Doc. 21 PP55-59; Doc. 24, Ex. B at 132-43; Doc. 33 PP55-59; Doc. 36 P9). The charges mirrored those levied against Barshinger in October 2001, including storage of litter and combustible materials creating a public safety hazard, storage of combustible materials within fifteen feet of an adjacent building, creation of a hazardous condition likely to cause fire, and storage of an excessive amount of combustible materials on the premises. (Doc. 24, Ex. B at 139). A certified letter was sent to Barshinger, explaining the basis of the citations and stating that he must remove combustible trash and debris from the premises. (Doc. 24, Ex. D at 198-99). Barshinger called Buffington and stated that, because[*12] neighbors and others had placed the debris in his yard without permission, he should not be responsible for cleaning the premises. (Doc. 24, Ex. D at 200). Buffington responded that he would issue more citations under the fire code, which provides that each day on which a violation persists may be the subject of a separate citation. (Doc. 24, Ex. B at 141, Ex. D at 200). Accordingly, additional citations for the same offenses were issued on May 7, 8, and 13, 2002. (Doc. 21 PP55-59; Doc. 24, Ex. B at 132-43; Doc. 33 PP55-59; Doc. 36 P9).

After a trial before a district justice, Barshinger was found guilty of several charges. (Doc. 21 P56; Doc. 24, Ex. B at 132-43; Doc. 33 P56; Doc. 36 P9). On appeal to the court of common pleas, Barshinger presented a letter dated March 13, 2002, from the Tax Claim Bureau of York County indicating that the property at 467 West Hope Avenue had been sold "for the collection of delinquent taxes incurred in 1999." (Doc. 36, Ex. D; Doc. 36 P9). Barshinger contended that he was not liable for any violations because he did not own the property. (Doc. 24, Ex. D at 209). The court dismissed all of the charges based on this uncertainty of ownership. (Doc. 21[*13] P91; Doc. 24, Ex. B at 170-74, Ex. D at 209-12; Doc. 33 P91; Doc. 36 P10). The court did not rule on the merits of the charges against Barshinger. (Doc. 24, Ex. B at 170-74, Ex. D at 209-12).

Plaintiffs filed the complaint sub judice in March 2003, asserting claims against Buffington, Newhams, Darrah's, and York under 42 U.S.C. § 1983. (Doc. 1). Plaintiffs allege that the search of their property and seizure of their vehicles violated their right to be free from

Case 1:05-cv-00178-SLR   Document 52-2   Filed 04/24/2006   Page 7 of 11

Page 8
2004 U.S. Dist. LEXIS 28929, *

warrantless searches and seizures under the *Fourth Amendment* and constituted a deprivation of their due process rights under the *Fourteenth Amendment.* They also assert that the issuance of multiple citations against Barshinger constituted malicious prosecution under the *Fourth Amendment*, unlawful retaliation under the *First Amendment*, a violation of due process under the *Fourteenth Amendment*, and unequal enforcement under the *Fourteenth Amendment*. n2 The complaint seeks damages for "humiliation, pain and suffering, [and] emotional distress." (Doc. 1).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 Harassment charges were also apparently filed against Barshinger for his subsequent contacts with Darrah's. (Doc. 24, Ex. D at 181-83). Plaintiffs do not assert these charges as a basis for any claims. (See Doc. 1).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*14]

II. Standard of Review

[HN5] *Federal Rule of Civil Procedure 56* permits the entry of summary judgment against a party on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *FED. R. CIV. P. 56(c)*; see also *Saldana v. Kmart Corp., 260 F.3d 228, 231-32, 43 V.I. 361 (3d Cir. 2001)*. [HN6] Although courts should consider the record in the light most favorable to the non-moving party, that party may not merely rest upon the allegations of the pleadings to defeat a properly supported motion for summary judgment but must present affidavits or other evidence "setting forth specific facts showing that there is a genuine issue for trial." *FED. R. CIV. P. 56(c)*; *Schnall v. Amboy Nat'l Bank, 279 F.3d 205, 209 (3d Cir. 2002)*. Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of[*15] an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*.

