DAVID L. JONES, Plaintiff, v. CITY OF WILMINGTON, etal., Defendants.
Civil Action No. 00-952-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 12806

June 14, 2004, Decided

PRIOR HISTORY: *Jones v. City of Wilmington, 299 F. Supp. 2d 380, 2004 U.S. Dist. LEXIS 288 (D. Del., 2004)*

DISPOSITION: [*1] Defendants' motion for summary judgment granted.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff individual sued defendant city, police department, and police officers pursuant to 42 U.S.C.S. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., for, inter alia, racial discrimination. The city, department, and officers moved for summary judgment on the racial discrimination claim.

OVERVIEW: The individual argued that his disciplinary proceeding, assignment to the camera room, and lack of training opportunities showed that he was treated more harshly than white and Hispanic police officers. The eight examples in the record did not show that he was similarly situated as he had been charged with multiple counts of dishonesty, while the officers referenced in the examples were only charged with one dishonesty count. Moreover, any difference in the charging decisions was at least plausibly connected to the specific facts of each case as it was to the race of the officers involved. Thus, those cases did not support a conclusion that the individual's level of multiple dishonesty charges was out of keeping with the department's charging practices. The individual also failed to rebut the assertion that the decisionmakers in several of the examples were not the same as in his case. The claim related to the camera room assignment failed as the unrebutted evidence showed that it was not an adverse employment action. The lack of training opportunities claim also failed as the individual failed to offer any evidence that any request for a training opportunity had been denied.

OUTCOME: The motion for summary judgment was granted.

CORE TERMS: dishonesty, similarly situated, police officer, camera, prima facie case, training, racial discrimination, summary judgment, suspension, disciplinary, supervisor, white male, non-moving, known criminals, associating, treated differently, police officers, protected class, inaccurate, reporting, favorably, prostitutes, off-duty, sick, disparate treatment, race discrimination, employment decision, retaliation, questioned, scheduled

LexisNexis(R) Headnotes

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN1] Pursuant to *Fed. R. Civ. P. 56(c)*, a party is entitled to summary judgment if a court determines from its examination of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. However, a court should not make credibility determinations or weigh the evidence.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN2] To defeat a motion for summary judgment, *Fed. R. Civ. P. 56(c)* requires the non-moving party to do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment.

2004 U.S. Dist. LEXIS 12806, *

Labor & Employment Law: Discrimination: Disparate Treatment: Burden Shifting Analysis
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Protected Rights
[HN3] There is a three-step burden shifting analysis for racial discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. and 42 U.S.C.S. § 1983. First, the plaintiff has the initial burden of establishing a prima facie case of racial discrimination. This is done by showing that the plaintiff: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse job action; and (4) was treated differently than employees who are not members of his protected class. Whether the plaintiff has established a prima facie case of discrimination is a question of law for the court.

Labor & Employment Law: Discrimination: Disparate Treatment: Burden Shifting Analysis
Labor & Employment Law: Discrimination: Racial Discrimination: Coverage & Definitions
[HN4] If a plaintiff establishes a prima facie case of racial discrimination, the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the employment decision. The employer satisfies its burden of production by introducing evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. If the employer meets its relatively light burden by articulating a legitimate reason for the employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the nondiscriminatory reason offered by the employer was a mere pretext for racial discrimination.

Labor & Employment Law: Discrimination: Racial Discrimination: Coverage & Definitions
[HN5] The United States Court of Appeals for the Third Circuit states that a disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of race.

Labor & Employment Law: Discrimination: Disparate Treatment: Burden Shifting Analysis
[HN6] In order to be similarly situated for purposes of an employment discrimination claim, the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Labor & Employment Law: Discrimination: Disparate Treatment: Burden Shifting Analysis

[HN7] In the context of an employment discrimination claim, conduct must be extreme to amount to a change in the terms and conditions of employment.

