4 of 7 DOCUMENTS

BML Group, Inc., et al. v. U.S. Pizza, Inc., et al.

CIVIL ACTION No. 88-7463

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1992 U.S. Dist. LEXIS 6477

April 30, 1992, Filed

JUDGES: [*1] PADOVA

OPINIONBY: JOHN R. PADOVA

OPINION:

**MEMORANDUM**

Padova, J.

Defendant Krasney has moved to strike the responses submitted by Plaintiffs to his Requests for Admissions because they are untimely. For the reasons that follow, this motion will be denied, although plaintiffs are directed to provide more definite answers to two of the Requests.

The Requests were served on May 31, 1991; however, no responses were provided until September 3, 1991, over two months late. Plaintiffs contend that inadvertence caused the delay, and that the responses were made after Krasney referred to the Requests in responding to a motion to compel discovery. Although the language of Rule 36(a) seems to dictate a harsher result, courts have recognized that the court may accept untimely answers. See, e.g., *Kosta v. Connolly, 709 F. Supp. 592, 594 (E.D. Pa. 1989)* ("We should not employ . . . Rule [36(a)] to establish facts which are obviously in dispute or to answer questions of law."); *Sungard Servs. Co. v. Joint Computer Center, Inc., 1989 U.S. Dist. LEXIS 4015 (April 17, 1989)* ("Straightforward application of the provisions of Rule 36(a) would result, as asserted by [*2] [plaintiff], in a finding that defendants admitted the matters contained in [plaintiff's] requests for admission. . . . However, mindful that resolution of cases on the merits is preferred to disposition on technical application of procedural rules, the court will not consider the matters contained in [plaintiff's] requests to be admitted by [defendant]."); See also *Gutting v. Falstaff Brewing Co., 710 F.2d 1309, 1312 (8th Cir. 1983)* ("Because the district court has the power to allow a longer time, courts and commentators view this to mean that the court, in its discretion, may permit the filing of an answer that would otherwise be untimely.")

In this case, the delay, although not excusable, was not excessive, and the presentation on the merits will be better served by allowing the responses. Further, Defendant has not suffered any significant prejudice. n1 See, e.g., *Smith v. First Nat'l Bank of Atlanta, 837 F.2d 1575 (11th Cir.)* cert. denied, *488 U.S. 821 (1988)*; *Szatanek v. McDonnell Douglas Corp., 109 F.R.D. 37, 39-40 (W.D.N.Y. 1985)* ("Although the failure to take any action within the prescribed [*3] period results in admission of facts stated therein, a court enjoys the discretion to permit a party to file such requests subsequent to the expiration of the time period when the delay was not occasioned by a lack of good faith, when such filing will facilitate a proper determination of the merits and when the untimely response will not unduly prejudice the requesting party.")

> n1 Krasney argues that he was prejudiced because he relied on the lack of response in responding to Plaintiffs' Motion to Compel. However, that motion has been denied without prejudice, and if the motion is refiled Krasney will have an opportunity to defend against the motion taking into account the responses to the Requests.

Although the responses will be permitted, the responses to Requests Numbers 2 and 10 are unclear and seem somewhat evasive. Therefore, Plaintiffs will file amended responses to those Requests.

An appropriate Order follows.

**ORDER**

AND NOW, this 30th day of April, 1992, upon consideration of the Motion of Defendant [*4] Reginald Krasney to Strike the Plaintiffs' Responses to the Requests for Admissions, and the response thereto,

It is hereby ORDERED that the Motion is DENIED insofar as it seeks to strike the responses. However, it is ORDERED that plaintiffs submit more precise responses to Requests for Admissions Numbers 2 and 10 within ten

1992 U.S. Dist. LEXIS 6477, *4

(10) days of the date of this Order.

BY THE COURT:

JOHN R. PADOVA, J.

LEXSEE 1999 US DIST LEXIS 278

THE MARAMONT CORPORATION v. B. BARKS & SONS, INC.

