# City of Wilmington
## Delaware

JAMES M. BAKER
MAYOR



LOUIS L. REDDING - CITY/COUNTY BUILDING
800 FRENCH STREET
WILMINGTON, DELAWARE
19801 - 3537

**Law Department**
**(302) 576-2175**

September 21, 2006

The Honorable Kent A. Jordan
U.S. District Court for the District of Delaware
844 N. King Street
Lock Box 10
Wilmington, DE 19801

    RE:    ***Kenneth Boyd v. Wilmington Police Department***
             **C.A. No. 05-178 KAJ**

Dear Judge Jordan:

    Defendants are in receipt of the letter filed today, September 21, 2006, by counsel for the Plaintiff in the above referenced matter. Please accept this correspondence as Defendants' response to Plaintiff's letter.

    On September 14, the Court tentatively granted Defendants' *in limine* request to exclude as evidence at trial Plaintiff's testimony of an alleged statement by Sgt. Donald Bluestein that he would "kill" Plaintiff if Plaintiff was promoted. The Court also excluded as evidence testimony concerning e-mails sent from Sgt. Bluestein to Inspector James Wright wherein Sgt. Bluestein facetiously enclosed several employment opportunities outside the Wilmington Police Department. This latter testimony was excluded because Plaintiff did not have the e-mails in question. However, the Court indicated that if Plaintiff presented evidence which demonstrated a direct relationship between Plaintiff and Sgt. Bluestein with regard to promotions, the Court would reconsider its decision to exclude the so-called "threat." However, Defendants would argue that Plaintiff's letter does not present the Court with evidence of a direct relationship between Plaintiff and Sgt. Bluestein, but simply re-hashes the same arguments presented at the pre-trial conference.

    There are several inaccuracies contained in Plaintiff's letter. First, Chief Michael Sczcerba never appointed Sgt. Bluestein "acting sergeant." (See attached). Indeed, Chief Szczerba was not appointed to office until January, 2001 and does not appear to have been Chief at the time Sgt. Bluestein was acting sergeant, which Sgt. Bluestein stated at his deposition was approximately 6 or

The Honorable Kent A. Jordan
September 21, 2006
Page 2

7 years ago.[1] (See attached). Second, there is no support in the record for Plaintiff's statement that the "acting house sergeant position prepares an officer for his transition into the sergeant role." This appears to be solely his opinion. Third, in the 2004 Promotional List, Sgt. Bluestein was not the most senior candidate eligible for promotion at the time Plaintiff filed his complaint. Sgt. Bluestein was actually the third most senior candidate in Band II. Sgt. John Drysdale, the most senior, was promoted on or about February 26, 2005, approximately one month before Plaintiff filed his complaint, but well after Plaintiff filed a complaint with the Equal Employment Opportunity Commission of which Chief Szczerba was aware. The next promotion was not until approximately October, 2005. At that time, Chief Szczerba promoted Sgt. Bluestein, the third most senior candidate. In November, 2005, Chief Szczerba promoted Sgt. Amy Rausch, who was senior to Sgt. Bluestein. (See attached). In the 2004 Promotional List, Plaintiff had placed in Band III and was not in a position for promotion.

Plaintiff is attempting to argue that Sgt. Bluestein "threatened" Plaintiff because if the Defendants promoted Plaintiff solely because of his lawsuit, Sgt. Bluestein's chances to be promoted would be hurt. This is the same argument offered by Plaintiff at the pre-trial conference on September 14. As the Court clearly stated at the conference, this argument is unavailing because in any situation, someone who is promoted as a result of a lawsuit will push back other promotions. This does not demonstrate that Chief Szczerba was promoting in order of seniority. Again, Defendants would urge the Court not to change its ruling because this alleged statement has no relevance to the issue of race discrimination or Chief Szczerba's promotions. Sgt. Bluestein has no part in the decision-making process. Plaintiff and Sgt. Bluestein were never in competition for the same promotional opening. Further, even if the alleged statement had some relevance to the case, its relevance is greatly outweighed by its prejudicial effect given the attenuated argument Plaintiff is attempting to make with regard to the issue of seniority, and the lack of any direct correlation between Sgt. Bluestein and Plaintiff in a promotional band.

