# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH A. BOYD, | : |
| Plaintiff, | : |
| | : C.A. No. 05-178 (KAJ) |
| v. | : TRIAL BY JURY DEMANDED |
| CITY OF WILMINGTON | : |
| Defendant. | : |

### AFFIDAVIT OF THOMAS W. ILVENTO

STATE OF DELAWARE   )
                    )  ss
COUNTY OF NEW CASTLE )

I, Thomas W. Ilvento, being duly sworn according to law, hereby depose and say as follows:

1. I am a Professor at the University of Delaware and I serve as the Chair of the Department of Food & Resource Economics and have extensive experience with self-administered surveys.

2. I have reviewed the Revised Plan of the United States District Court for the State of Delaware (hereinafter "the Court") for the random selection of grand and petit jurors, as amended. In addition, I have reviewed the Juror Qualification Questionnaire.

3. According to the Revised Plan, the Jury Plan Judge on his/her initiative or upon recommendation of the Clerk shall determine solely on the basis of information provided on the juror qualification form and other competent evidence whether a person is unqualified for, or exempt, or to be excused from jury service. The Clerk shall enter such determination in the space provided on the juror qualification form. In making such determination the Jury Plan Judge shall

deem any person qualified to serve on grand petit juries of the Court unless he or she does not meet certain qualifications. (*See Revised Plan attached at page 10*).

4. Based on information and belief, the Court arrives at its sample jury pool based solely upon those who complete and mail in the Jury Qualification Questionnaire form.

5. The Juror Qualification Questionnaire is a self-administered mail survey.

6. Based on information and belief, out of approximately 10,000 questionnaire forms that are sent to individuals in New Castle, Kent and Sussex counties only approximately 10 to 12% are completed and returned to the Court.

7. In analyzing the variation in mail response rates, the nonresponse rates for minorities are substantially greater than the nonresponse rates for White nonHispanic. According to a U.S. government study of nonresponse to a single mailing of the 1990 Census of Population, a survey that requires response under penalty of law, nonresponse rates to the mailed Census survey for blacks was 43.4%, which was nearly double the rate for White nonHispanics (22%). David L. Word, *U.S. Census Bureau Who Responds/Who Doesn't? Analyzing Variation in Mail Response Rates During the 1990 Census* (visited October 18, 2006) <http://www.census.gov/population/www/documentation/twps0019.html>. Therefore, this process of selecting jurors based solely upon whether the juror responds to the Jury Qualification Questionnaire form creates a biased sample with minorities being significantly underrepresented in the sample jury pool.

8. When a response rate of 10 to 12% exists, as is apparent in this instance, the risk of obtaining a biased sample with fewer minorities in the sample jury pool greatly increases. As a consequence, the sample is not representative of the community.

9. In order to have a representative sample jury pool, the rate of return for the questionnaire form should be at a rate of 50% or greater to have confidence of a representative sample, especially given the fact that the nonresponse rates for minorities are substantially greater than the nonreponse rates for White nonHispanics.

_____
Thomas W. Ilvento

SWORN TO AND SUBSCRIBED before
this 24th day of October, 2006.

_____
Notary Public