Exhibit 5

United States District Court,
E.D. Pennsylvania.
UNITED STATES of America
v.
Molden David FAISON.
Criminal No. 06-18.
Aug. 23, 2006.

Edson A. Bostic, Defender Association of Philadelphia, Federal Division, Philadelphia, PA, for Molden David Faison.

## *MEMORANDUM AND ORDER*

NORMA L. SHAPIRO, S.J.

*1 Molden David Faison was convicted by a jury of one count of extortion and attempted extortion under color of official right (18 U.S.C. § 1951). Faison, moving for a new trial, alleges improper restriction of his cross-examination of the government's main witness, error by the court in responding to a jury question, and *Brady* violations by the government. The motion will be denied because a new trial is not in the interest of justice: the court did not err in limiting the cross-examination or in instructing the jury; Faison cannot show a *Brady* violation because he was not prejudiced by the government's failure to turn over certain *Brady* material; and the case against Faison was so strong that any error would have been harmless.

### I. FACTUAL AND PROCEDURAL BACKGROUND

During the period relevant to this case, defendant Molden David Faison was a hearing examiner for the City of Philadelphia Bureau of Administrative Adjudication ("BAA"). In that capacity, he heard appeals of parking violations and had the power to reduce or eliminate fines or penalties. In January, 2006, a grand jury indicted him on a single count of obstructing, delaying, and affecting commerce, and attempting to do so, under color of official right, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), by accepting concert tickets in exchange for fixing parking tickets of a company engaged in interstate commerce. [FN1]

FN1. 18 U.S.C. § 1951 reads, in relevant part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens
physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section--

...

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

At trial, the government presented evidence that in August, 2004, John Florio, a cooperating witness, approached Faison to request help fixing tickets for a cooperating plumbing company, Star Plumbing and Heating ("Star Plumbing"). [FN2] Florio told Faison the plumbing company belonged to his cousin. In exchange for tickets to a Prince concert, Faison first scheduled hearings on Star Plumbing's tickets for a particular day, to prevent the company's vehicles from being towed or booted, and later, after receiving the concert tickets, arranged for Florio to meet with him at the BAA to cancel or reduce a number of parking tickets owed by Star Plumbing. In fact, Florio was not associated with Star Plumbing through family ties or otherwise; he was participating in an FBI sting operation and was reimbursed by the FBI for the cost of the concert tickets.

FN2. The government presented evidence that Faison had previously fixed tickets owed on Florio's own vehicles.

In addition to Florio's testimony regarding his encounters with Faison, the government presented recordings of several conversations between Florio and Faison as well as voice mail messages left by Faison for Florio regarding the exchange of concert tickets for leniency on Star Plumbing's parking tickets. [FN3] It also introduced documentary evidence of Faison's reducing or dismissing Star Plumbing parking tickets totaling over $1000.

FN3. The recordings included the following conversations:

8/17/2004:

FLORIO: I just got off the phone with my cousin.

FAISON: Oh did you?
FLORIO: ... I'm on the computer.

FAISON: Ah huh.

FLORIO: What day you said Wednesday right or Thursday for the ... Phil Collins tickets?

FAISON: Ah ... Wednesday.

FLORIO: I'm just making sure cause I'm bookin' them ... right now for you.

...

FAISON: Oh, you're the man. Okay, you got the information?

FLORIO: Yeah.

FAISON: Your brother-in-law? What is it?

FLORIO: Ah it's a Star Plumbing, my cousin the plumber.

FAISON: Yeah, okay.

FLORIO: IT's a PA tags YAP

FAISON: Alright.

FLORIO: 0853.

FAISON: Okay.

FLORIO: There's three of them. He's the one who, he's gonna pay for these tickets.

FAISON: Alright, alright, give me the other one.

...

FLORIO: He has a company, him and his partner.
FAISON: Alright, I'll check and call you right back okay?

...

FLORIO: He's paying for the, for the ... paying for the um Prince concert.

FAISON: Give me 10 minutes. Give me 10 minutes okay?

8/18/06:

FLORIO: And these are gonna be for my cousins, and, you know.... I just got to get him to show that's all cause he's like a real....

FAISON: Yeah, well no, no, see this this is .... this here what I got to do cause I can't do 'em like right then and there ... cause you know I got to, I don't run the place ... but ... they're all scheduled for December ... and ... the Director won't be there next week so I'm gonna try to knock 'em all down next week.

...

