Exhibit 6

```
 1                IN THE UNITED STATES DISTRICT COURT

 2               IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   KENNETH A. BOYD,                      :   CIVIL ACTION
                                           :
 5              Plaintiff,                 :
                                           :
 6        v                                :
                                           :
 7   WILMINGTON POLICE DEPARTMENT,         :
                                           :
 8              Defendant.                 :   NO. 05-178 (KAJ)

 9
                                - - -
10
                          Wilmington, Delaware
11                     Wednesday, October 4, 2006
                      TESTIMONY OF LT. MITCHELL ROCK
12
                                - - -
13
     BEFORE: `HONORABLE KENT A. JORDAN, U.S.D.C.J., AND A JURY
14
                                - - -
15   APPEARANCES:

16
                   MARGOLIS EDELSTEIN
17                 BY:  JEFFREY K. MARTIN, ESQ., and
                        LORI ANN BREWINGTON, ESQ.
18
                             Counsel for plaintiff
19

20                 CITY OF WILMINGTON LAW DEPARTMENT
                   BY:  ROSAMARIA TASSONE, ESQ.
21                      Assistant City Solicitor

22                           Counsel for defendant

23

24
                                      Brian P. Gaffigan
25                                    Registered Merit Reporter
```

Rock - direct

1              - oOo -

2            P R O C E E D I N G S

3        (REPORTER'S NOTE: This is an excerpted

4  transcript. As such, transcription without any deletions

5  will not match page and line numbers of this transcript.)

6                   - - -

7            DEFENDANT'S TESTIMONY

8        ... LT. MITCHELL ROCK, having been placed

9         under oath at 11:46 a.m. as a witness, was

10           examined and testified as follows ....

11                   - - -

12            DIRECT EXAMINATION

13  BY MS. TASSONE:

14  Q.    Good morning, Lt. Rock.

15  A.    Good morning.

16  Q.    Have you ever attended a weekly staff meeting that is

17  held with the Chief, the Inspectors and the other Captains?

18  A.    Yes, ma'am.

19  Q.    And in what capacity did you attend those staff

20  meetings?

21  A.    In my Captain's absence, if he was not able to

22  attend, then I filled in for him.

23  Q.    And Gilbert Howell has testified -- well, let me ask

24  you this. Did you often attend staff meetings?

25  A.    Yes, ma'am.

Rock - direct

1  Q.  Very often?

2  A.  Yes.

3  Q.  Gilbert Howell has testified that at three staff

4  meetings, the Chief stated that he was basing his promotions

5  based upon seniority. Have you ever heard the Chief make

6  that statement at a staff meeting that you attended?

7  A.  No, ma'am, I never have.

8  Q.  The plaintiff has alleged that -- let me go back.

9  I'm sorry. Has the Chief ever made that statement to you

10  directly?

11  A.  No, ma'am.

12  Q.  The plaintiff has alleged that the Chief made a

13  statement again at a staff meeting that he would be

14  promoting William Browne instead of Faheem Akil because

15  William Browne's mother had passed away and he would be

16  unable to sit for the promotional exam. Did you ever hear

17  the Chief ask or make that statement at a staff meeting that

18  you attended?

19  A.  No, ma'am.

20  Q.  Did he ever make that statement to you directly?

21  A.  Not to me directly, no.

22  Q.  Have you ever heard the Chief state that he would

23  never promote Faheem Akil?

24  A.  No.

25  Q.  Plaintiff has also alleged in his complaint that

Rock - direct

1  while the Sergeant's position was open that he was hoping to
2  get that you called him Sgt. Boyd.  Is that true?
3  A.    Yes.
4  Q.    Could you explain why you called him Sgt. Boyd?
5  A.    It was a term of endearment or a well wishing.
6  Mr. Boyd is in my academy class.  I've known him 20 years
7  and I was just wishing him well.
8  Q.    Have you ever done that with any other individual?
9  A.    Numerous times.  Numerous individuals.
10 Q.    Was it meant to indicate that you believed that he
11 was a shoo-in for that position?
12 A.    No, I would have no way of knowing that.
13 Q.    Detective Boyd testified that after Michael Rodriguez
14 or some time after Michael Rodriguez was promoted that you
15 and he had a conversation about the fact he was not
16 promoted.  Do you recall any conversation of that nature?
17 A.    Yes, ma'am.
18 Q.    Could you tell me what you said in that conversation?
19 A.    The conversation that went something like I
20 encouraged him to hang in there.  I said that I thought that
21 he enjoyed his job.  I remembered previously that he enjoyed
22 the job that he currently had and I encouraged him to study
23 hard and put himself in a promotable position the next time.
24 Q.    Did you ever tell him that, hey, you have a cushy job
25 or cushy position in Detectives and you should just ride out

5

Rock - direct

1  the rest of your career?
2  A.     No, that is out of context.  No.
3  Q.     In the statements that you said, did you mean them to
4  be a slap in the face for Detective Boyd?
5  A.     Absolutely not.  To me, it was words of encouragement
6  and a little advice.  That's all.
7           MS. TASSONE:  Nothing further, Your Honor.
8           MR. MARTIN:  Your Honor, may we approach the
9  bench?
10          THE COURT:  Yes.
11          (Conference held at sidebar out of presence of
12 jury.)
13          THE COURT:  Yes.
14          MR. MARTIN:  Your Honor, Lt. Rock is a key
15 player in another racial discrimination case I have.  I just
16 briefed summary judgment in the case and I have found him to
17 make numerous inconsistencies.  And I would like to be able
18 to impeach him with, without mentioning the case, just talk
19 about his use of a word that he uses very frequently.
20          THE COURT:  What word is that?
21          MR. MARTIN:  The word is blank.
22          THE COURT:  What?
23          MR. MARTIN:  Blank.  Your Honor, it is a
24 substitute for the N word and it has been used against my
25 clients repeatedly and he has denied that he has used that.

```
 1                THE COURT:  All right.
 2                MS. TASSONE:  First of all, Your Honor, that is
 3   in dispute with regard to what that word means.  And again,
 4   I asked counsel, before we started this trial, whether he
 5   was going to be bringing in these other cases, and I made it
 6   known to the Court that that was a concern.  I did not ask
 7   this witness anything about race.  I brought him here
 8   because there were specific statements about conversations
 9   he had with the plaintiff.
10                THE COURT:  I got your position.
11                You're going to be confined to the scope of
12   direct.  Whatever marginal utility might be found in the
13   impeaching evidence you are seeking to bring in here is
14   vastly outweighed by the unfair prejudice inherent in trying
15   to drag the N word or any euphemism for it into this case.
16   So you're not to go there.  It's not fair cross-examination
17   in my view under Rule 403.
18                MS. TASSONE:  Thank you, Your Honor.
19                (Conference at sidebar ends.  Proceedings
20   continue in open court.)
21                THE COURT:  You may cross.
22                MR. MARTIN:  Your Honor, I have no questions of
23   this witness.
24                THE COURT:  All right.  You may step down, sir.
25                (Testimony of Lt. Rock ends at 11:53 a.m.)
```