## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KENNETH A. BOYD,           :
:
     Plaintiff,            :
:    C.A. No.  05-178 KAJ
v.                     :    TRIAL BY JURY DEMANDED
:
WILMINGTON POLICE DEPARTMENT,  :
:
     Defendants.          :

### DEFENDANT CITY OF WILMINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A NEW TRIAL

COMES NOW, Defendant City of Wilmington (hereinafter "the City"), by and through undersigned counsel, and respectfully requests that this Honorable Court deny Plaintiff's Motion for a New Trial.  In support of its position, the City offers the following:

On March 22, 2005, Plaintiff Kenneth Boyd filed a Complaint alleging race discrimination and violation of Title VII.  On October 2, 2006, after completion of the voir dire process and jury selection, a trial in this matter commenced before a jury of six (6) jurors and three (3) alternate jurors.  On October 4, 2006, following the conclusion of the trial and deliberations, the jury rendered a unanimous verdict in favor of the City concluding that the City did not intentionally discriminate against Plaintiff when he was not promoted to the rank of sergeant in April, 2004.  Upon Plaintiff's request, the jury was polled after the reading of the verdict.  All nine (9) jurors stated "yes" in response to the Court's question asking whether each juror agreed with the verdict as read.  On October 12, 2006, the Court entered judgment in favor of the City of Wilmington and against Plaintiff on all claims brought pursuant to Plaintiff's Amended Complaint.  On October 26, 2006, Plaintiff filed the within Motion for a New Trial and Incorporated Memorandum of Supporting Points.  The following is the City's Memorandum of Points and Authorities in opposition to

Plaintiff's request for a new trial.

I.    **Plaintiff's challenge of the Revised Plan for the United States District Court for the District of Delaware for the Random Selection of Grand and Petit Jurors under the provisions of the Jury Selection and Service Act of 1968, 28 U.S.C.S. §1861, et seq. is untimely.  Further, Plaintiff's argument that the Court's selection process violates the fair-cross-section requirement of the Act is without merit and contrary to well-established law.**

In his Motion for a new trial, Plaintiff alleges that the Court's jury selection process as embodied in the Revised Plan of the United States District Court for the District of Delaware for the Random Selection of Grand and Petit Jurors, as amended, (hereinafter "the Jury Plan") (Ex. 2 of Pl. Mem.), does not comply with the provisions of the Jury Selection and Service Act of 1968 found at 28 U.S.C.S. §1861, et seq. (hereinafter "the Act").  Specifically, Plaintiff points to section 10 of the Jury Plan, entitled Qualifications for Jury Service, which requires the Clerk of the Court to determine whether an individual is qualified to serve as a juror based on the information provided by the individual on the submitted juror qualification form.  Plaintiff argues that "the sample pool from which juries are selected is not fair and reasonable in relation to the number of minorities, specifically African-Americans, in the community."  (Pl. Mem. p.6)  As such, Plaintiff "has been denied the opportunity of having a petit jury selected at random from a fair cross section of the community..." Id.  Plaintiff bases his argument on a statement made by the Jury Administrator, Mr. John Trickey, to Plaintiff's counsel subsequent to trial that approximately 12% of the juror qualification forms mailed by the Court are returned, and an analysis of the mail response rates of the 1990 Census which concluded that the nonresponse rates for minorities was greater than the nonresponse rates for whites.  Plaintiff argues that the information regarding the Court's jury selection process constitutes "newly discovered evidence" warranting a new trial pursuant to Federal

Rule of Civil Procedure 59.

The Court must deny Plaintiff's Motion for a New Trial for any of the three following reasons. First, the information upon which Plaintiff bases his Motion is not "newly discovered evidence" justifying a new trial, but rather constitutes information that was readily available to him prior to the commencement of trial. Second, Plaintiff's challenge of the jury selection process is untimely under §1867(c) of the Act. Third, Plaintiff fails to establish that the Court's procedure for determining the pool of qualified jurors based upon the returned juror qualification forms is a violation of the fair-cross-section requirement of either the Act or the Sixth Amendment.

