LEXSEE 1998 US APP LEXIS 9330

**BOYD E. ANDERSON, Plaintiff-Appellant, v. FEDERAL EXPRESS CORPORATION; MIKE MURPHY, in his capacity as operations manager; BOBBY NEWELL, in his capacity as senior manager, Defendants-Appellees.**

No. 96-6723

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*1998 U.S. App. LEXIS 9330*

May 5, 1998, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *1998 U.S. App. LEXIS 19689.*

**PRIOR HISTORY:** Eastern District of Tennessee. 95-00204. Phillips(M). 11-21-96.

**DISPOSITION:** Affirmed.

**COUNSEL:** BOYD E. ANDERSON, Plaintiff - Appellant, Pro se, Knoxville, TN.

For FEDERAL EXPRESS CORPORATION, Defendant - Appellee: Martin K. LaPointe, Kaplan & Begy, Chicago, IL.

For FEDERAL EXPRESS CORPORATION, Defendant - Appellee: Pamela D. Pitts, Federal Express Corporation, Memphis, TN.

For MIKE MURPHY, BOBBY NEWELL, Defendants - Appellees: Kevin M. Dorris, Wimberly, Lawson & Seale, Knoxville, TN.

**JUDGES:** Before: MERRITT, NORRIS, and WALLACE *, Circuit Judges.

> * The Honorable J. Clifford Wallace, United States Circuit Judge for the Ninth Circuit, sitting by designation.

**OPINION:**

ORDER

Boyd Anderson appeals from a district court order denying his motion for a new trial following a jury verdict in favor of the defendants in Anderson's employment discrimination [*2] action filed pursuant to *42 U.S.C. § 2000e-5.* The case has been referred to a panel of the court pursuant to Rule 9(a), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. *Fed. R. App. P. 34(a).*

Seeking monetary relief, Anderson, proceeding through counsel, sued his former employer and two of its employees, alleging that the defendants subjected him to a racially hostile work environment. Upon consent of the parties, the case was transferred to a magistrate judge for trial. Following a trial, the jury returned a verdict in favor of the defendants. Anderson's counsel filed a motion for a new trial under *Fed. R. Civ. P. 59*, which the district court denied as meritless. In this timely appeal, Anderson, now proceeding pro se, argues that: 1) the jury was not composed of a fair cross-section of the community; 2) the district court improperly excluded from evidence a list of racial jokes disseminated by co-employees; 3) the district court improperly admitted evidence of Anderson's drug use; and 4) the jury's verdict was not based on sufficient evidence.

Upon review, we conclude that the district court properly denied Anderson's [*3] motion for a new trial. This court reviews the denial of a Rule 59 new trial motion for an abuse of discretion. *Powers v. Bayliner Marine Corp., 83 F.3d 789, 796 (6th Cir.), cert. denied, 136 L. Ed. 2d 375, 117 S. Ct. 481 (1996).* An abuse of discretion occurs when this court has a definite and firm conviction that the trial court committed a clear error of judgment. *Id.* The trial court should deny a motion for a new trial if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different

conclusion if he were the trier of fact. *Id.*

Anderson's argument that the jury was not composed of a fair cross-section of the community is without merit. While a jury pool must be chosen at random from a fair cross-section of the community, *see 28 U.S.C. § 1861,* Anderson's claim must fail because he does not allege that any underrepresentation in the jury pool is due to the systematic exclusion of blacks from the jury selection process. *See Floyd v. Garrison, 996 F.2d 947, 949 (8th Cir. 1993).* To the extent that Anderson is raising an equal protection challenge to the composition of the jury, he did not raise this [*4] argument until after the jury venire had been excused and, therefore, his Fifth Amendment challenge to the jury's racial composition is untimely. *Morning v. Zapata Protein (USA), Inc., 128 F.3d 213, 216 (4th Cir. 1997).*

We also conclude that the district court did not abuse its discretion in excluding from evidence lists of racial jokes disseminated by co-employees and admitting evidence of Anderson's drug use. *See Douglass v. Eaton Corp., 956 F.2d 1339, 1344 (6th Cir. 1992).*

