

**City of Wilmington**
**Delaware**

JAMES M. BAKER
MAYOR

LOUIS L. REDDING - CITY/COUNTY BUILDING
800 FRENCH STREET
WILMINGTON, DELAWARE
19801 - 3537

Law Department
(302) 576-2175

November 21, 2006

**REDACTED COPY**
The Honorable Kent A. Jordan
United States District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

    Re:   ***Kenneth A. Boyd v. City of Wilmington***
           **C.A. No. 05-178 KAJ**

Dear Judge Jordan:

    I am in receipt of Mr. Martin's letter to the Court filed on Friday, November 17, 2006 in the above referenced matter. In the letter, Mr. Martin requests a teleconference with the Court to discuss the ramifications of Juror #5's affidavit dated November 16, 2006 which was attached to his letter. Please accept this correspondence as Defendant City of Wilmington's response to Mr. Martin's letter.

    As the Court is aware, on October 26, 2006, following a defense verdict in this case, Plaintiff filed a Motion for a New Trial, incorporating in his Motion a Memorandum of Authorities. (D.I. 120) The basis of Plaintiff's Motion is two-fold. First, Plaintiff argues that the Court's jury selection process violates the federal Jury Selection and Service Act of 1968 and results in the underrepresentation of African-Americans in the jury venire. Plaintiff goes on to state that as a consequence of the alleged underrepresentation of African-Americans in jury venires, there are less African-Americans on a jury panel, thereby increasing the likelihood that African-American jurors could be subject to intimidation by other jurors during deliberation. Plaintiff seemingly points to the purported situation involving Juror #5 as an example of his argument. Second, Plaintiff argues that the Court committed trial error by limiting Plaintiff's cross-examination of Lt. Mitch Rock.

    On November 9, 2006, the City submitted its Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a New Trial. (D.I. 122) In its Memorandum, the City argued that the Court should not consider any information provided by Plaintiff with regard to Juror # 5 and her alleged interaction with the other jurors during their deliberation. The City gave two reasons for its position, as supported by case law. First, the information proffered by Plaintiff with regard to Juror #5 is contained in a hearsay affidavit submitted by Plaintiff Kenneth Boyd. Second, the juror intimidation alleged by Juror #5 is a result of intrinsic factors occurring during jury deliberation. For

The Honorable Kent A. Jordan
November 21, 2006
Page 2

these reasons, the information is not proper for the Court's consideration and cannot play a role in Plaintiff's argument that the Court's jury selection procedure violates the statutory fair cross section requirement of the Jury Selection and Service Act. Notwithstanding the fact that Plaintiff has now submitted an affidavit from Juror #5 herself, which I note contradicts in substantial part Plaintiff's affidavit dated October 26, 2006, the City's position as outlined in its November 9, 2006 Memorandum, and as set forth below with regard to the statements from Juror #5, remain the same.

It is unclear from counsel's letter what action Plaintiff is seeking from the Court with regard to Juror #5's affidavit other than the scheduling of a teleconference. Plaintiff does not argue in either his Motion or the November 17th letter that the allegations of Juror #5 warrant a new trial. However, to the extent that Plaintiff is or will be arguing that a new trial should be granted on the basis of the information provided by Juror #5, such an argument is contrary to well-established law that a juror may not impeach the verdict after the jury has been discharged. This principle, and the case law which supports it, is applicable whether Plaintiff attempts to argue juror intimidation or that the verdict was not unanimous because both issues involve impeachment of the verdict by a juror and testimony by a juror of intra-jury deliberations. As such, the statements of Juror #5 should not be considered by the Court with regard to Plaintiff's Motion for a New Trail given that they do not concern any extraneous or extrinsic influence on the jury deliberations in this case.

The law very clearly states that jurors may not impeach their verdict by testimony that the verdict resulted from coercion or majority vote. United States v. Kohne, 358 F. Supp. 1046, 1050 (E.D. Pa. 1973)(written statement and testimony of juror that he was coerced by threats of physical harm are insufficient to impeach the verdict), citing, 8 Moore's Federal Practice para. 31.08, pp. 31-56, 6A Moore's Federal Practice para. 59.08[4], p. 3796; Jones, Evidence, Vol. 3, §20:58, p.727 (6th ed.); 8 Wigmore, Evidence, §§2345-2356 (1961); Wright, Federal Practice and Procedure §554, pp. 493-494; see also, Government of Virgin Islands v. Gereau, 523 F.2d 140, 148 (3d Cir. 1975).[1] This rule fosters several strong policy considerations, specifically 1) to discourage harassment of jurors

---

[1] The Gereau Court noted that any attempt to impeach a jury verdict encounters two evidentiary hurdles: 1) producing evidence competent to attack the verdict, and 2) establishing the existence of grounds recognized as adequate to overturn the verdict. Further, even when both obstacles are overcome, the Court must find that the party seeking to impeach the verdict has suffered prejudice from the misconduct of the jury. Id. at 148. As an example of misconduct, the Court pointed to remarks by jury attendants to jurors where those remarks relate to the jury's deliberations. Id. at 154. Ultimately, the Gereau Court held that intra-jury matters, such as the case here, meet neither the competency nor sufficiency criteria for overriding the verdict. Id. at 152.

