IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH A. BOYD,        ) | |
|                            ) | |
|     Plaintiff,      ) | |
|                            ) | |
| v.                      ) | Civ. No. 05-178-SLR |
|                            ) | |
| CITY OF WILMINGTON,     ) | |
|                            ) | |
|     Defendant.      ) | |

**MEMORANDUM ORDER**

At Wilmington this 16th day of January, 2007, having reviewed plaintiff's motion for a new trial and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 120) is denied in part, for the reasons that follow:

1. Plaintiff requests a new trial, pursuant to Fed. R. Civ. P. 59, on two grounds. Only the first of those grounds will be addressed by this memorandum order, that is, whether "the Court's procedure for selecting a sample jury pool [complies] with the provisions of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861[ ] et seq." (D.I. 120 at 1)

2. The Jury Selection and Service Act, 28 U.S.C. § 1861 ("the Act"), provides that

> all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. . . . [A]ll citizens shall have the opportunity to be considered for service on grand and petit juries

in the district courts of the United States, and shall
have an obligation to serve as jurors when summoned
for that purpose.

Id. "Claims under the Act are analyzed using the same standard as a Sixth Amendment fair cross section claim." United States v. Weaver, 267 F.3d 231, 236 (3d Cir. 2001) (citation omitted).

3. In order to establish a prima facie violation of the fair cross section requirement under the Sixth Amendment, plaintiff must demonstrate that: (1) "the group alleged to be excluded is a 'distinctive' group in the community;" (2) "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community;" and (3) "this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979). In holding that petit juries must be drawn from a source fairly representative of the community, however, the United States Supreme Court has imposed

> no requirement that petit juries actually
> chosen must mirror the community and reflect the
> various distinctive groups in the population.
> Defendants are not entitled to a jury of any
> particular composition; but the jury wheels,
> pools of names, panels, or venires from which
> juries are drawn must not systematically exclude
> distinctive groups in the community and thereby
> fail to be reasonably representative thereof.

Taylor v. Louisiana, 419 U.S. 522, 538 (1975) (internal citations omitted).

2

4.  The Jury Plan for the United States District Court for the District of Delaware ("the Plan") was amended in 2002 and thereafter approved by the United States Court of Appeals for the Third Circuit.[1]  The Plan was amended "to comply with the method of random selection incorporated in the newly implemented national program for processing jurors, the Jury Management System" ("JMS").  (Plan at 1)  The Plan reflects the policy of the Court to exclude no citizen "from service as a grand or petit juror . . . on account of race, color, religion, sex, national origin or economic status," as well as recognizes that "all citizens . . . have an obligation to serve as a juror when summoned for that purpose."  (Id. at 2 ¶ 2)

5.  In order to best effectuate the Act's goal of having juries represent a fair cross section of the community in the District of Delaware (which includes all three counties of the State of Delaware), the Plan provides that the names of grand and petit jurors shall be selected at random from data maintained by the State of Delaware identifying all registered voters, licensed drivers (18 years of age or older), and individuals who are issued a State identification card (18 years of age or older). The data, in the format of electronic magnetic media, is forwarded by the responsible State officials to the Clerk of

---

[1] The Plan is found on the Court's website.  U.S. Dist. Ct. for the Dist. of Del., Jury Plan, http://www.ded.uscourts.gov/jury/juryplan.pdf (amended Apr. 2, 2002).

Court, who subsequently forwards the data to a computer center which has the responsibility "for merging the data and eliminating any duplications" ("the merged data"). (Id. at 3-4)

6. The merged data is then used to establish, by random selection, a "master jury wheel" for the Court which is maintained by the Clerk of Court.[2] Thereafter, as the need for juries arises, the Clerk utilizes JMS to randomly select names from the master jury wheel for the purpose of determining qualification for jury service. More specifically, once the required number of names has been randomly selected, the Clerk mails (by registered, certified or first class mail) qualification forms[3] to every person whose name was selected. Instructions directing the person to complete and execute the form and return it by mail to the Clerk are included with or made part of the qualification form. (Id. at 8-9) "Any person who fails to return a completed juror qualification form as instructed may be summoned by the Clerk forthwith to appear before the Clerk to fill out a juror qualification form in accordance with 28 U.S.C. § 1864(a)." (Id. at 9 ¶ 9)

---

[2] "The Clerk shall publicly make a random selection by lot of a starting number from one to fifty. The Clerk shall then notify the computer center to cause that name to be selected from the merged data of each county along with each fiftieth name thereafter from the said county." (Id. at 4 ¶ 4)

[3] The qualification forms are standard forms issued under the auspices of the Administrative Office of the United States Courts.

4

> Any person summoned pursuant to 28 U.S.C. § 1864(a) who fails to appear as directed shall be ordered by the Court forthwith to appear and show cause for his failure to comply with the summons. Any person who fails to appear pursuant to such order or who fails to show good cause for noncompliance with the summons may be fined, imprisoned or both in accordance with 28 U.S.C. § 1864(b).[4]

(Id.)

7. Plaintiff in the case at bar apparently challenges the Plan based on his contention that African American citizens are underrepresented in the venires because of their nonresponse rate to the jury questionnaires. (See D.I. 120 at 3-4) The question before the Court, therefore, is whether such a challenge is legally sufficient.[5]

8. The Court finds that plaintiff's challenge is legally insufficient. In the first instance, there is no authority for the proposition that the Court, with its limited resources, is required "to follow up on the [juror] qualification forms . . . that are not completed and returned" and, therefore, a failure to do so "does not constitute a substantial violation of the Act." United States v. Royal, 174 F.3d 1, 11 (1st Cir. 1999). See also United States v. Gometz, 730 F.2d 475, 480 (7th Cir. 1984) (The

---

[4]It is significant to note that, until the qualification forms are completed and returned by those citizens randomly selected for jury service, the Court has no information about the demographic characteristics of the potential jurors.

[5]The Court notes for the record that plaintiff mounted no contemporary challenge to the composition of the jury venire, nor did "Juror 5" challenge the verdict when polled.

5

Act does not require "that the district court clerk take measures to correct a low response rate, so long as it is high enough to generate enough names for the qualified jury wheel to enable staffing the required number of juries."). Indeed, the Seventh Circuit in Gometz concluded that

> Congress was not concerned with anything so esoteric as nonresponse bias when it enacted the Jury Selection and Service Act. Against a background of widespread exclusion of the members of particular groups from jury service, Congress decided to broaden eligibility for jury service and to prevent discriminatory exclusions from it **but did not attempt to solve the distinct problem of people who refuse to perform their civic duties**, though it gave the clerks and judges power to coerce such people.

730 F.2d at 482 (emphasis added) (internal citation omitted).

9. There is no dispute that the Plan, approved by the Third Circuit and using approved forms and software provided by the Administrative Office of the United States Courts, uses the broadest sources possible to establish its master jury wheel and venires through random selection. The only non-random part of the process[6] is that in the control of the citizens asked to serve; they can choose not to complete and return the qualification forms or otherwise ask to be excused from jury

---

[6]Up to the point of trial and actual jury selection, where the attorneys have a role to play.

service. Plaintiff's challenge, therefore, is misdirected and ill-conceived.

                                                            _____
                                                            United States District Judge