III. Discussion

[HN7] *Section 1983 of Title 42 of the United States Code* offers private citizens a means to redress violations of federal law by state officials. See *42 U.S.C. § 1983*. The statute provides, in pertinent part, as follows:

[HN8] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. [HN9] *Section 1983* is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. *Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)*. [HN10] To establish a claim under this section, [*16] the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." n3 Id. (quoting *Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)*).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 Because the motion for summary judgment may be resolved on other grounds, the court will not address whether Darrah's, a private towing company, was "acting under color of state law" during the events at issue. But see *Mays v. Scranton City Police Dep't, 503 F. Supp. 1255, 1263-64 (M.D. Pa. 1980)* (holding that private towing company acting pursuant to law enforcement directives was "acting under color of state law" for purposes of *§ 1983*). It may be noted that, although Darrah's state-actor status was argued in both parties' briefs, Mays was not cited.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

Case 1:05-cv-00178-SLR   Document 52-2   Filed 04/24/2006   Page 8 of 11

Page 9
2004 U.S. Dist. LEXIS 28929, *

Satisfaction of these elements, however, does not guarantee recovery. [HN11] Certain officials, including police officers and other state actors who perform "discretionary functions, [*17] " are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Saucier v. Katz, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999).* This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit." *Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).* To gain the protection of the doctrine, the defendant must show that (1) the plaintiff has not demonstrated "a deprivation of an actual constitutional right" or (2) that the right at issue was not "clearly established at the time of the alleged violation." *Conn v. Gabbert, 526 U.S. 286, 290, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999);* see *Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004).*

[HN12] When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. See *Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000);*[*18] *Russoli v. Salisbury Township, 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000);* see also *Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996)* ("Crucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)."). Proceeding under this framework, the court will examine each claim to determine, first, whether plaintiffs have offered sufficient evidence of a deprivation of a constitutional right and, second, whether the right at issue was clearly established.

A. Unlawful Search and Seizure

[HN13] Issuance of a warrant is normally, but not necessarily, a constitutional prerequisite to a valid search or seizure of private property. *New York v. Burger, 482 U.S. 691, 699-704, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987);* see also *Freeman v. City of Dallas, 242 F.3d 642, 648 (5th Cir. 2001)* ("The existence of a warrant [is not the] sine qua non for a reasonable search or seizure."). The warrant requirement is relaxed when officials act to enforce regulatory[*19] provisions, designed to protect the public at large, rather than to advance a criminal prosecution. *Camara v. Mun. Court, 387 U.S. 523, 540-41, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967);* see also *Marshall v. Barlow's, Inc., 436 U.S. 307, 321, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978)* ("The reasonableness of a warrantless search . . . will depend upon . . . specific enforcement needs . . . ."). [HN14] Warrants are generally unnecessary to support a search or seizure in emergency situations, when the circumstances demand immediate action. *Camara, 387 U.S. at 540-41; Showers v. Spangler, 182 F.3d 165, 172-73 (3d Cir. 1999).* So long as police act within the constitutional boundaries of "reasonableness," the warrantless search or seizure of private property to abate a clear emergency does not give rise to a *Fourth Amendment* violation. *Camara, 387 U.S. at 540-41;* see also *Soldal v. Cook County, 506 U.S. 56, 71, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992)* ("'Reasonableness is still the ultimate standard' under the *Fourth Amendment* . . . .") (quoting *Camara, 387 U.S. at 539*).

Plaintiffs have offered insufficient evidence to establish a violation of the *Fourth Amendment*. Officials viewing[*20] the property at 467 West Hope Avenue--a structurally unsound building littered with debris, older cars, and gasoline cans--reasonably believed that an emergency situation was presented. They attempted to contact Barshinger, but, when they could not, they took actions to remedy the situation. No evidence suggests that officials acted unreasonably or with "pretext" in assuming that the gasoline cans and older cars contained flammable liquids. *Burger, 482 U.S. at 716 n.27* (stating that evidence of "pretext" may establish unreasonableness), cited in *Showers, 182 F.3d at 172-73.* To the contrary, plaintiffs admit that the situation was one of "imminent danger." (Doc. 21 P37; Doc. 33 P37). City officials acted within the boundaries of local ordinances, which allowed them to take immediate action to remedy emergency situations involving the possibility of fire, and within the boundaries of "reasonableness" of the *Fourth Amendment*. Plaintiff's unlawful search and seizure claim cannot succeed.