COUNSEL: J. Michael Johnson, Esquire, Maron & Marvel, P.A., Wilmington, Delaware; counsel for plaintiff.

Rosamaria Tassone, Esquire, City of Wilmington Law Department, Wilmington, Delaware; counsel for defendants City of Wilmington, Wilmington Police Department, James Jubb, Michael Boykin, Rita Crowley, Nancy Dietz, and Martin Donohue.

Seth Jason Reidenberg, Esquire, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; counsel for defendant Robert Fox.

JUDGES: Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Kent A. Jordan

OPINION: MEMORANDUM OPINION

 Wilmington, Delaware

 JORDAN, District Judge

I. Introduction

    Presently before me is a motion for summary judgment by defendants the City of Wilmington, the Wilmington Police Department ("WPD"), Sergeant Robert Fox ("Sgt. Fox"), Captain James Jubb ("Cpt. Jubb"), Chief Michael Boykin ("Chief Boykin"), Captain Rita Crowley ("Cpt. Crowley"), Captain Nancy Dietz ("Cpt. Dietz"), and Captain Martin Donohue ("Cpt. Donohue") (collectively "Defendants") on plaintiff David L. Jones' ("Plaintiff") lawsuit for racial discrimination. (D.I. 104; the "Motion"). Because[*2] Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), I have jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. For the reasons that follow, the Motion will be granted.

II. Background

    The procedural history and factual background of this case are set forth in a Memorandum Opinion dated January 8, 2004 and will not be repeated here. (D.I. 95.) Rather, the facts pertinent to the Motion are incorporated below.

2004 U.S. Dist. LEXIS 12806, *

In that earlier Memorandum Opinion, the Defendants' motion for summary judgment on Plaintiff's unlawful discrimination and retaliation claim under Title VII and *42 U.S.C. § 1983* was denied without prejudice because the Defendants withheld discovery from Plaintiff that was essential to a fair consideration of the Plaintiff's claims. Specifically, the Defendants withheld Office of Professional Standards ("OPS") files of "thirty-seven officers charged and/or convicted of dishonesty and/or inaccurate reporting ... [,] information regarding camera room assignments . [*3] .. [,] [and] information regarding officers who attended training while serving punishment for a dishonesty conviction." (D.I. 95 at 20.) I held that without these OPS files, Plaintiff did not have a fair opportunity to meet his burden of establishing a prima facie case of race discrimination and retaliation under *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. (D.I. 95 at 23.) Accordingly, I also granted a motion by the Plaintiff to compel the production of the thirty-seven OPS files. (Id. at 24; D.I. 94.) Having produced the OPS files to Plaintiff, the Defendants now renew their motion for summary judgment against Plaintiff. (D.I. 104, 105.)

III. Standard of Review

[HN1] Pursuant to *Federal Rule of Civil Procedure 56(c)*, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*[*4] . In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)*. However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)*.

[HN2] To defeat a motion for summary judgment, *Rule 56(c)* requires the non-moving party to:

do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.[*5]

IV. Discussion

    A. The McDonnell Douglas test for establishing a prima facie case of discrimination

    [HN3] The United States Supreme Court in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*, set forth a three-step burden shifting analysis for Title VII and § 1983 racial discrimination claims. See *St. Mary's Honor Society v. Hicks, 509 U.S. 502, 506 n.1, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1983)* (stating that the McDonnell Douglas framework applies to both Title VII and § 1983 discrimination claims). First, the plaintiff has the initial burden of establishing a prima facie case of racial discrimination. See *McDonnell Douglas, 411 U.S. at 802*. This is done by showing that the plaintiff: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse job action; and 4) was treated differently than employees who are not members of his protected class. *King v. City of Philadelphia, 2002 U.S. Dist. LEXIS 10276, Civ. A. No. 99-6303, 2002 WL 1277329 at *9 (E.D. Pa. June 4, 2002)* (applying the McDonell Douglas test to a race discrimination claim by a police officer who was terminated [*6]from employment), aff'd by *66 Fed. Appx. 300, 2003 WL 1705967 (3d Cir. Apr. 1, 2003)*; see also *Weldon v. Kraft, 896 F.2d 793, 797 (3d Cir. 1990)*. Whether the plaintiff has established a prima facie case of discrimination is a question of law for the court. *Sarullo v. United States Postal Service, 352 F.3d 789, 798 (3d Cir. 2003)*.