CIVIL ACTION NO. 97-5371

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1999 U.S. Dist. LEXIS 278*

January 13, 1999, Decided
January 14, 1999, Filed

**DISPOSITION:** [*1] Plaintiff's Motion for Summary Judgment DENIED. Defendant's Motion for Partial Summary Judgment DENIED. Defendant's Motion to Withdraw Admissions GRANTED. Plaintiff's Cross-Motion to Preclude the Introduction of Warehouse Receipts as a Limitation of Liability GRANTED.

**COUNSEL:** For THE MARAMONT CORPORATION, PLAINTIFF: BRADFORD M. BRUSH, MESIROV, GELMAN, JAFFE, CRAMER & JAMIESON, PHILA, PA USA.

For B. BARKS & SONS, INC., DEFENDANT: ROBYN F. MC GRATH, SWEENEY, SHEEHAN & SPENCER, PHILA, PA USA. HAROLD E. VILETTO, VILETTO, BOSNIAK AND ROSS, PHILA, PA USA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINIONBY:** HERBERT J. HUTTON

**OPINION:**

### MEMORANDUM AND ORDER

HUTTON, J.

January 13, 1999

Presently before the Court are the Motion for Summary Judgment by Plaintiff The Maramont Corporation ("Plaintiff" or "Maramont") (Docket No. 19), Answer of Defendant B.Barks & Sons, Inc. ("Defendant" or "B.Barks") thereto (Docket No. 21), and the Defendant's Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 29), and the Defendant's Motion to Withdraw Admissions (Docket No. 22), the Plaintiff's response thereto (Docket No. 24) and the Defendant's reply thereto (Docket [*2] No. 27), and the Defendant's Motion for Partial Summary Judgment (Docket No. 20), the Plaintiff's response thereto and Plaintiff's Cross-Motion to Preclude the Introduction of Warehouse Receipts as a Limitation of Liability (Docket No. 23), the Defendant's Answer to Plaintiff's Cross-Motion to Preclude the Introduction of Warehouse Receipts (Docket No. 26) and the Plaintiff's Reply to the Defendant's Answer to the Motion to Preclude the Introduction of Warehouse Receipts (Docket No. 28). For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is **DENIED**, the Defendant's Motion for Partial Summary Judgment is **DENIED**, the Defendant's Motion to Withdraw Admissions is **GRANTED** and the Plaintiff's Cross-Motion to Preclude the Introduction of Warehouse Receipts as a Limitation of Liability is **GRANTED**.

### I. BACKGROUND

Taken in the light most favorable to the Defendant, the facts are as follows. The Plaintiff, The Maramont Corporation ("Maramont") commenced this action by filing its complaint on August 21, 1997. Maramont seeks $138,683.09 in damages allegedly sustained when 97,650 pounds ("lbs.") of turkey nuggets stored in the cold storage [*3] facility of the Defendant, B.Barks & Sons, Inc. ("B.Barks"), spoiled. The turkey nuggets were owned by the Philadelphia School District of Philadelphia ("School District"), but had been entrusted to Maramont to be incorporated into finished meals for the School District. The Plaintiff brings this cause of action under the following theories: negligence, breach of contract and breach of bailment agreement.

Maramont is in the food service business and, among other things, prepares, assembles and delivers prepackaged meals to institutional clients, including the School District. B.Barks is a public cold storage facility and is in the business of providing refrigerated storage space to food services and other entities for the purpose of preserving and maintaining perishable food items. B.Barks

operates its cold storage facility at Blue Grass Road and Grant Avenue in Northeast Philadelphia.

In September and October of 1996, in several shipments Maramont delivered and stored approximately four-thousand eight-hundred seventy-eight cases of frozen USDA commodity turkey nuggets at the storage facility of B.Barks. The turkey nuggets were delivered directly to B.Barks by Snow Ball Foods, Inc., [*4] the processor of the turkey nuggets. B.Barks received and stored the turkey nuggets in its cold storage facility warehouse. The cartons containing the turkey nuggets stated that the product should be stored at 0 degrees Fahrenheit or lower.