With regard to the exclusion of the e-mails sent by Sgt. Bluestein to Inspector Wright, it was Defendants' understanding that the Court has definitively excluded this testimony given the fact that Plaintiff has not produced, nor does he possess, the e-mails in question. As such, this is no longer an issue in this case.

---

[1] Sgt. Bluestein was deposed in December, 2005, almost one year ago. At the time of his deposition, he indicated that he was acting sergeant approximately 5 to 6 years ago, clearly before Chief Sczcerba took office.

The Honorable Kent A. Jordan
September 21, 2006
Page 3

      Defendant respectfully request that the Court deny Plaintiff's request to re-consider the Court's September 14, 2006 decision to exclude the above testimony.

                                                Respectfully Submitted,

                                                Rosamaria Tassone (I.D. #3546)
                                                First Assistant City Solicitor
                                                Attorney for Defendants

Attachments
cc:    Jeffrey K. Martin, Esquire (w/attachments)
       Lori Ann Brewington, Esquire (w/attachments)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH A. BOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 05-178 KAJ |
| WILMINGTON POLICE DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |

     Deposition of DONALD BLUESTEIN taken pursuant to notice at the offices of Margolis Edelstein, 1509 Gilpin Avenue, Wilmington, Delaware, beginning at 4:00 p.m. on Monday, November 28, 2005, before Anne L. Adams, Registered Professional Reporter and Notary Public.

APPEARANCES:

       JEFFREY K. MARTIN, ESQ.
       MARGOLIS EDELSTEIN
         1509 Gilpin Avenue
         Wilmington, Delaware  19806
         for the Plaintiff,

       ROSAMARIA TASSONE, ESQ.
       ASSISTANT CITY SOLICITOR
       CITY OF WILMINGTON LAW DEPARTMENT
         800 N. French Street, 9th Floor
         Wilmington, Delaware  19801
         for the Defendant.

ALSO PRESENT:  Kenneth Boyd

------------------------------------------------
WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters

1  as "jump out," we'd jump out of a van and make
2  pedestrians stops, things like that.  It was all night
3  work.
4      Q.   Was this under the Sills administration?
5      A.   The Firearms Trafficing Task Force was under
6  Chief Pratcher.  It was probably Sills because I think
7  Frauley was only mayor for like a year after I was hired.
8  So it was Frauley, then Sills for two terms I think.
9      Q.   And what did you do after the task force?
10     A.   I think I went back to patrol or was assigned to
11 the riverfront area in a uniformed capacity.
12     Q.   How long were you with the task force by the way?
13     A.   That was about a year-and-a-half, two years.
14     Q.   How long for the next position on patrol?
15     A.   Three.
16     Q.   And can you give me the approximate dates of
17 that, the riverfront patrol position?
18     A.   I was there for three years.  I was there.  Back
19 to patrol as an acting sergeant for nine months.  I'm
20 just trying to do this in my head.  I don't remember the
21 time.  And then from that acting just into the platoon
22 with everybody else.
23     Q.   Let's take it forward beyond that patrol where
24 you spent some time at the riverfront.

1   Q.   You said at some point you acted, you were acting
2   sergeant?
3   A.   Yeah.
4   Q.   When was that?
5   A.   I think that was probably maybe 6 or 7 years ago.
6   I think I had about 10 years in the job. I'm on my 15th,
7   coming up on my 16th. So I would say 5 or 6 years ago.
8   Q.   5 or 6 years ago you were acting sergeant?
9   A.   Yes.
10  Q.   While you were in patrol?
11  A.   Yes.
12  Q.   And did they have a deficiency in the number of
13  sergeants at that point?
14  A.   I believe so, yeah.
15  Q.   Who was it that appointed you acting sergeant?
16  A.   I don't honestly -- I don't think I can give one
17  person that -- they just asked me if I wanted to be the
18  acting sergeant and I said yes. But I can't really give
19  you a specific person that did that.
20  Q.   So that covers us up to current. What did you
21  do, if anything, in preparation or to prepare for today's
22  deposition?
23  A.   I met with Rose about a month or so ago. Other
24  than that, nothing.