FAISON: Yeah, but ... I can't do it the same day you have to do it next week.... [I]t's just a process ... I can't do them the same day cause ... they were all like around me when you called me.

...

FAISON: I can't zero 'em out.

...

FAISON: But I can take off like 80% of it.

...
FAISON: Cause zero, zero, zero ... that, that's too, you know....


The government also presented testimony by Ms. Clorise Wynn, the Executive Director of the BAA, who testified that the BAA regulations prohibit hearing examiners from hearing cases involving people they know, provide for random assignment of cases to hearing examiners, and require that any adjustments to parking tickets be justified. She explained that she routinely checks hearing examiner's dismissal rates for suspicious excess dismissals. The government read into the record excerpts from Faison's testimony before the grand jury in an unrelated case that he knew these and other BAA regulations intended to prevent favoritism and corruption.
*2 Mr. Mitchell Gordon, owner of Star Plumbing, testified that Star Plumbing owned about 12 vehicles at the relevant time; some of the trucks went out of state to service his

business, particularly to Delaware and New Jersey, and the company had dealings with financial and insurance companies from out of state. Star Plumbing was licensed as a business in New Jersey as well as Pennsylvania. He further testified that, under a plea agreement in a separate case, he had agreed to cooperate with the government in this case by accumulating parking tickets on his company's vehicles. The FBI eventually paid for the parking tickets.

FBI Agent Jeffrey Grizzle testified that he supervised the recordings made in the case and that he was next to Florio during the recording of several telephone conversations; he also took custody of the BAA paperwork related to the Star Plumbing tickets that Florio received from Faison during the tape-recorded meetings.

Faison's counsel vigorously attempted to undermine Florio's credibility. He elicited that Florio was a known major drug dealer who stood to gain from his cooperation with the government and that he had repeatedly violated his plea agreement without suffering any consequences. Faison also argued there was an unjust disparity of treatment by the government: Faison, a minor offender, sat at the defense table, while Florio was free. After brief deliberations, the jury found Faison guilty of attempted extortion under the Hobbs Act.

Faison has moved for a new trial.

## II. DISCUSSION
### a. Legal Standard

Federal Rule of Criminal Procedure 33 permits a defendant to move for a new trial and provides the court may grant such a motion "if the interest of justice so requires." Rule 33 motions "are not favored and should be granted only with great caution in the most extraordinary circumstances." United States v. Rhines, 143 Fed. Appx. 478, 484 (3d Cir.2005) (internal quotations and citations omitted). A court should grant a new trial "if it ascertains that the verdict constitutes a miscarriage of justice." Id. A court must grant a new trial on the basis of trial errors only when "the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." United States v. Copple, 24 F.3d 535, 547 n. 17 (3d Cir.1994) (internal quotations and citations omitted).

### b. Limitations on the Cross-Examination of Cooperating Witness John Florio

Faison argues his right to cross-examine witnesses was violated by certain court-imposed limitations on his cross-examination of the main government witness, John Florio. He complains he was wrongly prevented from questioning Florio about: (a) "Florio's extensive and ongoing criminal activity and prior bad acts," particularly criminal acts committed by Florio after the beginning of his cooperation with the government; (b) "details of [Florio's] state arrest for Delivery and Manufacturing of a Controlled Substance, Gun Possession, Endangering the Welfare of his Child, et cetera"; and (3) "the fact that the informant was initially charged federally in a Complaint and Warrant with Possessing and/or Carrying a Weapon in Connection with a Crime of Violence," in addition to the drug charge to which he pleaded guilty. [FN4] He contends "the fact that these many breaches of his cooperation went unsanctioned by the government was relevant to show bias" and motive to testify falsely in favor of the government, and he should have been allowed to examine Florio as to them.

FN4. It is unclear to what extent Faison preserved his objection to the court's rulings on the issues he now raises. At sidebar during cross-examination, defense counsel informed the court he intended to explore "a lot of issues ... concerning illegal activity that he engaged in while he was cooperating with the D.A.'s office and with the Federal Government .... the only issue is that with respect to his cooperation, if he's engaged in continual illegal activity, there are consequences that come into play either from the D.A.'s Office or the Government, and I want to show that he never turned away from cooperation or received any of those penalties." Tr. of Sidebar Excerpts (starting at 10:04 am), 6/6/06, 4:16-5:3. Counsel specifically mentioned the nitrous oxide-related arrest and possible tax evasion, id. at 6:1-4, 8:23; 10:5-7, but did not specifically object to not being allowed to ask about the difference between the charges originally brought in state

court after the 2002 arrest (including, e.g., child endangerment) and the charges brought in federal court after the prosecution was taken over by the federal government; he merely noted the charges were different. *Id.* 7:16-24.