Under Federal Rule of Civil Procedure 59, newly discovered evidence may justify a new trial "only if such evidence 1) is material and not merely cumulative, 2) could not have been discovered prior to trial through the exercise of reasonable diligence, and 3) would probably have changed the outcome of the trial." Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991). Plaintiff "bears a heavy burden" as this type of relief "should be granted only where extraordinary justifying circumstances are present." Id. Newly discovered evidence is "evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant." Id.

In this matter, Plaintiff states that the "newly discovered evidence" is the statement by Mr. Trickey that approximately 12% of the mailed jury questionnaire forms from which prospective jurors are selected are returned to the Court. Notwithstanding the fact that the Court's Jury Plan was readily available to Plaintiff's counsel prior to trial, as was Mr. Trickey himself, Plaintiff contends that his counsel only had reason to question whether the jury venire was representative of the community "following the defense verdict entered in this matter and the apparent reluctance of Juror No. 5 to agree with this verdict." (Pl. Mem. p. 3).

Plaintiff's argument strains the bounds of credibility. Contrary to Plaintiff and Plaintiff's counsel's statement that Juror No. 5 spoke "reluctantly" and "very softly," there was no reluctance which could be detected in Juror No. 5's one word answer of "yes." There was no hesitation in her answer, and she spoke loudly enough to be heard across the courtroom. Clearly, had Plaintiff exercised reasonable diligence in researching the Court's jury selection process prior to trial, he would have discovered the same information from Mr. Trickey and could have brought forth his argument for the Court's consideration prior to voir dire as is proper, rather than after judgment is entered against him.

Additionally, the information provided by Plaintiff with regard to Juror No. 5 and her alleged interaction with the other jurors during deliberation should not be considered by the Court. First, Plaintiff does not provide an affidavit from Juror No. 5 herself. Rather, he submits his own affidavit explaining what Jury No. 5 allegedly told him. In this regard, Plaintiff's affidavit is hearsay and should not be considered. United States v. Gegax, 506 F.2d 460, 461 (9th Cir. 1974); Kleinschmidt v. United States, 146 F. Supp. 253, 257 (D. Mass. 1859) (held that a hearsay affidavit is inadequate in a motion for a new trial given the substantial burden placed on a party seeking a new trial). Second, even if Juror No. 5 submitted her own affidavit alleging intimidation by another juror, such influence is a result of intrinsic factors occurring during jury deliberation and is not proper for the Court to consider, nor can it form a basis for Plaintiff's argument that the Court's jury selection procedure violates the fair-cross-section requirement. Luciani v. Adams, 2003 Del. Super. LEXIS 43, *22 (Del. Super. Sept. 23, 2002) (holding that a juror may not impeach her own verdict once the jury has been discharged and post verdict deposition of a juror may occur only where the alleged improper influence was of an "extrinsic" nature, not of an "intrinsic" nature such as discussion

-4-

among jurors and intimidation or harassment of one juror by another), citing <u>Government of Virgin Islands v. Gereau</u>, 523 F.2d 140, 150 (3d. Cir. 1975).  Given that Juror No. 5 did not voice any complaint of undue intimidation during deliberations or during jury polling, this matter should not be considered by the Court.

Further, Plaintiff's challenge of the Court's jury selection procedure is untimely under §1867(c) of the Jury Selection and Service Act and warrants dismissal of his Motion as a matter of law.  Section 1867(c) of the Act states the following:

> (c) In civil cases, before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.

In the present matter, Plaintiff challenges the Court's jury selection procedure under the statutory provisions of the Act.  Plaintiff specifically states his argument as follows: "I. The Court's Procedure for Selecting a Sample Jury Pool Does Not Comply with the Provisions of the Jury Selection and Service Act of 1968, 28 <u>U.S.C.S</u> §1861, *et seq*."  (Pl. Mem. p.2) (see also, Pl. Mem. p.1, "the Court's procedure for selecting a sample jury pool does not comply with the provisions of the Jury Selection and Service Act of 1968, 28 <u>U.S.C.S</u> §1861, *et seq*.").  Given that Plaintiff failed to raise this issue prior to the beginning of the voir dire examination as required by §1867(c), and §1867(c) constitutes the exclusive means by which a civil litigant may challenge a jury on the grounds of nonconformity with the Act, Plaintiff's argument is precluded by law.  <u>Bumpus v. Uniroyal Tire Co.</u>, 392 F. Supp. 1405, 1406 (E.D. Pa. 1975); see also, <u>Anderson v. Federal Express Corp.</u>, 1998 U.S. App. LEXIS 9330, *3-4 (6th Cir. May 5, 1998) (held that plaintiff's fair-cross-

section argument is untimely because he failed to raise the issue until after the jury venire had been excused).