Lastly, Anderson has not preserved for review his challenge to the jury's verdict. Although Anderson argues that the jury's verdict was not supported by substantial evidence, he did not raise this argument in his motion for a new trial. Consequently, he has not preserved the argument for review on appeal. *See Dixon v. Montgomery Ward, 783 F.2d 55, 55 (6th Cir. 1986).* Further, he has not provided this court with a copy of the trial transcript and, therefore, we cannot review his challenge to the sufficiency of the evidence. *See Hawley v. City of Cleveland, 24 F.3d 814, 821 (6th Cir. 1994).*

Accordingly, this court affirms the district court's judgment. Rule 9(b)(3), Rules of the Sixth Circuit. [*5]

LEXSEE 2003 DEL SUPER LEXIS 43

ALEXANDER LUCIANI and CONNIE LUCIANI, individually and as next friend of ZACHARY G. LUCIANI, a minor, Plaintiffs, v. DIANE A. ADAMS, D.O., and BAYSIDE HEALTH ASSOCIATION, CHARTERED, Defendants.

C.A. No. 99C-06-185 CHT

SUPERIOR COURT OF DELAWARE, NEW CASTLE

*2003 Del. Super. LEXIS 43*

September 23, 2002, Submitted
February 6, 2003, Decided

**SUBSEQUENT HISTORY:** [*1] Amended February 10, 2003. *Affirmed by Adams v. Luciani, 2003 Del. LEXIS 587* (Del., Dec. 2, 2003)

**DISPOSITION:** Dr. Adams' motion for judgment notwithstanding verdict, or, in alternative new trial denied.

**COUNSEL:** Wayne A. Marvel, Esquire, and James J. Maron, Esquire, MARON & MARVEL, P.A., Wilmington, DE, for the Plaintiffs.

Sherry Ruggiero Fallon, Esquire, Tybout, Redfearn and Pell, Wilmington, DE, for Defendant, Diane A. Adams, D.O.

**JUDGES:** Toliver, Judge.

**OPINION BY:** Toliver

**OPINION:**

NON-ARBITRATION CASE TRIAL BY JURY OF 12 DEMANDED

**AMENDED OPINION AND ORDER**

On the Defendant Diane A. Adams, D.O.'s Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for New Trial

**TOLIVER, JUDGE**

Presently before the Court is the Defendant Diane A. Adams, D.O.'s Motion for Judgment Notwithstanding the Verdict, or, in the Alternative for New Trial, brought pursuant to Superior Court Civil Rules 50 and 59. The Plaintiffs, Alexander and Connie Luciani, have opposed that motion. That which follows is the Court's resolution of the issues so presented.

**FACTS AND PROCEDURAL POSTURE**

On March 1, 1998, Plaintiff Connie Luciani, in her fortieth week of pregnancy, was admitted to Milford Memorial Hospital in labor. Her treating physician on that [*2] date, as well as throughout her pregnancy, was Dr. Adams. During the course of her labor, Mrs. Luciani was intermittently placed on a fetal monitor to track the progression of her labor. n1 Between 3:20 AM and 5:40 AM on March 2, 1998, the fetal monitoring strip showed abnormalities that indicated possible fetal distress. Nurse Pat Brenneman called Dr. Adams at approximately 6:10 AM. There is some dispute over what Nurse Brenneman told Dr. Adams during that phone call. The defense claims Nurse Brenneman testified that she did not discuss specific monitor findings with Dr. Adams, saying only that the monitor had been removed at Mrs. Luciani's request, and that Mrs. Luciani was doing fine. The Plaintiffs argue that the witness testified that it would have been her practice to inform Dr. Adams of the monitor irregularities and any steps taken to address them.

> n1 Dr. Adams' ordered that Mrs. Luciani be placed on the fetal monitor for one hour after the administration of Cervidil, a drug designed to aid in the dilation of the cervix, and then as needed. November 29, 2001 Tr. Transcript at 25.