by defeated parties who want the verdict set aside[2]; 2) to encourage free and open discussion among jurors; 3) to reduce incentives for jury tampering; 4) to promote verdict finality; and 5) to maintain the viability of the jury. Gereau, 523 F.2d at 148; Adams v. Luciani, 2003 Del. LEXIS 587, *12 (Del. Supr. 2003). However, the rule does permit the Court to receive testimony as to the existence of any extraneous influence on jury deliberations. Gereau, 523 F.2d at 149. In analyzing the exception to the general rule, the Gereau Court found that incidents which may be attested to by a juror and which may provide a basis for setting aside a verdict are, in fact, all incidents of extraneous influence, with the exception of juror competency, and may be categorized into the following common fact patterns: 1) exposure of the jury to news items about the matter under deliberation; 2) consideration by the jury of extra-record facts about the case; 3) communications between third parties and jurors where relevant to the case to be decided; 4) pressures or partiality on the part of the court. Id. at 150. However, as the Gereau Court noted, intra-jury influences fall squarely within the general prohibition, not the exception.

> By contrast, evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and is not competent to impeach a verdict.
> 
> ***
> 
> As normal jury pressures and intra-jury influences may not be impeached by juror evidence, so also they constitute no grounds for overturning a verdict. Id. at 150, 151.

The Kohne Court cites a number of cases, several of which are factually similar to the present case, wherein it was held that absent evidence of jury misconduct as it relates to extrinsic influences, it is inappropriate to allow inquiry into the jury deliberation process. "Many states follow the rule formulated by Lord Mansfield, Vaise v. Delaval, 1 term R. 11 (K.B. 1785), to the effect that the testimony of a juror cannot be used to impeach a verdict, even though the jury's conduct otherwise proved would require a new trial. However, it seems established that the more liberal federal view permits testimony of a juror pertaining to outside influences." Kohne, 358 F. Supp. at 1050, citing Mattox v. United States, 146 U.S. 140, (1892); United States v. Kum Seng Seo, 300 F.2d 623 (3d Cir. 1962). So well-settled is this legal principle that it and its exception are now embodied in Federal Rule of Evidence 606(b):

> Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's

---

[2] In this case, there is no indication that Juror #5 approached Plaintiff with her concerns, leaving one to conclude that Plaintiff approached Juror #5 about this matter.

The Honorable Kent A. Jordan
November 21, 2006
Page 4

> deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. **Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.** (Emphasis added).

According to Rule 606(b), it was wholly inappropriate of counsel to attach either Juror #5's affidavit to his letter or Plaintiff's affidavit to his Motion. Juror #5's affidavit does not seek to bring to the Court's attention any extraneous prejudicial information brought to her attention or any outside influences exerted upon her. Juror #5's affidavit states that she felt "intimidated" by one of the jurors when he spoke to her in a "loud tone," and that he was "very mean" and "very disrespectful." Juror #5 never states that she was in anyway physically threatened by another juror. Further, Juror #5 never bought this matter to the Court's attention during deliberations. Additionally, and in direct conflict with Plaintiff's October 26th affidavit wherein Plaintiff stated that Juror #5 said she "voted in favor of Defendant in order to appease the eight other jurors," Juror #5 now states in her affidavit that she never voted in favor of the City. In a simply incredulous statement, Juror #5 now states that she did not know that the verdict was required to be unanimous, notwithstanding the fact that the Final Jury Instructions, as read by the Court and given to the jury for their deliberations, specifically stated that the verdict must be unanimous. Further, when given the opportunity to state whether she agreed with the verdict as read, Juror #5 did not disagree with the verdict, but rather indicated her assent to the verdict by saying "yes." Although Juror #5 was the fifth person to be polled, she now states in her affidavit that she was "caught off guard" when asked about her vote, and was afraid to say "no" because she is "shy."

**[REDACTED]**

Given the above, the City would respectfully request that the Court not consider the statements of Juror #5 in connection with Plaintiff's Motion for a New Trial because Juror #5's statements cannot form the basis to set aside the verdict. However, should the Court decide to question Juror #5 regarding her statements, the City would respectfully request that all the jurors be questioned by the Court.        **[REDACTED]**        Lastly, given the

The Honorable Kent A. Jordan
November 21, 2006
Page 5

inappropriate actions of Plaintiff in this matter, the City would request that the costs and attorney's fees incurred by the City in connection with Plaintiff's Motion for a New Trial be assessed against Plaintiff.

    I am available at the Court's convenience should the Court require any further information.

Respectfully submitted,

Rosamaria Tassone
First Assistant City Solicitor


cc:    Jeffrey K. Martin, Esquire
        Lori Ann Brewington, Esquire