Moreover, even if the warrantless search did violate the *Fourth Amendment*, the officials are entitled to qualified immunity. Caselaw is riddled with questions regarding[*21] the propriety of warrantless administrative searches. See *Grimm v. Sweeney, 249 F. Supp. 2d 571, 618-20 (E.D. Pa. 2003)* (finding right to refuse consent to warrantless administrative searches not to be "clearly established"); see also *Burger, 482 U.S. at 699-704* (approving warrantless search of "closely regulated" business); *Showers, 182 F.3d at 172-73* (suggesting warrantless search in emergency is constitutional but finding no justifiable emergency). Indeed, [HN15] the leading Supreme Court case on the subject states that "warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for

Case 1:05-cv-00178-SLR   Document 52-2   Filed 04/24/2006   Page 9 of 11

Page 10
2004 U.S. Dist. LEXIS 28929, *

securing immediate entry." *Camara, 387 U.S. at 539-40.* Officials could reasonably interpret this statement to permit them to search and seize private property when they had received a citizen complaint about the property, had attempted to notify the owner about the problems, and believed that further delay would create a public safety hazard. See *Saucier, 533 U.S. at 200-01* [HN16] ("The relevant, dispositive inquiry in determining whether a right is [*22]clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Qualified immunity applies with respect to the *Fourth Amendment* claims relating to unlawful search and seizure of the property.

B. Malicious Prosecution

[HN17] Malicious prosecution claims under the *Fourth Amendment* require proof that the defendant initiated criminal proceedings against the plaintiff without probable cause and that those proceedings eventually terminated in the plaintiff's favor. *Donahue v. Gavin, 280 F.3d 371, 379-81 (3d Cir. 2002).* In addition, the plaintiff must establish some "deprivation of liberty" consistent with the concept of "seizure." Id.; *Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998); Palma v. Atlantic County, 53 F. Supp. 2d 743, 758-59 (D.N.J. 1999).* The latter element requires, at a minimum, that the plaintiff be obligated to appear in court by reason of the charges. *Roskos v. Sugarloaf Township, 295 F. Supp. 2d 480, 484-87 (M.D. Pa. 2003).*

None of the multiple charges filed against Barshinger can serve as a basis for a successful[*23] malicious prosecution claim. With respect to the citations issued in October 2001, Barshinger was found guilty of several of the charges, meaning that the proceedings did not terminate in his favor. And, because he was already obligated to appear in court to answer these charges, he incurred no independent deprivation of liberty--no "seizure"--by virtue of having to appear at the same time to defend against the others. See *Donahue, 280 F.3d at 379-81.* All of the October 2001 citations either terminated unfavorably to Barshinger or did not result in an independent deprivation of liberty. Accordingly, these charges cannot support a malicious prosecution claim.

Similarly, Barshinger has presented no evidence that the May 2002 citations suffered from a lack of probable cause. Barshinger and others testified that the property was in a continuing state of disrepair, with gasoline cans and other apparently flammable materials on the premises. These conditions clearly supported a finding of probable cause to issue citations for violations of the fire code. Moreover, that Barshinger was convicted by a district justice on several of the charges at least suggests the existence[*24] of probable cause, even if the convictions were later overturned based on questions over the ownership of the property. See *Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998)* (stating that, [HN18] if the state court conviction has been overturned, lower court's finding of probable cause is not dispositive of existence of probable cause in federal court). Without proof that officials lacked probable cause or acted with improper motive, the claims of malicious prosecution cannot succeed.