    [HN4] If the plaintiff establishes a prima facie case of racial discrimination, the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas, 411 U.S. at 802*. "The employer satisfies its burden of production by introducing evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)*. If the employer meets its "relatively light" burden by articulating a legitimate reason for the employment decision, the burden shifts back to the plaintiff to show "by a preponderance of the evidence" that the nondiscriminatory reason offered by the employer was a mere pretext for racial

discrimination.[*7] See id. (citing *McDonnell Douglas, 411 U.S. at 802*).

In his complaint, Plaintiff advances a disparate treatment theory of discrimination, contending that the Defendants discriminated, harassed, and retaliated against him because he is African-American. (D.I. 1 at PP 98-123). Specifically, Plaintiff asserts that his disciplinary proceeding, his assignment to the camera room, and his lack of training opportunities demonstrate that he was treated more harshly than white and Hispanic police officers, and thus that he is the victim of racial discrimination. n1 (Id.) [HN5] The Third Circuit has stated that "[a] disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated" on the basis of race. *E.E.O.C. v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990).*

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The Plaintiff has since backed away from his assertion that he has been treated differently than Hispanic officers would have been. (See n.3, infra, and associated text.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*8]

The Defendants argue that Plaintiff "was not treated differently than white or Hispanic police officers with respect to the charges brought against him or the penalty imposed upon him," and "is not similarly situated to the white and Hispanic officers with whom Plaintiff seeks to compare himself in his Complaint and deposition." (D.I. 105 at 9.) The Defendants assert that those officers were not similarly situated to Plaintiff because, unlike Plaintiff, they were not charged with multiple acts of dishonesty and deception. n2 (Id. at 27.) Moreover, the Defendants claim that those other dishonesty and inaccurate reporting cases involved different OPS investigators, different OPS supervisors, different complaint board members, and different appeal hearing board members. ( Id. at 28.) According to the Defendants, "Plaintiff cannot prove intentional racial discrimination when different decisionmakers are involved." (Id.) (Citing *Timms v. Frank, 953 F.2d 281, 287 (7th Cir. 1992)* (holding that "it is difficult to say that the different [treatment] was more likely than not the

result of intentional discrimination when two different decisionmakers are involved"). [*9]) Therefore, the Defendants claim that Plaintiff has not established a prima facie case of discrimination under the fourth prong of the *McDonnell Douglas* test.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 In Plaintiff's Answering Brief to the Defendants' first motion for summary judgment, Plaintiff claimed that he is similarly situated to other white officers involved in single incidents of dishonesty because, even though he was charged with multiple counts of dishonesty, his course of conduct involved only a single set of events, in effect a single incident. (D.I. 75 at 16.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

B. The cases involving allegedly "similarly situated" white officers

Plaintiff argues that eight of the disciplinary files produced by the Defendants involve similarly situated white n3 officers and African-American officers "which establish disparate treatment between black and white officers in terms of the number of charges brought and the severity of the penalties imposed." (D.I. 112 at 12-13.) I disagree.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 Regarding the treatment of Hispanic police officers, Plaintiff states that "suffice it to say that the dishonesty charges involving Hispanic officers are too few in number and too factually distinct to be probative on whether race played a role in disciplinary outcomes. Barring objection by the City, plaintiff would agree to an Order striking references to Hispanics from the pleadings." (D.I. 112 at 7.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

2004 U.S. Dist. LEXIS 12806, *

[*10]

1. Case # 92-752 involved two white male WPD police officers who were off-duty, and had been drinking, when they went to an area frequented by prostitutes, supposedly to converse with them. (D.I. 106 at A-1.) While the officers were speaking to one of the prostitutes in the parking lot of a diner, a New Castel County ("NCC") police officer appeared. (Id.) Upon seeing the NCC police car, the WPD officers drove off. (Id.) Believing the WPD officers had been soliciting prostitutes, the NCC officer pulled the off-duty WPD officers over. (Id.) The WPD officers identified themselves as police and stated that they were speaking to a possible confidential informant in relation to a drug investigation. (Id.)