Between September 6, 1996, and January 1, 1997, the temperatures at B.Barks spiraled upward from minus 10 degrees Fahrenheit up to 33 degrees Fahrenheit. Out of the four-thousand eight-hundred seventy-eight cases of turkey nuggets that were delivered to B.Barks, three-thousand two-hundred fifty-five cases of turkey nuggets became spoiled and unfit for human consumption as a result of their prolonged exposure to temperatures well above those required to maintain the turkey nuggets in a frozen state.

Maramont was required to pay the School District of Philadelphia $138,683.09. Maramont alleges that this amount represents the full value of the spoiled turkey nuggets, storage costs, and value of assembled boxed meals which contained spoiled turkey nuggets, and therefore seeks compensation in this amount. Conversely, B.Barks contends that for each and every shipment of turkey nuggets received by B. Barks from Maramont, a non-negotiable warehouseman's [*5] receipt was generated by B.Barks and forwarded to Maramont. B.Barks alleges that the warehouseman's receipt stated that its "liability for loss or damage to the goods is limited to $.50 per pound . . . ." Plaintiff claims that three-thousand two-hundred fifty-five case of USDA commodity turkey nuggets weighing thirty pounds per case, were spoiled in the possession of B.Barks. This means that ninety-seven thousand six-hundred fifty pounds of turkey nuggets spoiled. According to B.Barks, at $.50 per pound, its maximum liability is $48,825.00. Maramont contends, however, that it never received any such receipts nor had any knowledge of them.

Out of the three-thousand two-hundred fifty-five cases of turkey nuggets that became spoiled while under the care, custody and control of B.Barks, B.Barks destroyed at its own cost two-thousand six-hundred fifty-four cases pursuant to a Pennsylvania Department of Agriculture Food Disposition Authorization dated March 5, 1997. The turkey nuggets were in no way spoiled or contaminated when they were received by B.Barks, nor is there any evidence to support any assertion that they were.

B.Barks accepted shipments of turkey nuggets while its temperatures [*6] were above 0 degrees Fahrenheit. B.Barks alleges, however, that Maramont knew of the temperature conditions at its storage facility and, therefore, B.Barks is not responsible for the spoilage of the turkey nuggets. According to B.Barks, Maramont knew before shipment that B.Barks could not satisfy the temperature conditions needed to properly store the turkey nuggets. B.Barks alleges that it allowed Maramont to store its turkey nuggets at its facility only after being assured by Maramont that storage was intended to be "about two weeks." B.Barks also contends that Maramont's Operations Manager, Rich Williams, conducted inspections at the B.Barks facility and therefore knew of the elevated temperatures. According to B.Barks, it was common knowledge in the industry that B.Barks stored cranberries during the Fall months, which caused their temperatures to increase. Finally, B.Barks alleges that it asked Maramont to remove the turkey nuggets, but Maramont refused to do so.

Conversely, Maramont alleges that B.Barks did not notify Maramont that the temperatures within its facility were continuing to raise above the acceptable range for storing frozen turkey nuggets or advise Maramont to [*7] remove the turkey nuggets to prevent spoilage nor did B. Barks terminate or attempt to terminate the bailment agreement.

On July 1, 1998, the Plaintiff filed its Motion for Summary Judgment. On July 9, 1998, the Defendant filed its Motion for Partial Summary Judgment. On July 15, 1998, the Defendant filed its Answer to Plaintiff's Motion for Summary Judgment. On July 16, 1998, the Defendant filed its Motion to Withdraw Admissions. On July 21, 1998, the Plaintiff filed its Response to Defendant's Motion for Partial Summary Judgment. On July 21, 1998, the Plaintiff filed its Cross-Motion to Preclude the Introduction of Warehouse Receipts as a Limitation of Liability. On July 27, 1998, the Plaintiff filed its Answer to Defendant's Motion to Withdraw Admissions.