1    Q.    Were they promoted before you were promoted?
2    A.    Yes.
3    Q.    Of the individuals that you've named on Band B or
4  Band 2 -- I say Band 2 simply because I understand that
5  they are usually interchangeable.
6    A.    Okay.
7    Q.    -- which other officers have been promoted to
8  sergeant?
9    A.    John Drysdale, myself and Amy.
10   Q.    And of the three that you've just enumerated, who
11 was the first to be promoted?
12   A.    It would be John Drysdale.
13   Q.    When was John promoted, if you recall?
14   A.    I would probably say maybe up to eight months.
15   Q.    And then the second one?
16   A.    That would be me.
17   Q.    And then when was Amy Rausch promoted?
18   A.    Like a week or so after me.  So she's probably
19 been promoted two, three weeks.
20   Q.    Do you recall of the three of you that we're
21 talking about, you, Drysdale and Rausch, who had the most
22 seniority?
23   A.    That would be John Drysdale.
24   Q.    How about between you and Amy Rausch?

1    A.   Amy.

2    Q.   Amy had more seniority?

3    A.   About a year-and-a-half or so.

4    Q.   And you believe the timing of Amy's promotion was
5    about a week behind yours?

6    A.   A week or two behind mine.

7    Q.   Does the actual time of promotion have any
8    significance for later in your career?

9    A.   No.  I think the only -- no.  Because it just is
10   what it is.

11   Q.   So, in other words, if you had been promoted a
12   week or two after Amy Rausch --

13   A.   Yes.

14   Q.   -- you don't think that would have had any
15   influence or any effect on your career or career path
16   with the Wilmington Police Department?

17   A.   The only thing that is specific to Amy and I
18   right now is the time we were promoted.  We are not
19   eligible to take the test again for two years.

20   Q.   When you are referring to taking the test, to
21   become lieutenant?

22   A.   Yes.

23   Q.   But I understand the way things have worked that
24   you may not need to take the test to become lieutenant;

1    A.    That was my idea.  That's why I took the slot,
2    because I was on the list waiting for somebody to retire,
3    which didn't happen.
4    Q.    Waiting for someone to retire so there could be
5    an opening for sergeant?
6    A.    Yes, another opening.
7    Q.    When you were not promoted to sergeant after that
8    point, did you feel pretty bitter about that situation?
9    A.    No.
10              MS. TASSONE:  Objection as to form.
11   A.    I was unhappy.
12   Q.    And how long did your unhappiness last?
13   A.    Oh, God.  I don't know.  It comes and goes.  I
14   can't honestly answer that question.
15   Q.    Well, I mean, after you were not promoted to
16   sergeant back then, I understand you were unhappy about
17   that, correct?
18   A.    Yeah, yes.
19   Q.    What did you do, if anything, about that
20   situation?  Did you continue to --
21   A.    Grin and bear it, went on my way, took the test
22   again.
23   Q.    Did you have an occasion to send any E-mails to
24   Inspector Wright about job openings outside the

1   A.   That was my idea. That's why I took the slot,
2   because I was on the list waiting for somebody to retire,
3   which didn't happen.
4   Q.   Waiting for someone to retire so there could be
5   an opening for sergeant?
6   A.   Yes, another opening.
7   Q.   When you were not promoted to sergeant after that
8   point, did you feel pretty bitter about that situation?
9   A.   No.
10          MS. TASSONE:  Objection as to form.
11  A.   I was unhappy.
12  Q.   And how long did your unhappiness last?
13  A.   Oh, God. I don't know. It comes and goes. I
14  can't honestly answer that question.
15  Q.   Well, I mean, after you were not promoted to
16  sergeant back then, I understand you were unhappy about
17  that, correct?
18  A.   Yeah, yes.
19  Q.   What did you do, if anything, about that
20  situation? Did you continue to --
21  A.   Grin and bear it, went on my way, took the test
22  again.
23  Q.   Did you have an occasion to send any E-mails to
24  Inspector Wright about job openings outside the