Because of its concern that the jury might be confused as to whether Florio was convicted of all these charges, the court ruled counsel could raise the nitrous oxide issue and point out that Florio's involvement in further criminal activity during his cooperation with the government had no
consequences for him, but the defense had "plenty to go on" without asking about further bad acts such as the hypothetical tax evasion. *Id.* 9:20- 11:6.

During a later sidebar, defense counsel spoke of the initial federal complaint "reference [to] the gun possession"; he then agreed with the prosecutor that although the complaint "references the gun, he was not charged with it." *Id.* 13:14-22.

**\*3** The right to cross-examine witnesses is guaranteed by the Confrontation Clause of the Sixth Amendment. *Davis v. Alaska,* 415 U.S. 308, 315-316 (1974). However, this right is not absolute:
[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. [T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.
*Delaware v. Van Arsdall,* 475 U.S. 673, 678 (1986) (internal quotations and citations omitted). "[W]hether a trial court has abused its discretion in limiting the cross-examination of a witness for bias depends on whether the jury had sufficient other information before it, without the excluded evidence, to make a discriminating appraisal of the possible biases and motivation of the witnesses." *United States v. Chandler,* 326 F.3d 210, 219 (3d Cir.2003) (internal quotations and citations omitted). The "critical question" with respect to the examination of government witnesses who expect to benefit from their testimony is whether the defendant is allowed to inquire about a witness' "subjective understanding of his bargain with the government, for it is this understanding which is of probative value on the issue of bias." *Id.* at 220 (internal quotations and citations omitted). A court must ask whether, if the excluded testimony had been allowed, the jury would have received a "significantly different impression" of the witness' credibility. *Van Arsdall,* 475 U.S. at 680.
The jury was exhaustively informed of Florio's position. On direct examination, Florio admitted that in 2002, he was arrested after Philadelphia police found heroin, cocaine, crack cocaine, and a gun in his possession. Trial Tr. 6/6/06 at 18. The charge was originally brought in state court and the gun charge was dismissed; then the federal government took over the prosecution and entered into a plea agreement. *Id.* Florio testified that before the plea agreement he was facing a 15-year minimum sentence, while the plea agreement required no minimum. *Id.* at 21-22:3. He admitted that at the time of the police search he was a major drug dealer who made a weekly profit of $30,000- $40,000. *Id.* 22:10-12. He also admitted that he made an unauthorized drug deal while he was cooperating with the DEA, which resulted in the end of that cooperation, but that in spite of that misbehavior he continued cooperating with the District Attorney's office. *Id.* 23:19-24: 20. In addition, since then and while cooperating with the District Attorney's office he was been arrested "for nitrous oxide," had registered vehicles in an "older" person's name to save on insurance, and was possibly driving on a suspended license. *Id.* 24:21-25:22, 45:10-46:6.
**\*4** On cross-examination, defense counsel elicited the following additional facts: Florio was awaiting sentencing; Florio had been arrested "a number of times" between 2002, when he had started cooperating with the District Attorney's Office, and the present;

Florio continued to make use of drugs himself and had smoked marijuana within a few days of the trial; before the plea agreement, Florio faced a sentence of ten years (mandatory) to life, while after the plea he could be sentenced to a maximum of 20 years, with no minimum; [FN5] the drug deal that Florio had made while he was cooperating with the DEA involved a kilo of cocaine; it was in violation of his plea agreement with the Government, yet the Government had not, as a result, "[torn] up the agreement." Trial Tr. 6/6/06 at 71:3-5, 81:15-82:4, 86:22-91:19; 91:2-4, 93:13-95:16. Florio was also asked about two state convictions; he denied being convicted of a drug charge in Municipal Court in New Jersey in February, 2004, and admitted being convicted of possession of a weapon for unlawful purpose in East Rutherford, New Jersey (although he disputed this had occurred on August 6, 2003). *Id.* at 84.

FN5. Faison had testified on direct he had faced a 15-rather than ten-year minimum prior to the plea agreement; this variance was not explained.