Even if the Court were to consider the merits of Plaintiff's statutory challenge, or determine that Plaintiff posits a constitutional challenge, Plaintiff's fair-cross-section argument still fails.[1] Claims brought under the Act are analyzed using the same standard as a Sixth Amendment fair-cross-section claim. United States v. Weaver, 267 F.3d 231, 236 (3d Cir. 2001), citing United States v. Test, 550 F.2d 577, 584-585 (10th Cir. 1976)(en banc) (Act's fair cross section standard is "functional equivalent of the constitutional 'reasonable representative' standard"). In order to establish a prima facie violation of the fair-cross-section requirement of either the Act or the Sixth Amendment, Plaintiff must demonstrate: "1) the group alleged to be excluded is a 'distinctive' group in the community; 2) the representation of this group in jury venires is not 'fair and reasonable" in relation to the number of such persons in the community; and 3) the under representation is caused by the 'systematic exclusion of the group in the jury selection process.'" Weaver, 267 F.3d at 337, citing Duren v. Missouri, 439 U.S. 357, 364 (1979). In the present matter, Plaintiff cannot establish that the Court's procedure of selecting qualified jurors from the returned juror questionnaires, regardless of the response rate, is a prima facie violation of the fair-cross-section requirement. First, the Act does not impose upon the Clerk of the Court an affirmative duty to compel individuals to respond to juror questionnaires nor a duty to correct low response rates. Second, Plaintiff fails to

---

[1] Although Plaintiff is clearly bringing a statutory challenge against the jury selection process rather than a constitutional challenge, in one sentence found on page 2 of Plaintiff's Memorandum, Plaintiff makes the general statement that "[t]he U.S. Supreme Court has held that in order to establish a violation of the fair-cross-section requirement of the Seventh Amendment..." (Presumably, this is a typographical error, and Plaintiff meant Sixth Amendment rather than Seventh Amendment). However, Plaintiff never specifically states that the Court's jury selection process violates the Sixth Amendment.

present any statistical evidence establishing that African-Americans are underrepesented in the Court's jury venires, or that any alleged underrepresentation is due to systematic exclusion in the selection process.

Sections 9 and 10 of the Court's Jury Plan, entitled "Drawing of Names from the Master Jury Wheel; Completion of Juror Qualification Form" and "Qualifications for Jury Service," respectively, substantially mirror the provisions of §§1864 and 1865 of the Jury Selection and Service Act.  In construing §§1864 and 1865 of the Act, courts have consistently held that these procedures for determining qualified prospective jurors are proper, and the Clerk of the Court has no affirmative duty to compel a response to the juror questionnaire form or to correct low response rates.  Indeed, the Clerk's duty in this regard is discretionary and not mandatory.  United States v. Gometz, 730 F.2d 475, 479-480 (7th Cir. 1984) (holding that the Act includes no requirement that the clerk take measures to correct low response rate so long as it is high enough to generate enough names to staff the required number of juries); United States v. Jenison, 485 F.Supp. 655, 668 (S.D. Fla. 1979)(holding that the provisions of §1864 are discretionary and any failure to require return of completed juror forms cannot constitute substantial non-compliance with the Act); United States v. Armsbury, 408 F. Supp. 1130, 1141-1142 (D. Or. 1976) ("The failure to require return of questionnaires in no way affects the determination of whether a grand jury is drawn from a fair cross section.  In order to make that determination, one need only look at how the qualified jury wheel, from which prospective jurors are drawn, compares with the general populace of the community.") As such, the Court's Jury Plan and the Clerk's procedure for selecting qualified jurors from the returned juror questionnaires does not violate the fair-cross-section requirement of either the Act or the Sixth Amendment, notwithstanding  the response rate.