[*3]
Regardless of what was said by Nurse Brenneman, Dr. Adams arrived at the hospital at 8:08 AM. n2 The fetal monitor was reattached to Mrs. Luciani and Zachary Luciani was delivered at 8:55 AM. The delivery followed more distressed monitor readings between the time Dr. Adams arrived and 8:45 AM. Shortly after his birth, it was determined that Zachary was afflicted with perinatal asphyxia n3 and encephalopathy n4, and was in respira-

tory distress. He was also experiencing severe birth depression and transient seizures. Zachary suffers at present from severe brain damage and related disabilities. There is no dispute as to the nexus between those injuries and the events associated with Zachary's birth.

> n2 Def.'s Mot. at 7.
>
> n3 An inadequate intake of oxygen just before, during or soon after birth.
>
> n4 A general term for any degenerative disease of the brain.

The Plaintiffs brought the instant malpractice action against Dr. Adams, Dr. Albert H. French II, n5 Bayside Health Association and Milford Memorial Hospital [*4] ("Milford Hospital") on June 18, 1999, alleging, *inter alia*, that negligence by the Defendants caused Zachary's injuries. Trial began before a jury on November 14, 2001. A total of eighteen witnesses were presented. As might have been expected, the issues of liability and damages sought by the Plaintiffs were hotly contested by counsel as well as the expert witnesses presented by each side.

> n5 The parties stipulated and agreed on June 26, 2001 that Dr. French would be dismissed as a defendant.

In support of the Plaintiffs' case, Dr. Marvin Krane testified that the March 2 fetal monitoring strips gathered between 3:20 AM and 5:40 AM showed abnormalities such that a nurse should have alerted Dr. Adams to the strips' findings. Had she done so, Dr. Krane opined, the receipt of that information would have compelled Dr. Adams to come to the hospital immediately to attend to Mrs. Luciani. Dr. Adams would have then observed that the delivery "ripening" process was not working and would have ordered that a cesarean [*5] section be performed. In addition, Dr. Krane testified that Dr. Adams should have ordered continuous monitoring of Mrs. Luciani from the time of her admission since she was on Cervidil, and that such monitoring would have led to earlier identification of the sudden event that led to the injuries suffered by Zachary.

Dr. Charles Bean testified on behalf of the Plaintiffs that the fetal strips showed that prior to 5:40 AM Zachary had suffered no injury. Had a cesarean section been performed at that point in time, Zachary would not have been born with his present disabilities. However, Dr. Bean acknowledged that even had the sudden, acute asphyxia that caused Zachary's distress at 5:40 AM been immediately detected by a fetal monitor, during the lapse of time attributable to preparations for an emergency cesarean, approximately thirty minutes, some unavoidable brain damage would have occurred absent any negligence by Dr. Adams.

As is the case with most litigation, counsel for the Defendants and the Plaintiffs attempted to obtain concessions from opposing witnesses, obtain favorable evidentiary rulings, and/or engaged in similar activities. Those efforts were met with objections, proffers [*6] as to what the evidence might have been or related tactics depending upon the circumstances. At several points during the trial, the Court felt it was appropriate, in and out of the presence of the jury, to call counsel to sidebar to make rulings, instruct and/or admonish concerning conduct or evidence that was about to be put before the jury. n6

> n6 Indeed, the Court advised counsel for the Plaintiffs that a mistrial could result on at least one occasion if the conduct in question persisted. However, the activities complained of either did not continue or were resumed in an acceptable manner. The Court is compelled to point out that counsel for the Defendants received admonitions as well concerning questions and/or tactics, e.g. their portrayal of Plaintiffs' counsel's interaction with Dr. Bean and the promulgation of his reports.

For present purposes, the conduct in question related to queries posed by Plaintiffs' counsel in three areas. The first concerned the impact of Zachary's injuries on the Plaintiffs' [*7] religious convictions. The Court, *sua sponte*, interrupted Plaintiffs' counsel and ordered that the subject be avoided before any response was elicited. n7 The second set of questions involved whether the Plaintiffs had anticipated and found it acceptable that Zachary would be a ward of the state for the rest of his life. The defense objected and the Court sustained that objection. The third area concerned the form of questions propounded to defense experts during cross examination relative to the opinions that they were offering. In response to an objection by the defense, the Court instructed counsel for both sides as to the form and manner of the questions to be directed to the witnesses. No instructions, curative or otherwise, were given to the jury following each incident. The only reference made was in the instructions given at the close of the case. n8

> n7 The Court's recollection differs from that of counsel for the defense as to who interrupted Plaintiffs' counsel. However, the Defendants do not appear to argue that the witness answered the offending query.