C. Retaliation

[HN19] Claims for retaliation require proof that the defendant's conduct impacted an interest guaranteed by the *First Amendment* and that impairment of that interest was a "substantial or motivating factor" in the defendant's conduct. *Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003); Feldman v. Phila. Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1994).* Temporal proximity of the alleged interference to the exercise of the *First Amendment* interest is probative of the causation element of a retaliation claim. *Marasco, 318 F.3d at 512.* However, unless the "timing of the alleged retaliatory action [is] 'unusually[*25] suggestive' of retaliatory motive," additional evidence of causation is required to satisfy this element. Id. (quoting *Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).*

Plaintiffs have presented insufficient evidence of retaliatory motive to support a finding of causation. The challenged citations were issued in mid-October 2001 and mid-May 2002, soon after officials viewed the conditions of the property. Barshinger was, in fact, subsequently convicted of several of the charges. Although Barshinger complained to city officials before many of the citations were issued, this alone does not support a claim of improper motive. The charges were filed soon after the violations occurred, and the fact that Barshinger levied complaints in the interim does not transform valid enforcement into unconstitutional retaliation.

Only one statement in the record, offered by Barshinger during a deposition, arguably suggests a connection between his complaints and the subsequent charges. After receiving the first set of citations on May 2, 2002, Barshinger called Buffington and stated that, because other individuals were throwing items on his property, he should not[*26] be required to clean the premises to remedy the resulting code violations. According to Barshinger, Buffington responded: "I'm going to file more charges against you." (Doc. 24, Ex. D at 200). Rather than supporting an inference of improper motive, this statement represents the reasonable reaction of a city official to an individual, previously cited for code

Case 1:05-cv-00178-SLR   Document 52-2   Filed 04/24/2006   Page 10 of 11

Page 11
2004 U.S. Dist. LEXIS 28929, *

violations, who refuses to take corrective action. Buffington simply acted within his municipal authority to charge ongoing violations of the fire code. Nothing suggests that he acted to retaliate against Barshinger for his complaints or that the asserted violations were mere "pretext" for the decision. See *Anderson v. Davila, 125 F.3d 148, 161-62, 37 V.I. 496 (3d Cir. 1997)*, cited in *Marasco, 318 F.3d at 512*. Without evidence of causation, plaintiffs' retaliation claims cannot proceed.

D. Substantive Due Process

[HN20] Claims of substantive due process violations are cognizable under *§ 1983* only when another constitutional provision does not provide a more explicit source for the right asserted. *Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)* (plurality opinion) ("Where a particular Amendment [*27] provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting *Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)*) (internal quotation marks omitted). Substantive due process provides a cause of action when other constitutional amendments do not. *Lanier, 520 U.S. 259 at 272, 117 S. Ct. 1219, 137 L. Ed. 2d 432 n.7*; *Graham, 490 U.S. at 395*.

Plaintiffs' argument that the allegedly unlawful seizure and improper prosecutions fall within the substantive due process rubric cannot succeed. Not only do the Fourth and *First Amendments* provide bases for plaintiffs' causes of action; plaintiffs have actually invoked those protections in this case. Resort to substantive due process is unnecessary, and these claims cannot proceed.

Moreover, assuming arguendo that a substantive due process claim was cognizable in these circumstances, see *County of Sacramento v. Lewis, 523 U.S. 833, 844-45, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)* (holding that, [HN21] where no "seizure" occurred and *Fourth Amendment* did not apply, substantive due [*28]process claim could be advanced), Barshinger has failed to offer sufficient evidence to support such a cause of action. A due process claim based on unlawful seizure or improper prosecution requires, at the least, proof that officials acted without probable cause or with malicious intent. See id. Plaintiffs have presented no such evidence. Potentially flammable materials on the property and the unstable condition of the building created an emergency situation justifying the search and seizure and the issuance of citations against Barshinger. The continued presence of these materials supported the subsequent citations in May 2002. No evidence suggests that defendants acted without probable cause, with malice, or with retaliatory purpose. [HN22] Unsupported allegations of improper intent cannot defeat summary judgment. See *Marasco, 318 F.3d at 512*. Judgment as a matter of law is warranted as to plaintiffs' claims of substantive due process violations.