The NCC officer released the WPD officers, but reported the incident to his superior. (Id. at A-2.) The NCC police department contacted the WPD about the situation and an internal investigation ensued. (Id.) The WPD officers admitted they lied to the NCC officer "to avoid any further embarrassment." (Id. at A-11.) Both officers were charged with one count of dishonesty and one count of associating with known criminals. (Id. at A46-56.) Finding no evidence[*11] that the WPD officers intended to solicit the prostitutes for sex, the NCC police department did not charge the officers criminally. (Id.) The officers received a fifteen day suspension for the dishonesty charge and a two day suspension for the associating with known criminals charge. (Id.)

2. Case # 92-676 involved a white male police officer who was scheduled to be working an extra duty job at an apartment building when he was seen by a supervisor at the police station signing up for another extra-duty job. (Id. at A-57.) When the supervisor questioned why the officer was at the police station when he should have been at the apartment building, the officer stated that he had permission to leave his assignment by the apartment manager. (Id.) The matter was investigated and the apartment manager denied giving the officer permission to leave his assignment. (Id.) The officer was charged and found guilty on one count of dishonesty and one count of failure to properly patrol. ( Id. at A-74.) As a result, the hearing board imposed a fifteen day suspension for the dishonesty conviction and issued a written reprimand for failing to properly patrol. (Id.) On appeal, [*12] the officer's dishonesty conviction was reversed and the conviction for failure to patrol was affirmed. (Id. at A-76.)

3. In Case # 01-092, the hearing board directed OPS to investigate a white male police officer for dishonesty as a

result of an inconsistency in the officer's testimony during a hearing. (Id. at A-78-83.) Because three individuals verified the underlying facts surrounding the officer's statement, the case was dismissed as a misunderstanding. n4 (Id.)

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n4 Plaintiff argues that "there was no penalty on the underlying issue or 'misunderstanding.'" (D.I. 112 at 4.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -

4. Case # 95-688 and # 95-400 involved a white female police officer. (Id. at A-197-217.) The officer called in sick and reported that she had injured her hand in a door. (Id.) It was later discovered that the injury was a result of a physical confrontation with a married man with whom she was having a relationship. (Id.) When questioned, the officer admitted she lied because she was embarrassed about the situation. [*13] The officer was charged with one count of dishonesty, but, the matter was later dismissed. (Id.) According to the Defendants, "the matter was later dismissed because of confidential information received from the officer's doctor." n5 (D.I. 105 at 12.)

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n5 The Plaintiff disputes this characterization of the dismissal, saying "the record establishes that the matter was dismissed due to the officer's 'embarrassment.'" (D.I. 112 at 4.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -

5. Case # 91-381 involved a white male police officer. (D.I. 107 at A-444-452.) The officer called in sick after his supervisor denied his previous request to take that day off. (Id. at A-447.) After calling in sick, the officer

2004 U.S. Dist. LEXIS 12806, *

twice left his residence without reporting the change in his location to the WPD, as required by departmental regulations. (Id. at A-448.) When questioned, the officer stated that his supervisor condoned taking a sick day periodically even when not actually ill. (Id.) The supervisor denied ever making the statement. (Id.) The officer was[*14] charged with one count of dishonesty and one count of violating the WPD sick leave policy. (Id. at A-450) The OPS was also investigating another possible violation of the dishonesty directive by this officer that was unrelated to that matter. (Id. at A-452.) However, the officer resigned prior to a hearing on the charges. (Id.)