## II. DISCUSSION

### A. Motion to Withdraw Admissions

Defendant B.Barks has filed a Motion to Withdraw Admissions which the Plaintiff opposes. Plaintiff served a request for admissions on the Defendant which it failed timely to respond. Defendant served its answers and objections to the requests thirteen days late. Defendant admitted the truth at least in part to seven of the twelve requests and [*8] denied the remaining requests. Plaintiff

contends that Defendant's belated denials should be disregarded and that all of the requests should be deemed admitted. Courts have "great discretion" in deciding whether to allow withdrawal or amendment of admissions. *United States v. Branella, 972 F. Supp. 294, 301 (D.N.J. 1997).* See also *Flohr v. Pennsylvania Power & Light Co., 821 F. Supp. 301, 306 (E.D. Pa. 1993); Local Union No. 38 v. Tripodi, 913 F. Supp. 290, 293-294 (S.D.N.Y. 1996)*(allowing party to file otherwise untimely answer to request for admissions). A party opposing the withdrawal or amendment of an admission must demonstrate that he will be prejudiced thereby. *Branella, 972 F. Supp. at 301.* A party is not prejudiced by a belated response simply because his position is prejudiced by the true facts contained in the response. *Beatty v. United States, 983 F.2d 908, 909 (8th Cir. 1993).* "Where possible, an action should be resolved on its merits." Id. Deemed admissions should prevail over "the quest for the truth only in extreme circumstances." Id. See also *Szatanek v. McDonnell Douglas Corp., 109 F.R.D. 37, 39-40 (W.D.N.Y. 1985)* (allowing belated responses [*9] to request for admissions as such serves to resolve action on merits and opposing party failed to demonstrate actual prejudice); *NCR Corp. v. J-Cos Systems Corp., 1987 U.S. Dist. LEXIS 6221, 1987 WL 13683 (E.D. Pa. Jul. 13, 1987)* (party permitted to withdraw deemed admissions as whenever possible "an action should be resolved on its merits").

The discovery rules are not suggestions. They are requirements. Nevertheless, the Plaintiff has demonstrated no prejudice and the relatively brief delay in the service by the Defendant of its responses to Plaintiff's requests does not warrant a resolution of this action based on the deemed admission of matters which may well be untrue. Accordingly, the Court will grant Defendant's Motion.

### B. Plaintiff's Cross-Motion to Preclude Warehouse Receipts

Plaintiff Maramont has filed a Cross-Motion to preclude the introduction of warehouse receipts as a limitation of liability, which the Defendant opposes. The Plaintiff filed its complaint on August 21, 1997. On October 6, 1997, the Defendant filed its answer. On July 9, 1998, the Defendant filed its Motion for Partial Summary Judgment alleging that its liability should be limited as a matter of law by the existence [*10] of non-negotiable warehouseman's receipts. On July 22, 1998, the discovery deadline in this case expired.

Plaintiff argues that in this Motion, just two weeks before the close of discovery, Defendant raised the issue of warehouseman's receipt for the first time. Plaintiff asserts that Defendant's attempt to invoke the terms and conditions of these warehouseman's receipts contravenes *Rule 8(c) of the Federal Rules of Civil Procedure* because it was never pled in B.Barks' Answer. Furthermore, Plaintiff denies any prior knowledge of such receipts. *Rule 8(c) of the Federal Rules of Civil Procedure* provides as follows:

> Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, [*11] the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

*Fed. R. Civ. P. 8(c).* Under the accepted interpretation of Rule 8(c), any matter "constituting an avoidance or affirmative defense" to the matters raised in the Plaintiff's complaint must be pleaded

> in a timely manner or it is deemed to be waived. See, e.g., *Prinz v. Greate Bay Casino Corp., 705 F.2d 692, 697 (3d Cir. 1983).*