The jury had sufficient information about Florio's criminal history and relationship with the government to consider his possible motivation and bias; it knew that Florio had a powerful motivation to testify favorably to the government, because he had violated a plea agreement and might lose a very significant reduction in the sentence he faced. [FN6] Questioning on Florio's further bad acts during his cooperation with the government, or on the variance between the initial state and federal charges following his 2002 arrest and the charges to which he eventually pleaded, would not have given the jury a "significantly different impression" of his credibility. *See Van Arsdall,* 475 U.S. at 280. [FN7] Faison was not deprived of his right of confrontation under the Sixth Amendment. [FN8]

FN6. Defense counsel extensively reviewed Florio's prior bad acts and vigorously argued his lack of credibility to the jury during his opening statement and closing argument.

FN7. *See also Chandler,* 326 F.3d 210. There, the Court of Appeals ordered a new trial because the trial judge had limited defendant's cross-examination designed to elicit testimony of a significant sentence reduction for cooperating witness. Faison's case is distinguishable; the jury here was "apprised of the magnitude of [Florio's] stake in testifying against [Faison]" and had "sufficient other information before it ... to make a discriminating appraisal" of his potential bias. *See id.* at 219, 222.

FN8. Faison argues, in the alternative, that the court abused its discretion under Federal Rule of Evidence 608(b). Faison's argument appears to be that the court erroneously excluded the proffered evidence under this Rule (which applies to evidence offered to prove the witness' untruthful character but not to prove bias) instead of weighing it under Rule 402 (providing all relevant evidence is admissible unless otherwise provided) and Rule 403 (providing "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). *See United States v. McNeill,* 887 F.2d 448, 453 (3d Cir.1989) (noting the "tension between the admissibility of evidence under the bias theory and the inadmissibility of the same evidence under the character theory"). In this case, evidence of further bad acts committed by Florio during his cooperation with the government would have been needlessly cumulative as evidence of bias.

**c. Response to the Jury Question**
Faison argues that the court's instruction to the jury, given in response to a written question from the jury, misstated the law and confused the jury.
During deliberations, the jury submitted the following question regarding the element of interstate commerce to the court: "[D]efine clearly in verdict form if obstructed, delayed, and affected commerce are all in one or do each one mean a difference. All in one or prove each individually." Tr. of Charge and Response to Jury Questions, 6/8/2006 at 30-31. [FN9]

FN9. The verdict form read:

On or about August 18, 2004, the defendant, Molden David Faison, obstructed, delayed and affected commerce and the movement of articles and commodities in commerce, and attempted to do so, by extortion, in that the
defendant, Faison, obtained and attempted to obtain property and things of value, that is, concert tickets worth approximately $169, which was not due defendant Faison or his office, from J.F., with J.F.'s consent, under color of official right.

In violation of Title 18, United States Code, Section 1951(a).

Guilty ----- Not Guilty -----


The court convened counsel, read the question, and the following colloquy ensued:
THE COURT: [T]he answer is that it is all together. If it is obstruct, delay or affected. Affected is enough. Do you agree? ...
MR. BOSTIC: It is whether or not they can find one--
THE COURT: Do they have to find separately that he obstructed, delayed and affected commerce. The answer is they don't have to find any of them really. They have to find that he attempted to do so.
*5 ...
MR. BOSTIC: No, they have to find that he attempted to get the bribe, but that would affect--
THE COURT: And that it would affect.
MR. BOSTIC: Right.
THE COURT: But it doesn't have to obstruct, delay and affect.... It is all one.
MR. BOSTIC: Right.
THE COURT: Well I can tell them that.
Tr. of "Excerpt of Charge of the Court" (starting at 3:10 pm), 6/8/2006, 12:24-13:21.
The court then reconvened the jury and answered the question:
Counsel agrees with me to the extent I understand your question, that you don't need to prove each one. So I guess it's all in one. However, you don't need to prove any of them actually because this was an attempt to do so rather than actually having done it. If you'll notice the verdict form ... states the charge which was on or about August 18th, 2004, the defendant, Molden David Faison obstructed, delayed and affected commerce and the movement of articles and commodities in commerce and attempted to do so. It's sufficient if he attempted to do so. So the third element that the Government must prove beyond a reasonable doubt is that the defendant's conduct affected or could have affected interstate commerce.
Tr. of Charge and Response to Jury Questions, 6/8/2006 at 31. No objections were made. Faison now argues this instruction was incorrect and confusing because it could have led the jury to believe that the government had to prove Faison attempted to affect interstate commerce (rather than that he attempted to accept a bribe, and that this act,

had things been as he believed them to be, would have affected interstate commerce). [FN10]

FN10. In the Third Circuit, it is a Hobbs Act violation to commit "attempted extortion which would, if the act were completed, have the effect of obstructing commerce." United States v. Jannotti, 673 F.2d 578, 592 (3d Cir.1982) (internal quotations and citations omitted). It is immaterial that the bribe was not actually paid by the company but by the government as part of a sting. United States v. Stillo, 57 F.3d 553, 559 (7th Cir.1995); see also United States v. Tykarsky, 446 F.3d 458, 465-67 (3d Cir.2006) (use of "attempt" provision in statutes underscores Congress' effort to impose liability regardless of whether the defendant succeeds in committing his intended crime and suggests "impossibility" is not a defense to the crime).