-7-

Further, Plaintiff fails to demonstrate through reliable statistical evidence that African-Americans are, in fact, underrepresented in the Court's jury venires. Rather, Plaintiff relies on the attenuated assumption of Professor Thomas Ilvento that because a study of the 1990 Census mail response rates showed a greater nonresponse rate for minorities, "this process of selecting jurors based solely upon whether the juror responds to the Jury Qualification Questionnaire form creates a biase sample with minorities being significantly underrepresented in the sample jury pool." (Aff. of Ilvento, Pl. Mem. Ex. 3). The statistical information provided by Professor Ilvento is not sufficient, reliable or relevant to establishing a violation of the fair-cross-section requirement. Rather, it is a conclusory statement with no relation to the issue at hand.

In order to satisfy the second prong of his prima facie case, Plaintiff must provide the Court with a statistical comparison between African-Americans in jury venires and in the community. Weaver, 267 F.3d at 240 n.8 ("[T]he second prong requires a comparison between the representation of the group in jury venires and the number of such persons in the community." The Court further held that the second prong "is, at least in part, a mathematical exercise, and must be supported by statistical evidence."). Indeed, the United States Supreme Court in Duren v. Missouri, 439 U.S. 357, 669 (1979), a case relied upon by Plaintiff, specifically states: "Initially, the defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement." Plaintiff failed to provide this fundamental information, and, as such, has failed to satisfy the second prong of his prima facie case.

Likewise, Plaintiff has failed to establish the third prong of his prima facie case. Specifically, Plaintiff fails to show that any alleged underrepresentation of African-Americans, generally and on

his venire, was due to their systematic exclusion in the selection process. Id. at 366. Plaintiff must demonstrate that the alleged underrepresentation of African-Americans in the final pool of prospective jurors was due to the operation of the Court's Jury Plan. In this regard, Plaintiff cannot simply rely on the alleged low response rates to the juror questionnaires to demonstrate an inherent weakness in the Court's jury selection process. The Third Circuit has held "that where substantial representation is traceable solely to the exclusive reliance on voter registration lists, and the underrepresented group has freely excluded itself quite apart from the system itself, the third prong has not been fulfilled." Weaver, 267 F.3d at 244. Therefore, even if the Court finds that African-Americans are underrepresented in the jury venire, and assuming that Plaintiff is correct that African-Americans have a greater nonresponse rate, then African-Americans have excluded themselves from the jury selection system. This is particularly true given the fact that Plaintiff has failed to point to any evidence of interference with the opportunity of African-Americans to participate in the jury selection process. As such, Plaintiff is unable to establish a systematic exclusion of African-Americans in the jury selection process.

Given the above, Plaintiff has failed to demonstrate a violation of the fair-cross-section requirements of either the Jury selection and Service Act or the Sixth Amendment. As such, Plaintiff has failed to demonstrate "extraordinary justifying circumstances" warranting a new trial.

## II. The Court properly excluded Plaintiff's questioning of Mitch Rock on his use of the word "blank" on the basis of Federal Rule of Evidence 403.

The second basis for Plaintiff's Motion for a New Trial is that the Court erred when it ruled that Plaintiff could not cross-examine Lt. Mitch Rock on his use of the word "blank, " a word Plaintiff contends is a euphemism for the "N word," and alleged contradictory statements by Lt.

Rock with regard to his use of the word "blank." Plaintiff argues that this line of questioning constituted impeachment evidence and would have been highly probative of demonstrating not only the racial bias of this particular witness, but "the jury's overall assessment of the Defendant's witnesses and evidence." (Pl. Mem. p. 9). Plaintiff's argument is without merit.