Case 1:05-cv-00178-SLR    Document 122-3    Filed 11/09/2006    Page 5 of 9

Page 3
2003 Del. Super. LEXIS 43, *7

n8 The relevant language reads as follows: "At times throughout this trial, I have been called upon to pass on the question of whether or not certain evidence must be properly admitted. It is the duty of a lawyer to object to evidence which she or he believes may not properly be offered and you should not be prejudiced in any way against a lawyer who makes objections or the party she or he represents. You are not to be concerned with the reasons for such rulings and are not to draw any inferences from the rulings. Whether evidence is admissible is purely a question of law. In admitting evidence to which an objection is made, I do not determine what weight should be given to such evidence, nor do I pass upon the credibility of the witnesses. Any offer of evidence that has been rejected by me, you of course, may not consider. As to any questions to which an objection was sustained, you must not speculate upon what the answer might have been." Luciani v. Bayside Health, C.A. No. 99C-06-185, Jury Instructions at 24.

[*8]

Two other events warrant reference and discussion.

The first involves the Plaintiffs' attempt to elicit expert testimony from the uncle of Zachary, Dr. Gerald Luciani. At the time of the trial, Dr. Luciani was on active duty and held the rank of major in the United States Air Force. The Plaintiffs requested that the Court allow them to call him as a expert witness. The defense objected and the Court sustained that objection based upon lack of prior notice. However, the Court did allow, over objection by the Defendants, Dr. Luciani to appear in uniform since he was on active duty and that was what he wore when he was at work.

The second took place on December 3, and involved what was reported to the Court as a verbal confrontation between two female jurors during the course of the deliberations. Other members of the jury intervened, order was restored and the deliberations proceeded without further incident. The Court was notified and in turn notified counsel. Neither participant nor any member of the jury complained or asked the Court to take any action. Nor was there indication that the incident was the result of any outside influence or improper conduct by anyone regardless of [*9] whether they were associated with the trial. As a result, the Court determined that no further action was necessary.

The jury subsequently returned a verdict in favor of the Plaintiffs. It found that both Dr. Adams and Milford Hospital were each fifty percent negligent and that negligence proximately caused Zachary's injuries. It awarded damages to the Plaintiffs as a result totaling $4,000,000 against both Defendants. n9

> n9 Because of the jury's allocation of negligence equally between the Defendants, each Defendant would be responsible for $2,000,000.

In support of her motion, Dr. Adams contends that she cannot be held liable for any negligence that occurred prior to her arrival at the hospital at 8:08 AM on March 2 and that the Plaintiffs failed to meet their burden of proof that all of Zachary's injuries were the result of the Defendants' negligence. Furthermore, she claims that she is entitled to a new trial because the verdict was against the weight of the evidence and was unfairly based upon the cumulative [*10] prejudicial effects of juror misconduct, improprieties on the part of Plaintiffs' counsel and the late settlement agreement of co-defendant Milford Hospital.

As might be expected, the Plaintiffs insist that Dr. Adams' responsibility for Zachary's condition began with the negligence of her written orders on March 1, and was perpetuated by her failure to come to the hospital at 6:10 AM on March 2. The Plaintiffs protest that they have demonstrated Zachary's injuries and the accompanying damages to the extent required by Delaware law and that Dr. Adams was not prejudiced by Plaintiffs' counsel's behavior, juror misconduct n10, or the Plaintiffs' settlement with Milford Hospital.

> n10 In addition, the Plaintiffs argue that Dr. Adams is barred from inquiring into "intrinsic" jury deliberations (discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict) via deposition, or any other means. *See Thompson v. Papstavros, 729 A.2d 874 (Del. Super. 1998)*. Dr. Adams seeks to have the Court depose one of the jurors involved in the aforementioned altercation.