E. Procedural Due Process

[HN23] The procedural aspect of the *Due Process Clause of the Fourteenth Amendment* mandates that individuals have a "meaningful" opportunity to contest significant deprivations of liberty or[*29] property. *Abbott v. Latshaw, 164 F.3d 141, 146-47 (3d Cir. 1998)*. Advance notice is the constitutional norm, but post-deprivation notice meets due process standards if it "guarantee[s] protection against erroneous or arbitrary seizures." Id. The adequacy of post-deprivation procedures depends on a balancing of the government interests involved and the risk of an erroneous deprivation caused by a lack of additional safeguards. *Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)*, quoted with approval in *City of Los Angeles v. David, 538 U.S. 715, 716, 123 S. Ct. 1895, 155 L. Ed. 2d 946 (2003)* (per curiam).

Because plaintiffs have waived their procedural due process claim, the court need not address its merit. Defendants' motion for summary judgment and supporting brief plainly assert that plaintiffs' procedural due process claim " fails as a matter of law." (Doc. 22 at 12). Nevertheless, plaintiffs refuse to present any counter-argument or otherwise to acknowledge their claim in the brief in opposition. [HN24] Abandonment of the position is tantamount to waiver of the claim. *D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999)*. Summary judgment [*30] is appropriate. n4

------------------Footnotes---------------------

n4 Even absent waiver, plaintiffs' procedural due process claim would not succeed. Pennsylvania law provides that all municipal agencies must provide a hearing whenever a municipality renders a final decision affecting property rights, see *2 PA. CONS. STAT. § 553*; *City of Phila. Bd. of License & Inspection Review v. 2600 Lewis, Inc., 661 A.2d 20, 22 (Pa. Commw. Ct. 1995)*, and offers the opportunity for a hearing before a vehicle is finally declared abandoned, see *75 PA. CONS. STAT. § 7305(b)(5)* (stating that owner has right to hearing within thirty days of notice of abandoned vehicle); cf.

*David*, 538 U.S. at 716 (stating that towing of vehicles without prior notice to owners did not violate procedural due process when hearing on validity of action was provided within thirty days). The precise nature of any such proceedings offered by York is unclear from the record, but plaintiffs admitted that the municipal code provided them with a right to a hearing on official actions (Doc. 21 P34; Doc. 33 P34), and no evidence suggests that such procedures were inadequate (See Doc. 24, Ex. E at 73-75).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

[*31]

F. Unequal Enforcement

[HN25] Violations of the *Equal Protection Clause of the Fourteenth Amendment* need not be based on actions motivated by racial or class animus, but may be established by proof that officials "intentionally treated [some persons] differently from others similarly situated" and "that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)* (per curiam); accord *Snowden v. Hughes, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497 (1944)*; cf. *Esmail v. Macrane, 53 F.3d 176, 179-80 (7th Cir. 1995)* ("Neither in terms nor in interpretation is the [*Equal Protection Clause*] limited to protecting members of identifiable groups."). The size of the group targeted for discrimination is "immaterial for equal protection analysis." *Olech, 528 U.S. at 564 & n.*. Thus, a single individual subjected to unequal enforcement of the laws may maintain a *§ 1983* claim as a "class of one." *Id. at 564*. See generally Hortensia S. Carreira, Protecting the "Class of One," *36 REAL PROP. PROB. & TR. J. 331 (2001)*.

Plaintiffs have presented insufficient[*32] evidence that they were treated differently than others similarly situated. Defendants testified that their actions with respect to Barshinger and plaintiffs' property were consistent with normal enforcement practices, both with respect to warrantless seizures and the issuance of citations. Barshinger offers no evidence to suggest that the actions against him were "unequal" when compared to others. In the absence of such evidence, the claim of unequal enforcement cannot succeed.

IV. Conclusion

Plaintiffs have presented insufficient evidence to support their claims under *42 U.S.C. § 1983*. Thus, summary judgment will be granted in favor of defendants with respect to all of the claims.

An appropriate order will issue.

CHRISTOPHER C. CONNER

United States District Judge

Dated: June 10, 2004

ORDER

AND NOW, this 10th day of June, 2004, upon consideration of defendants' motion for summary judgment (Doc. 20), and for reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 20) is GRANTED. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiffs and to CLOSE this[*33] file.

CHRISTOPHER C. CONNER

United States District Judge