6. In Case # 02-092, a white female police officer submitted a crime report under the wrong case number and failed to complete several reports in a timely manner. (D.I. 110 at A-1610.) The hearing board found the officer guilty of one count of inaccurate reporting and three counts of failing to submit reports on time. (Id. at A-1620-1628.) The hearing board imposed a five day suspension for the inaccurate report and a twelve day suspension for the remaining charges. n6 (Id.)

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n6 The Plaintiff argues that there was one "clear" instance of dishonesty in this case and possibly more, yet no dishonesty was charged. (D.I. 112 at 13.) However, in this case review of the record belies the assertion that this case clearly involved dishonesty. (D.I. 110 at A-1610.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*15]

7. Case # 02-385 involved a white male police officer. (Id. at A-1723-1799.) The officer advised the Assistant United States Attorney ("AUSA") prosecuting a case in which he was a witness that he would be unavailable for a suppression hearing because of a previously scheduled vacation. (Id. at A-1723.) The AUSA thus requested a continuance from the judge, who granted the continuance, but asked for verification of the officer's vacation plans. (Id. at A-1724.) When the AUSA advised the officer of the judge's request, the officer stated that he would be available for the hearing. (Id. at A-1725.) Upon further questioning, the AUSA discovered that the officer would have returned from his vacation prior to the

hearing and was scheduled to work the night shift on the day of the hearing. (Id.) Because of the officer's false statement, which raised concerns about his credibility, the AUSA dismissed the case. (Id.) The officer was charged with a single count of dishonesty and his employment was terminated. n7 (Id. at A-1745.)

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -
- -

n7 The Plaintiff points out that there is some evidence in the record that the officer was also dishonest during the internal investigation, but was charged with only one count of dishonesty. (D.I. 112 at 6; see also D.I. 110 at 1729.) However, under a new directive which requires dismissal of an officer for a single conviction of dishonesty, it appears that any subsequent dishonesty charges would have been moot. (D.I. 105 at 14.)

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - -
- - - -

[*16]

8. In Case # 98-742, a white male probationary police officer was involved in an off-duty automobile accident. (Id. at A-1931-2042.) The officer had been drinking and struck the curb with his vehicle, which damaged the tires. (Id. at A-1932.) The officer used profane language when addressing an Amtrak police officer who was present at the time. (Id.) Moreover, the officer was with a friend who had been convicted of a felony crime. (Id.) The Amtrak officer reported the accident. (Id.) After an investigation, the officer was charged with one count of violating the Standards of Conduct, one count of rude and insulting language, one count of failure to report an off-duty accident, and one count of associating with known criminals. (Id. at A-1943-1946.) The officer plead guilty to all charges with the exception of associating with known criminals. (Id. at A-1950.) The officer received a ten day suspension for each of the charges except associating with known criminals because that charge was found to be unsubstantiated. (Id.) In addition to what amounted to a thirty day suspension, the officer's probationary status was extended another year. (Id.) [*17]

A review of the foregoing OPS cases demonstrates the weakness in Plaintiff's assertion that he and the white officers with whom he seeks to compare himself are similarly situated. [HN6] In order to be similarly

2004 U.S. Dist. LEXIS 12806, *

situated, the individuals with whom a plaintiff seeks to be compared must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Anderson v. Haverford College, 868 F. Supp. 741, 745 (E.D. Pa. 1994)*. In this case, as the Defendants accurately explain, Plaintiff was charged with multiple counts of dishonesty, while the officers referenced in the disciplinary files were only charged with one count of dishonesty. Any difference in the charging decisions is at least as plausibly connected to the specific facts of each case as it is to the race of the officers involved. Those cases thus do not provide a basis for concluding that the leveling of multiple dishonesty charges against Plaintiff was out of keeping with the charging practices that the WPD had followed in other cases. There is simply no evidence that the Defendants "piled on" charges or elevated[*18] the charges against the Plaintiff because the Plaintiff is African-American. n8