In Pennsylvania, it is permissible by statute for a warehouse receipt to limit liability to 50 cents per pound in case of negligent loss. See *13 Pa.C.S.A. § 7204(b).* In the instant matter, the Defendant argues that the warehouseman's receipt does not constitute an affirmative defense because where a state statute limits recovery for a plaintiff, the statute is a limitation of damages and not an affirmative defense. To support this claim, Defendant relies exclusively on *Taylor v. United States, 821 F.2d 1428, 1433 (9th Cir. 1987).* In Taylor, the Ninth Circuit held that the statute at issue which limited liability was a mere limitation of liability, rather than an avoidance or an affirmative defense. *Id. at 1433.* [*12] Taylor, however, is not binding on this Court. Moreover, the holding in Taylor conflicts with the decisions of two other Courts of Appeals. In *Ingraham v. United States, 808 F.2d 1075, 1078-1079 (1987),* the Fifth Circuit held that a statutory limitation on damages recoverable in the State of Texas is an affirmative defense that is waived under the Federal Rules by failure to plead it in a timely manner. And in *Jakobsen v. Massachusetts Port Authority, 520 F.2d 810, 813 (1975),* the First Circuit held that a statutory limi-

Case 1:05-cv-00178-SLR   Document 56-11   Filed 04/27/2006   Page 6 of 10

Page 4
1999 U.S. Dist. LEXIS 278, *12

tation on liability is an affirmative defense under Rule 8(c).

In Taylor, the United States asserted the California statutory limitation for the first time in a Rule 59(e) motion. The Ninth Circuit held that the government raised the defense at a "pragmatically sufficient time" and that the plaintiff suffered no prejudice because of the government's delay in asserting the statute. *Id. 821 F.2d at 1433.* The court recognized, however, that application of the statute might, in some instances, require resolution of factual issues and that, in such cases, plaintiffs might be prejudiced if defendants did not raise the statute prior to judgment. Id. [*13]

In the instant matter, the Court finds that the warehouseman's receipt constitutes an affirmative matter which should have been pleaded in accordance with *Federal Rules of Civil Procedure 8(c)*. The failure to include such a defense results in the involuntary waiver of the defense and its exclusion from the case. *Jakobsen v. Massachusetts Port Authority, 520 F.2d 810, 813 (1st Cir. 1975); State Farm Mutual Automobile Insurance Co. v. Mid-Continent Casualty Co., 518 F.2d 292 (10th Cir. 1975); Camalier & Buckley-Madison, Inc. v. Madison H., Inc., 168 U.S. App. D.C. 149, 513 F.2d 407, 420, 421 (C.A.D.C.1975); Frederick v. Hess Oil Virgin Islands Corp., 492 F. Supp. 1338, 1341* (D.V.I. Jun. 30, 1980). The Defendant failed to raise "the issue at a pragmatically sufficient time," and the Plaintiff was prejudiced in its ability to respond. See *Charpentier, 937 F.2d 859 at 864.* The defense was not included in any pleading prior to its appearance in Defendant's Motion for Partial Summary Judgment filed on July 8, 1998, just two weeks before the end of discovery. Plaintiff was thus not put on notice of this defense until after all depositions of B.Barks' designees had been taken, [*14] resulting in unfair surprise and prejudice.

Defendant argues that B.Barks raised the issue of the warehouseman's receipt on June 16, 1998, during the deposition of Defendant B.Barks' designee, Linda McNulty. McNulty, however, merely testified that B.Barks would generate a "non-negotiable warehouse receipt for Maramont ... and send them a copy of the back-up paperwork." (McNulty's Dep. at 32-33.) She never testified that it contained language limiting B.Barks' liability. (See id.) In fact, when asked, "What is on the warehouse receipt; what information is contained," she described in detail the receipt without ever mentioning any language limiting B.Barks' liability. (Id.)

Moreover, Maramont denies ever receiving such a receipt. Thus, Maramont alleges that it was impossible for it to be aware of Defendant's limited liability defense. Specifically, Baron Feldmar, general manager of Maramont, testified in an affidavit that B.Barks never issued warehouseman's receipts in connection with the subject turkey nuggets. (Aff. of Feldmar P 6-7.) Mr. Feldmar further stated that he had never even seen a warehouseman's receipt like the one attached as an exemplar to B.Barks' Motion. (Id. [*15] P 8-13.) B.Barks admits that it does not possess any copies of the purported warehouseman's receipts. Thus, because Plaintiff never asserted the defense of limited liability via the warehouseman's receipt in its Answer and Defendant never raised such a defense prior to its Motion for Partial Summary Judgment, and because the Defendant can not even establish that such a receipt was even issued to the Plaintiff, the Defendant is precluded from asserting the warehouseman's receipt as a limitation of its liability.