When considering whether jury instructions are proper, courts review "the totality of the instructions and not a particular sentence or paragraph in isolation." United States v. Leahy, 445 F.3d 634, 642 (3d Cir.2006).
Prior to the beginning of deliberations, the court instructed the jury as follows:
To find the defendant guilty, you have to be convinced that the Government has proved the following beyond a reasonable doubt. First, that the defendant, Molden David Faison knowingly obtained or attempted to obtain money or property or something of value from a cooperating plumbing contractor through Cooperating Witness John Florio. Second, that the defendant did so knowingly under Color or [sic] Official Right, as I define that for you in a minute, and that doing so interstate commerce was or would be obstructed, delayed or affected in any way or degree.
...
Now the first element I read to you required obtaining or attempting to obtain property.
...
The third element is that the Government has to prove beyond a reasonable doubt that the defendant's conduct affected or could have affected interstate commerce. Affecting interstate commerce means any action which in any way interferes with[,] changes[,] or alters the movement or transportation of the flow of goods, merchandise, money or other property in commerce between or among the states.... All that's necessary for the Government to prove is that the natural consequences of this extortion might cause an effect on interstate commerce to any degree, however minimal or slight.
*6 ...
Now this statute that we're talking about forbids not just schemes that are successful. But it also prohibits attempts to get a victim engaged in interstate commerce to part with property. An attempt requires that the defendant have the intent to commit a crime, the Hobbs Act violation, and would have committed the crime if the circumstances were as he believed them to be. Therefore, although the concert tickets that were provided to the defendant, if you find they were, may have actually been paid for by the FBI. If you find that the defendant believed the tickets came from a company or an individual engaged in interstate commerce, it's sufficient to find the element has been met. In other words, the Supreme Court has held that Government stings are legal. And things can be what they are not. It's what the defendant believes them to be that matters whether it's true or not.
Tr. of Charge and Response to Jury Questions, 6/8/2006 at 18-23.
While the answer to the jury's question was not as felicitously stated or as clear as the original charge, in the context of the jury instructions as a whole, it is apparent that the jury was told that to prove the third element of the offense the government did not need to prove that there had actually been obstruction, delay, or effect on commerce, but simply that such an effect would have occurred had the facts been as the defendant believed them to be, namely, if defendant had accepted a Prince concert ticket from a plumbing company engaged in interstate commerce in exchange for fixing parking tickets owed by the company. This correctly stated the law.
**d. *Brady* Violation**

The government's cooperating witness, John Florio, was arrested on charges of arson on June 10, 2006, two days after the jury rendered its verdict in this case. Faison argues he was prejudiced by the government's failure to inform him that a warrant for Florio's arrest on these charges was outstanding at the time of trial.

"A valid *Brady* complaint contains three elements: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense." *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir.1991). [FN11] The government concedes that the arson warrant was potentially impeachment material and was wrongly, although inadvertently, withheld. [FN12] The only issue before the court is whether the evidence of the arson warrant was material, i.e., prejudicial to Faison.

FN11. The Supreme Court first announced that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution," in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Later cases established that the duty existed even in the absence of a request and encompassed impeachment evidence. See *United States v. Agurs*, 427 U.S. 97, 107 (1976); *United States v. Bagley*, 473 U.S. 667, 676 (1985).

FN12. The Assistant United States Attorney ["AUSA"] in charge of Faison's case declares the arson warrant was not discovered by her office until Florio was arrested several days after the conclusion of Faison's trial, despite several checks of Florio's criminal records prior to and during trial. She also declares the FBI, Florio, and his attorney also represented to her that they did not know of the warrant until Florio's arrest; a Philadelphia Police Detective explained to her that due to a clerical error the warrant was not entered into any computer systems until after Florio's arrest. A DEA officer knew of the warrant and was advised by a colleague to contact the AUSA, since she had handled Florio's guilty plea in his own criminal case, but the DEA officer did not contact the AUSA until after Florio's arrest. The AUSA also declares no one asked the Philadelphia Police Detective to delay filing charges against Florio, and that the Detective did not know anything about the trial in this case. A prosecution team is charged with knowledge of potential *Brady* material known to other government agencies," *Perdomo*, 929 F.2d at 970; the DEA's knowledge of the warrant is sufficient in this case to create a *Brady* obligation for the government.