"Where a contention for a new trial is based on the admissibility of evidence, the trial court has great discretion... which will not be disturbed on appeal absent a finding of abuse." Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 921 (3d Cir. 1986). Contrary to Plaintiff's argument, the Court did not exclude Plaintiff's questioning of Lt. Rock's use of the word "blank" on the basis that it exceeded the scope of direct examination and, therefore, violated Rule 611. Rather, the Court clearly based its decision on Rule 403. "Whatever marginal utility might be found in the impeaching evidence you are seeking to bring in here is vastly outweighed by the unfair prejudice inherent in trying to drag the N word or any euphemism for it into this case. So you are not to go there. It's not fair cross-examination in my view under Rule 403." (Ex. 6 of Pl. Mem., p.6).

The Court's exclusion of this line of questioning was proper under Rule 403 and did not constitute an abuse of discretion for the following reasons: 1) It is contested by Defendant that the word "blank" is a euphemism for the "N word" (see Ex. 1)[2]; 2) Lt. Rock has never stated that he used the word "blank" as a euphemism for the "N word", and Plaintiff fails to specifically point to any such contradictory statements; 3) Plaintiff has never alleged that Lt. Rock called him a "blank"; 4) Lt. Rock was not Plaintiff's supervisor during the time period Plaintiff alleges he was discriminated

---

[2] Exhibit 1 contains affidavits filed in support of Defendant City of Wilmington's Motion for Summary Judgment in Turner v. City of Wilmington, C.A. No. 05-716 (GMS). The affidavits speak to the definition of the term "blank."

against; and 5) Lt. Rock played no part in the promotional process and was not a key witness in the Defendant's case.  Given these considerations, Plaintiff's questioning of Lt. Rock about his use of the word "blank" as a substitute for the "N word" would have been unfairly prejudicial to the Defendant, causing Defendant to conduct a separate trial on this issue, and resulting in confusion of the issues and misleading the jury.

Similar to the present case, other Courts have barred such inflammatory testimony under Rule 403.  See, Joseph v. Publix Super Markets, Inc., 151 Fed. Appx. 760, 769 (11th Cir. 2005) (holding that the admission of the racial slur should have been excluded under Rules 402 or 403 given the temporal remoteness of the racial slur and the fact that it was uttered by a person who played no role in the transfer decision); Figures v. Board of Public Utilities of the City of Kansas City, 967 F.2d 357, 360-361 (10th Cir. 1992) (holding that the trial court properly barred testimony concerning racial comments by defendants under Rule 403 when plaintiff could not link the comments to personnel actions of hiring, firing and promoting).   Additionally, Plaintiff's argument that this line of questioning would have been highly probative to "the jury's overall assessment of the Defendant's witnesses and evidence" is exactly the reason why the Court in Joseph held that the admission of the racial slurs by a person who did not participate in the actionable employment decision had a substantial prejudicial effect.  "The admission of the racial slurs may have caused the jury to infer that the decision makers at Publix were biased against African-Americans." Joseph, 151 at 769.

The Third Circuit has stated that a party is guaranteed "only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the [party] might wish." Douglas v. Owens, 50 F.3d 1226, 1230 (3d Cir. 1995).  Further, trial courts are required to "strike a balance between the opportunity to cross-examine and the need to prevent

repetitive or abusive cross-examination... Thus the district court may properly exercise its discretion in this area by imposing reasonable limits on the scope of cross-examination, weighing such factors as undue prejudice, relevancy, and delay due to repetition." Id.   In the present matter, the Court properly barred Plaintiff's cross-examination of Lt. Rock on the use of the word "blank" under Rule 403.  As such, no error was committed by the Court.  Further, even if the Court's decision to bar such questioning could be construed as error, the Court's decision was not so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice given the fact that Lt. Rock was not Plaintiff's supervisor during the time period Plaintiff alleges he was discriminated against; Lt. Rock played no part in the promotional process; and Lt Rock was a minor witness in the Defendant's case who, contrary to Plaintiff's assertion, did not offer evidence regarding the issue of whether Plaintiff was discriminated against or the criteria used by Chief Michael Sczcerba in his promotional decisions.  (See, Ex 6 of Pl. Mem., pp. 2-5).

Given the above, Plaintiff's Motion for a New Trial on the basis of trial error must be denied.


  /s/ Rosamaria Tassone
Rosamaria Tassone, Esquire (I.D. #3546)
First Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
Attorney for Defendant City of Wilmington