[*11]

**DISCUSSION**

**Motion for Judgment Notwithstanding the Verdict**

When considering a motion for a judgment notwithstanding the verdict, the Court must presume that the jury verdict is correct. The Delaware Supreme Court permits interference with jury verdicts only with great reluctance. n11 The trial judge does not weigh the evidence. Instead, the Court must consider the evidence in the light most favorable to the non-moving party. n12 If the facts and inferences so considered compel reasonable persons to reach just one conclusion – that the moving party is en-

Case 1:05-cv-00178-SLR   Document 122-3   Filed 11/09/2006   Page 6 of 9

Page 4
2003 Del. Super. LEXIS 43, *11

titled to judgment – the motion will be granted. n13 If, however, the jury verdict is supported by the evidence, it must be upheld. n14

> n11 *Burns v. Coca-Cola Bottling Co.*, Del. Supr., 224 A.2d 255, 256 (1966).
>
> n12 *Delaware Electric Cooperative, Inc. v. Charles H. Pitts, Jr.*, 633 A.2d 369 (Del. 1993); *Mercedes-Benz v. Norman Gershman's*, 596 A.2d 1358 (Del. 1991) and *McClosky v. McKelvey*, Del. Supr., 54 Del. 107, 174 A.2d 691, 693 (1961).
>
> n13 *Eustice v. Rupert*, 460 A.2d 507, 508-9 (Del. 1983); and *Haveg Corp. v. Guyer*, 226 A.2d 231, 233 (Del. 1967).

[*12]

> n14 *Gannett Co., Inc. v. Re*, 496 A.2d 553, 557 (Del. 1985).

Dr. Adams' motion that she is entitled to the entry of a judgment as a matter of law regarding the Plaintiffs' claims that she failed to timely deliver Zachary by cesarean section, consists of two arguments. Her initial contention is that she cannot be held liable for any negligence that occurred prior to her arrival at the hospital. Dr. Adams then argues that the Plaintiffs have failed to meet "their self-imposed burden" of proving that all of Zachary's injuries proximately resulted from negligent treatment, presumably by the Defendants. For these reasons, she contends that the jury verdict is fatally flawed. The Court does not agree.

In making her first argument, Dr. Adams ignores the fact that the Plaintiffs alleged and introduced evidence in support of their claim that she was negligent in the care and/or treatment of Mrs. Luciani from the time she was admitted on March 1, particularly after the introduction of Cervidil. Dr. Adams also appears to ignore the dispute concerning exactly what Nurse Brenneman told her [*13] regarding the fetal monitoring strips read prior to Nurse Brenneman's 6:10 AM telephone call to Dr. Adams on March 2, and whether Dr. Adams should have come to the hospital to attend to Mrs. Luciani at that point.

Viewing the evidence in a light most favorable to the non-moving party, i.e., the Plaintiffs, the jury could have reasonably concluded that Dr. Adams deviated from the required standard of medical care when she ordered that Mrs. Luciani be monitored for only an hour, and then as needed. Similarly, based upon the testimony presented, there was a sufficient basis upon which the jury could have reasonably believed that Nurse Brenneman would have adhered to her normal practice of informing the doctor of any irregularities in fetal monitoring strips. As a result, the jury could have gone on to conclude that Dr. Adams was negligent in failing to return to the hospital to care for Mrs. Luciani before she actually did so.

The second argument regarding the alleged failure by the Plaintiffs to meet what Dr. Adams claims as "their self-imposed burden of proof" is equally unpersuasive.

In terms of the evidence presented, the experts produced by the Plaintiffs acknowledged that some [*14] degree of brain damage would have occurred between the 5:40 AM onset of asphyxia and the time at which an emergency cesarean section could be performed. This would hold true regardless of any negligence by Dr. Adams. As a result, Dr. Adams argues that the "all or nothing" damages model the Plaintiffs presented during trial is fatally flawed because it did not contemplate the element of unavoidable injury mentioned by the Plaintiffs' experts. The Plaintiffs respond that Delaware law does not require a precise damages model for injuries like those suffered by Zachary and that the jury properly assessed the damages proximately caused by the negligence of each Defendant. This Court is inclined to agree.