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -
- -

n8 To the extent Plaintiff is also attempting to argue that cases from the OPS files show that African-American officers are generally treated less favorably in disciplinary proceedings than white officers, (see D.I. 112 at 13-14), his claim still fails. The issue presented is whether, in the specific context of people similarly situated, "others not in the protected class were treated more favorably." See *Weldon, 896 F.2d at 797* (a plaintiff must show that "others not in the protected class were treated more favorably"). Generalizations about racial distinctions are not pertinent to that question, particularly when, as in this case, the complainant has admitted that there is no policy by the City to discriminate against African-American officers. (See D.I. 75 at 21.)

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -
- - - -

Finally, Plaintiff does not rebut the Defendants' claim that the decision makers in several of the disciplinary cases were not the same as the decision [*19]makers in Plaintiff's case. Because Plaintiff has not shown that he is similarly situated to the white officers with whom he seeks to compare himself, and the individual Defendants were not the same as the decision makers in many of the cases that Plaintiff cites, I hold that Plaintiff has not

demonstrated that he was treated differently than similarly situated white officers. Accordingly, Plaintiff has failed to satisfy his burden of establishing a prima facie case of race discrimination with respect to internal WPD disciplinary proceedings.

C. Camera room assignment and training opportunities

With respect to Plaintiff's assignments to the camera room, the Defendants argue that Plaintiff cannot establish a prima facie case of discrimination because this assignment does not constitute an adverse employment action under McDonnell Douglas. (D.I. 105 at 30) (citing *Faragher v. City of Boca Raton, 524 U.S. 775, 788, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1988)* (holding that [HN7] "conduct must be extreme to amount to a change in the terms and conditions of employment"). The Defendants claim that officers assigned to the camera room

were not exposed to the elements, did[*20] not work late night hours, did not experience a reduction in salary or benefits and were afforded regular meal breaks. The position did not involve skills which exceeded Plaintiff's capabilities. The position did not involve any onerous requirements. The assignment simply entailed monitoring a camera and keeping a log of certain activity observed on the camera. Further, Plaintiff's assignment to the camera room was not a permanent transfer, merely temporary.

(D.I. 105 at 31.) Therefore, the Defendants argue, Plaintiff's assignment to the camera room does not amount to an adverse employment action. (Id.) Plaintiff does not even address these claims in his Answering Brief. (D.I. 112.) Because unrebutted evidence and argument supports the Defendants' position that Plaintiff's assignment to the camera room does not constitute an adverse employment action, Plaintiff has not established a prima facie case of discrimination or retaliation based on that assignment.

Regarding his claim that he was discriminated against because of a lack of training opportunities, Plaintiff asserts that from his first full year on the force to the year of the incident in question, 1998, he averaged[*21] 53 hours a year in training. (D.I. 112 at 11.) By contrast, in 1999, Plaintiff attended 16 hours of training, 34.5 in 2000, and 13 in 2001. (Id.) However, Plaintiff has not offered any evidence that Plaintiff requested to attend a training program and was denied such an opportunity while he was on modified duty. Plaintiff also does not state who denied his requests for training, if any such requests were denied, and there is no evidence that any of the named Defendants refused a request by Plaintiff for

2004 U.S. Dist. LEXIS 12806, *

training. Accordingly, Plaintiff has not met his burden of showing that any lack of training opportunities was the consequence of or amounted to discrimination.

V. Conclusion

For the reasons set forth herein, the Motion (D.I. 104) will be granted. An appropriate order will issue.

ORDER

For the reasons set forth in the Memorandum Opinion issued in this case today, IT IS HEREBY ORDERED that the Defendants' motion for summary judgment (D.I. 104) is GRANTED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

June 14, 2003
Wilmington, Delaware