### C. Defendant's Motion for Partial Summary Judgment

In its Motion for Partial Summary Judgment, the Defendant asserts that even if B.Barks is liable for the spoilage of the turkey nuggets, the liability of B.Barks under Pennsylvania law should be limited pursuant to the warehouseman's receipt. Because this Court finds the warehouseman's receipt inadmissible, the Defendant's Motion is denied.

### D. Plaintiff's Motion for Summary Judgment

#### 1. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue [*16] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* The party moving for summary judgment has the initial burden of showing the basis for its motion. See *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. See *id. at 324.* A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).*

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. See *Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).* Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for sum-

Case 1:05-cv-00178-SLR   Document 56-11   Filed 04/27/2006   Page 7 of 10

Page 5
1999 U.S. Dist. LEXIS 278, *16

mary judgment, even if the quantity of the [*17] moving party's evidence far outweighs that of its opponent. See id. Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. See *Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992)*.

### 2. Analysis of Claim

Maramont contends that B.Barks breached its bailment agreement with Maramont as a matter of law and, therefore, judgment should be entered against B.Barks and in favor of Maramont in the amount of $138,683.09. Maramont asserts that because B.Barks responded untimely to its Requests for Admissions, said Requests are deemed admitted pursuant to *Rule 36 of the Federal Rules of Civil Procedure*. Accordingly, Maramont concludes that no issue of material fact exists regarding its claim for breach of bailment. This Court, however, has already granted Defendant's Motion to Withdraw Admission. See supra Part II.A. In light of this holding, the Court will now consider Plaintiff's argument.

Bailment involves "delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the [*18] person who delivered it, otherwise dealt with according to his directions or kept until he re-claims it." *Price v. Brown, 545 Pa. 216, 680 A.2d 1149, 1151 (1996)* (citation omitted). Maramont is correct; a cause of action for breach of a bailment agreement involves a shifting burden of proof. First, Maramont, as bailor, must put forth evidence of a prima facie case: that it delivered personalty to B.Barks, the bailee; that it made a demand for return of the property; and the bailee failed to return the property, or returned it in damaged condition. *Id. 680 A.2d at 1152*. Once the prima facie case is met, B.Barks, the bailee, must come forward with evidence "accounting for the loss." Id. If the bailee fails to do so, it is liable for the loss because it is assumed the bailee failed to exercise reasonable care required by the agreement. Id. If the bailee successfully puts forth "evidence showing that the personalty was lost and the manner in which it was lost, and the evidence does not disclose a lack of due care on his part, then the burden of proof again shifts to the bailor who must prove negligence on the part of the bailee." Id.

Although not clearly spelled out, [*19] case law indicates the bailee's burden of "accounting for the loss" encompasses a showing the bailee was not negligent and/or his actions were not the cause of the loss. See e.g., *E.I. duPont de Nemours & Co. v. Berm Studios, Inc., 211 Pa. Super. 352, 236 A.2d 555, 557 (1967)* (holding the bailee must show "the cause of the damage or loss, if possible ..."). Accordingly, on Maramont's bailment claims, B.Barks bears an initial burden of putting forth evidence it was not negligent and/or that it did not cause the damage to Maramont's turkey nuggets.

For the purposes of this Motion, B.Barks, through the deposition testimony of Linda McNulty and Baron Feldmar, has established that Maramont was aware of the conditions in B.Barks' cold storage facility, i.e., that the temperatures were up due to the presence of several tons of cranberries. McNulty testified that she told Maramont employee, "Kathleen," that "the temperatures would be going up in the freezer," and that Maramont should remove the turkey nuggets. (McNulty's Dep. at 53, 61-62.) Feldmar, principle of Maramont, testified that Williams knew of the rise in temperatures in the freezer caused by the intake of cranberries. [*20] (Feldmar's Dep. at 38-39.) Despite being made aware of this fact, Maramont chose to store the turkey nuggets at the B.Barks facility. This issue of comparative negligence of Maramont Corporation shifts the burden back to Maramont Corporation to demonstrate that it was B.Barks' negligence, and not Maramont's own negligence, that caused the spoilage of the turkey nuggets. To resolve this question, a fact finder must weigh the testimony of Linda McNulty against the testimony offered by Maramont's employees.