*Brady* evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceedings would have been different." *Bagley*, 473 U.S. at 682.

The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. .... [A *Brady* violation is shown when] ... the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*7 *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995).

The government's failure to disclose to Faison the existence of a warrant for Florio's arrest on arson charges did not prejudice Faison's defense because: (1) the existence of the warrant would have been inadmissible impeachment evidence; and (2) even if it had been admitted, it would have been cumulative of other evidence.

Generally, evidence of a prior bad act of a witness may be admitted: (1) under Federal Rule of Evidence 609, if the witness was convicted of the act and other circumstances apply; (2) under Federal Rule 608, "for the purpose of attacking ... the witness' character for truthfulness," if the evidence is "probative of ... untruthfulness"; or (3) to prove bias rather than bad character, subject to the usual Rule 403 weighing. The existence of a warrant for Florio's arrest on arson charges could not have been admitted under Rule 609

because Florio had not been convicted of the crime. Rule 608 would have been equally unavailing because even if the existence of the warrant were somehow evidence that Florio had committed arson, arson is not probative of untruthfulness because it does not involve dishonesty or false statement. Finally, evidence of the state charges of arson would also have been inadmissible to impeach Florio for bias since there was no evidence that the federal government agreed to do anything for Florio with regard to any state prosecutions--and in particular with regard to the state arson charges--in exchange for his testimony. (Indeed, extensive testimony at trial and the text of Florio's plea agreement established that the government had not made Florio any promises of favorable treatment of any kind.) Cf. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (trial court erred in prohibiting all cross-examination regarding the acknowledged fact that the witness' public drunkenness charge had been dropped in exchange for the witness' promise to speak to the prosecutor about the case in which he was testifying). Even if the evidence of the arrest warrant could have been admitted at trial it would have been cumulative of other evidence presented by the defense that Florio was a repeat criminal with dubious morals, who had a significant motivation to testify in a manner favorable to the government to continue enjoying lenient treatment. Considering the weight of testimony and documentary evidence against Faison, including recordings of his own words, the evidence of the existence of an arrest warrant for Florio on arson charges cannot "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See *Kyles*, 514 U.S. at 435. Faison has not established a *Brady* violation.

**e. Interest of Justice**

Even if the court had erred in limiting Faison's cross-examination and in instructing the jury, and considering also the government's failure to fulfill its *Brady* obligations, a new trial may be granted only "in the interest of justice," i.e., when the court "ascertains that the verdict constitutes a miscarriage of justice." Fed.R.Crim.P. 33; *Rhines*, 143 Fed. Appx. 484 (3d Cir.2005).

*\*8* The case against Faison was strong. The most convincing evidence came from Faison himself, in the form of taped telephone conversations and telephone messages. There was sufficient evidence for the jury to find that if things were as Faison believed them to be--i.e., if he had accepted concert tickets from Star Plumbing in exchange for reducing or dismissing its parking tickets-- this act would have affected interstate commerce. The court's confidence in the verdict remains intact.

**III. CONCLUSION**

The defendant's motion for a new trial will be denied because the government's failure to produce all *Brady* material was not prejudicial; the limitations imposed by the court on Faison's cross-examination of Florio did not deprive Faison of his right of confrontation; the jury instructions, taken as a whole, were correct; and it is not in the interest of justice to grant a new trial. An appropriate Order follows.

**ORDER**

AND NOW, this 23rd day of August, 2006, upon consideration of Defendant Molden David Faison's Motion for New Trial and the Government's Response thereto, it is **ORDERED** that:

1. Defendant Molden David Faison's Motion for New Trial (Paper # 36) is **DENIED.**
2. Defendant Molden David Faison's sentencing hearing is scheduled for **Monday, November 13, 2006, at 10 a.m.** in Courtroom 10A.

**Interference with commerce by threats or violence**
*Count One*
E.D.Pa.,2006.
U.S. v. Faison
Slip Copy, 2006 WL 2473640 (E.D.Pa.)