The Defendant's argument in this regard is interesting but fails in the absence of any legal authority in support thereof. Moreover, although some percentage of Zachary's injuries may not have been attributable to any negligence by either of the Defendants, it cannot be presumed that the jury did not consider that possibility during their deliberations. Indeed, given the instructions concerning assessment of any damages to be awarded if one or both of the Defendants were found to have [*15] been negligent, and the jury's actual verdict apportioning liability and damages equally between the Defendants, the opposite seems to hold true. n15

> n15 *Luciani v. Bayside Health*, C.A. No. 99C-06-185, Jury Instructions at 13, 18 and 28-30.

The jury was told that the Plaintiffs were seeking compensation for injuries proximately caused by the negligence of the Defendants. They were instructed to award damages to the Plaintiffs in an amount which would compensate them if they found that the Plaintiffs had in fact been so injured, nothing more or less. Again, that is what they apparently did. To the extent that the Plaintiffs submitted evidence of damages attributing all of Zachary's injuries to the negligence of the Defendants and there was evidence to support a contrary conclusion, at least in part, is not a basis for granting a judgment notwithstanding the verdict in favor of Dr. Adams. At most it signifies that the jury could base a reduction in the amount of the damages

Case 1:05-cv-00178-SLR    Document 122-3    Filed 11/09/2006    Page 7 of 9

Page 5
2003 Del. Super. LEXIS 43, *15

claimed by the Plaintiffs. And, nothing [*16] has been suggested by Dr. Adams that the amount or circumstances of the award indicates that the jury failed to consider all of the evidence and make the appropriate award. No matter how the situation is viewed, there was a reasonable basis in fact and in law upon which the jury could reasonably have premised its verdict. Admittedly, the case was close, but that is not enough to invalidate the verdict which the jury rendered. Dr. Adams is therefore not entitled to the entry of a judgment notwithstanding the verdict.

## Motion for New Trial

Alternatively, Dr. Adams argues that the Court should vacate the jury's verdict and grant a new trial. A request for a new trial serves an entirely different purpose than a motion for a judgment notwithstanding the verdict, and is subject to a different standard. n16 Superior Court Civil Rule 59 provides that a new trial may be granted for "any of the reasons for which new trials have heretofore been granted in the Superior Court." n17 When reviewing a motion for new trial, the jury's verdict is entitled to "enormous deference". n18 A jury verdict should not be disturbed unless it is "manifestly and palpably against the weight of the evidence [*17] or for some reason, or a combination of reasons, justice would miscarry if it were allowed to stand." n19 The Court interferes with a jury's verdict on damages only with great reluctance, n20 and Delaware Courts have been known to uphold jury verdicts that award no damages, even where liability is uncontested. n21 Finally, a motion for a new trial is addressed to the sound discretion of the trial court, which may set aside the verdict as contrary to the preponderance of the evidence although a directed verdict or judgment notwithstanding the verdict is not justified. n22 In support of her motion in this regard, Dr. Adams raises four contentions that, when viewed cumulatively, purportedly entitle her to the relief sought.

n16 *McCloskey v. McKelvey, 54 Del. 107, 174 A.2d 691, 693-94,* 4 Storey 107 (Del. Super. 1961).

n17 *Lacey v. Beck, 52 Del. 526, 161 A.2d 579, 580,* 2 Storey 526 (Del. Super. 1960).

n18 *Young v. Frase, 702 A.2d 1234, 1236 (Del. 1997)* (citing the Delaware State Constitution, Article IV § 11(1)(a)).

n19 *54 Del. 107, 174 A.2d 691, 693,* 4 Storey 107 (Del. 1961).