In its Motion for Summary Judgment, Maramont argues that B.Barks has never asserted that the bailment was terminated. Maramont states that "absent an express termination of the bailment agreement, B.Barks remains liable for any loss to the turkey nuggets while they were under B.Barks' exclusive control, care and custody." (Pl.'s Mem. at 8.) In *Johnson v. Mathia, 363 Pa. Super. 397, 526 A.2d 404, 405 (1987)*, the Pennsylvania Superior Court stated as follows:

> Admittedly, Pennsylvania case law remains undeveloped on the issue of termination of a bailment. However, it is the general consensus among our sister states that either the bailor or the bailee may terminate a bailment [*21] at will where the bailment is not for any particular time. *8 Am Jur 2d, Bailments § 292*. In these cases, such as the instant, a bailee has the additional obligation to allow the bailor a reasonable time in which to retake possession of the property before the bailment can be regarded as terminated. Id. at § 294. "If the facts are in dispute as to whether the bailment has been terminated, or if different inferences may be drawn from the evidence, it is for the [fact finder] to say whether the bailment was terminated or continued and renewed." Id. at § 292.

Case 1:05-cv-00178-SLR   Document 56-11   Filed 04/27/2006   Page 8 of 10

Page 6
1999 U.S. Dist. LEXIS 278, *21

*Johnson*, 526 A.2d at 405. The Johnson court acknowledged that termination of a bailment was a fact-sensitive issue.

No issue exists as to whether the turkey nuggets were stored at B.Barks and then spoiled. A factual dispute, however, exists whether the bailment ended when McNulty told Kathleen that Maramont would have to remove the turkey nuggets. It is therefore for the fact finder to determine whether the bailment was terminated. See id. Furthermore, many factual disputes exists as to why the turkey nuggets were permitted to spoil. Under these circumstances, issues of material fact exist as to whether a [*22] bailment was breached and/or terminated.

An appropriate Order follows.

## ORDER

AND NOW, this 13th day of January, 1999, upon consideration of Presently before the Court are the Motion for Summary Judgment by Plaintiff The Maramont Corporation ("Plaintiff" or "Maramont") (Docket No. 19), Answer of Defendant B. Barks & Sons, Inc. ("Defendant" or "B. Barks") thereto (Docket No. 21), and the Defendant's Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 29), and the Defendant's Motion to Withdraw Admissions (Docket No. 22), the Plaintiff's response thereto (Docket No. 24) and the Defendant's reply thereto (Docket No. 27), and the Defendant's Motion for Partial Summary Judgment (Docket No. 20), the Plaintiff's response thereto and Plaintiff's Cross-Motion to Preclude the Introduction of Warehouse Receipts as a Limitation of Liability (Docket No. 23), the Defendant's Answer to Plaintiff's Cross-Motion to Preclude the Introduction of Warehouse Receipts (Docket No. 26) and the Plaintiff's Reply to the Defendant's Answer to the Motion to Preclude the Introduction of Warehouse Receipts (Docket No. 28), IT IS HEREBY ORDERED that: [*23]

(1) Plaintiff's Motion for Summary Judgment is **DENIED**;

(2) Defendant's Motion for Partial Summary Judgment is **DENIED**;

(3) Defendant's Motion to Withdraw Admissions is **GRANTED**; and

(4) Plaintiff's Cross-Motion to Preclude the Introduction of Warehouse Receipts as a Limitation of Liability is **GRANTED**.

BY THE COURT:

HERBERT J. HUTTON, J.

LEXSEE 1998 U.S. DIST. LEXIS 80

JOSEPH JAMAR JACOBS v. CITY OF WEST CHESTER, et al.