[*18]

n20 *Burns v. Del. Coca-Cola Bottling Co., 224 A.2d 255 (Del Super. 1966).*

n21 *See Vicks v. Curtin, 1999 Del. Super. LEXIS 453.*

n22 *Cumens v. Stout, 1990 Del. Super. LEXIS 56 at *4.*

First, she reiterates that the jury verdict was against the great weight of the evidence. That contention must be summarily rejected. Dr. Adams cites to the expert testimony put forth by the Plaintiffs but does not state how or why the evidence in support of her case trivializes that presented by the Plaintiffs. Most importantly, there was substantial evidence to support the jury's verdict in the form of medical and other expert testimony, as well as testimony from lay witnesses. The jury apparently chose to accept that proffered by the Plaintiffs over that presented by the Defendants, and the Court's function is not to substitute its judgment for the judgment of the jury.

Second, Dr. Adams claims she was unfairly prejudiced by improper statements by the Plaintiffs' counsel. She points to comments by Plaintiffs' counsel on testimony given by certain [*19] witnesses, references to religious convictions held by the Plaintiffs, and a general attitude of animosity toward the Defendants. The cumulative effects of these charged improprieties is alleged to have unfairly prejudiced the jury against her.

Dr. Adams cites an alleged two-step test promulgated in Hughes v. State n23 for determining whether comments by counsel warrant a new trial. She identifies the first step as determining whether the statements were improper, and the second step as determining whether any of the improper statements prejudiced the rights of the complaining party. More specifically, Hughes addressed the impropriety of a prosecutor's remarks in a criminal trial setting. The Delaware Supreme Court held that the issue to be determined was "whether the remark 'prejudicially affected (the) substantial rights of the accused.'" n24 To determine the prejudicial effects of the prosecutor's remark, the Hughes Court stated that the trial courts should look to such factors as "'the closeness of the case, the centrality of the issue affected by the (alleged) error, and the steps taken to mitigate the effects of the error.'" n25 In Scott v. State, the Delaware Supreme [*20] Court held that the prompt giving of curative instruction as requested by counsel usually negates any possible prejudice aroused in jury's mind by opposing counsel's comments. n26

n23 *Hughes v. State, 437 A.2d 559, 571 (Del. 1981).*

n24 Id., citing *Sexton v. State, 397 A.2d 540, 544 (Del. 1977), rev'd in part on other grounds.*

n25 *437 A.2d at 571* citing *Dyson v. United States, 418 A.2d 127, 132 (D.C. App. 1980)*.

n26 *1992 Del. LEXIS 494* at *13.

In the instant case, though some of the comments by Plaintiffs' counsel may have been unnecessarily acerbic, sarcastic and/or bombastic, they occurred during the course of the heat of the litigation and generally in response to some comment, tactic or ploy by the defense. The comments were addressed by the Court out of the presence of the jury on November 27, 2001, at which time the Court warned Plaintiffs' and Defendants' counsel both to be mindful of their remarks and/or [*21] actions. n27 Counsel for both sides agreed to do so. Dr. Adams' counsel did apply for a curative instruction to the jury regarding a particular comment made by the Plaintiffs' counsel, but the Court indicated that it would instead generally instruct the jury as to the salient issues they should consider in their deliberations. n28 When viewed in the context of a hotly contested and emotionally charged trial, particularly one in which both sides were prone to some excesses in zealously advocating the interests of their respective clients, the Court finds that the comments by Plaintiffs' counsel were not outside the bounds of professional reasonableness. As a result, the Court cannot conclude that the cumulative effect of Plaintiffs' counsel's remarks prejudicially affected Dr. Adams right to a fair trial.

n27 November 27, 2001 Tr. Transcript at 32-34.

n28 Id.

Dr. Adams' third argument in support of her motion for new trial is that juror misconduct, reportedly in the form of a confrontation between two [*22] jurors, may have played some part in the verdict. Dr. Adams requests that this Court depose the juror who was allegedly confronted to determine whether that dispute affected her vote, and, in turn, prejudiced the fairness and integrity of the judicial process.