CIVIL ACTION NO. 97-CV-3409

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1998 U.S. Dist. LEXIS 80*

**January 12, 1998, Filed**

**DISPOSITION:** [*1] Defendants' Motion to Strike (Doc. # 10) DENIED.

**COUNSEL:** For JOSEPH JAMAR JACOBS, PLAINTIFF: JOAN GAUGHAN ATLAS, MANCHEL, LUNDY & LESSIN, PHILA, PA USA.

For CITY OF WEST CHESTER PENNSYLVANIA, THE CITY OF WEST CHESTER POLICE DEPARTMENT, JOHN GREEN, COLLINS, JAMES MOOREHEAD, JOHNSON, MICHAEL ULNER, DEFENDANTS: DAVID J. MAC MAIN, MONTGOMERY, MCCRACKEN, WALKER & RHOADS, PHILA., PA USA. JAMES J. FITZGERALD, IV, PHILA, PA USA.

**JUDGES:** JAY C. WALDMAN, J.

**OPINIONBY:** JAY C. WALDMAN

**OPINION:**

### MEMORANDUM ORDER

Presently before the court is the Motion of defendants Borough of West Chester, Borough of West Chester Police Department, Police Chief John Green, Officer Collins, Officer James Moorehead, Lt. Johnson and Officer Michael Euler's to Strike Plaintiff's Answers to First Set of Combined Requests for Admission, Interrogatories and Requests for Production of Documents.

Defendants served plaintiff with requests for admissions on July 31, 1997. The following statements were included in defendants' request for admissions:

1. Plaintiff was in possession of crack cocaine at the corner of Market and Matlock Streets in West Chester, Pa. On December 18, 1996;

2. Plaintiff sold crack cocaine [*2] on December 18, 1996;

3./4. Plaintiff attempted to, and did, in fact, swallow a package of crack cocaine when defendant police officers approached him on December 18, 1996.

Plaintiff did not respond to defendants' request during the 30 days allowed under *Fed. R. Civ. P. 36*. By letter of September 18, 1997 defense counsel inquired if plaintiff would voluntarily dismiss this action and also informed him that the requests for admissions would be deemed admitted pursuant to *Fed. R. Civ. P. 36(b)*.

On October 14, 1997 plaintiffs responded to defendants' request for admissions as follows:

I was not in possession of drugs. Hospital record from Chester County Hospital shows there was (sic) no foreign bodies in my stomach. Drug tests were negative. I did not swallow any drugs. I expect to call Henry Young who will testify that I was standing with him in front of the Elks Club just prior to my arrest and that I was not involved in any illegal activity.

This was 45 days after plaintiff's response was due. Plaintiff never sought an extension of time to respond the requests.

Plaintiff asserts and defendants do not deny that by letter of August 7, 1997 plaintiff's counsel informed [*3] defense counsel that in light of information provided in the statements of defense witnesses, plaintiff's counsel would review the issue of dismissing the case with plaintiff. This required, in part, an investigation of the information suggested by the requests for admissions. Plaintiff asserts that the non-cooperation of a Mr. Hollingsworth, presumably a potential defense witness, contributed to the delay in responding to the request for admissions.

Rule 36(b) emphasizes the "importance of having an action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not prejudice him." *Coca-Cola Bottling Co. v. The Coca-Cola Co., 123 F.R.D. 97,*

*103 (D. Del. 1988)*(quoting 1970 Amendment's Advisory Committee Notes for Rule 36). Defendants have not argued or shown that they have suffered any material prejudice as a result of the belated filing of plaintiff's response. Defendants did not file any dispositive motions or inalterably commit themselves to a trial strategy in reliance on the unanswered requests. See, e.g., *BML Group, Inc. v. U.S. Pizza, Inc., 1992 WL 101636* at *1 (E.D. Pa. May 5, 1992)(plaintiff's [*4] responses to requests for admissions not stricken though served over two months late where defendants did not suffer significant prejudice).

ACCORDINGLY, this day of January, 1998, **IT IS HEREBY ORDERED** that said defendants' Motion to Strike (Doc. # 10) is**DENIED**.

**BY THE COURT:**

JAY C. WALDMAN, J.