Dr. Adams correctly identifies two long-standing rules under Delaware law. The first is that a juror generally may not impeach her own verdict once the jury has been discharged. n29 The other postulates that a post-verdict deposition of a juror may occur only where the alleged improper influence was of an "extrinsic" nature. n30 Extrinsic factors include exposure of jurors to news items about the matter, consideration by the jury of extra record facts about the case, communications between third parties and jurors relevant to the case, and pressures or partiality on the part of the Court. n31 Alternatively, intrinsic factors include discussion among jurors and intimidation or harassment of one juror by another. n32

n29 *McLain v. General Motors Corp., 586 A.2d 647, 649-50 (Del. Super. 1988)*.

n30 *Id. at 649-652*.

[*23]

n31 *Id. at 652*, citing *Government of Virgin Islands v. Gereau, 523 F.2d 140, 150, 12 V.I. 212 (3d. Cir. 1975)*.

n32 Id.

It is readily apparent that the confrontation between the two jurors in this case is intrinsic in nature. This Court is loath to make a special exception for an investigation into the roots of the argument, despite Dr. Adams' insistence that the nature of the confrontation here is distinguishable from the situation presented in McClain. As Dr. Adams noted in her opening brief, the juror did not voice any complaint of undue intimidation to the Court during deliberations or during jury polling. As a result, the Court declines to overrule established precedent and will not order the deposition of the jury, in whole or in part. Nor will the incident as reported have any impact the verdict.

Finally, Dr. Adams claims that she was unfairly prejudiced by the last minute settlement agreement between Milford Hospital and the Plaintiffs. n33 Dr. Adams requested, and received, a special instruction to the jury regarding that settlement, but argues that [*24] no such instruction could have overcome the prejudice engendered by the settlement. Further, she contends that the unique timing of the settlement prevented her from asserting a position during closing arguments that was consistent with a zealous defense and an ethical duty of honesty. In essence, Dr. Adams' defense during the course of the trial was that neither defendant was negligent. Given this strategy, once the Plaintiffs settled their claim against Milford Hospital, the jury could only have been left with the impression that she was negligent as well. Dr. Adams therefore feels a new trial is warranted before an impartial jury untainted by the hospital's admitted liability.

n33 The settlement was reached on Saturday, December 1, 2001. Closing arguments began on December 3, 2001.

Although the timing of Milford Hospital's settlement

with the Plaintiffs is unfortunate for Dr. Adams, it was her decision to present a joint defense with Milford Hospital. That decision included remaining silent as to any negligence [*25] by Milford Hospital. Any prejudice Dr. Adams suffered resulted from that choice of strategy, and she was still free to argue that she did nothing wrong during the course of her treatment of Zachary without pointing the finger of negligence at Milford Hospital. Having made that choice, Dr. Adams now seeks to have the Court hold her harmless from the consequences of what once appeared to be sound strategy.

Simply put, the argument being advanced is not persuasive. Dr. Adams has failed to present any authority or compelling rationale to support that position. Nor will the Court adopt such a position given the circumstances which exist here. This Defendant made a knowing and voluntary choice of strategy. The settlement did not prevent her from pointing the finger of wrongdoing at Milford Hospital. Moreover, any speculation as to what happened and why was dealt with when the Court instructed the jury what had taken place and what the jury was not to read into the fact that one defendant had settled and the other had not. n34 In any event, the Court cannot conclude that Dr. Adams has demonstrated that she is the victim of unavoidable prejudice as a result of the settlement.

n34 Luciani v. Bayside Health, C.A. No. 99C-06-185, Jury Instructions at 5, 6, 13 and 18.

[*26]

The jury's verdict in this case must stand as rendered. It was not against the great of the evidence. Both sides were well prepared and their cases were well presented. There was sufficient evidence in the record upon which the jury could have reached a verdict for either side. Further, Dr. Adams' complaints regarding the conduct of Plaintiffs' counsel, alleged juror misconduct and the effects of the settlement between Milford Hospital and the Plaintiffs, do not constitute a basis to otherwise invalidate the jury's verdict.

## CONCLUSION

For the foregoing reasons, Dr. Adams' motion for a judgment notwithstanding the verdict, or, in the alternative a new trial, must be and hereby is **denied**.

**IT IS SO ORDERED**.

Toliver, Judge